*[Handwritten notes: Sum issd Perry Cumberland / rec 133062 McClure/HBG / N/C ToCus]*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BEVERLY BEAM | ) | CIVIL ACTION LAW |
| | ) | |
| Plaintiff | ) | **FILED** |
| | ) | HARRISBURG, PA |
| vs. | ) | JAN 1 6 2001 |
| | ) | MARY E. D'ANDREA, CLERK |
| SCOTT DOWNEY, ROGER | ) | Per _____ Deputy Clerk |
| MORRISON, DAVID GRAYBILL | ) | |
| AND MICHAEL SWEGER | ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendants | ) | 1:CV-01-0083 |

### COMPLAINT

### INTRODUCTORY STATEMENT

1.) The plaintiff is an independent contractor who transports special need's children for the Capital Area Intermediate Unit (IU). The defendant Downey is Transportation director for the IU. Mr. Morrison, Mr. Sweger and Mr. Graybill are also independent contractors who work with the IU. The gravamen of the plaintiffs complaint alleges violations of a number of federally guaranteed rights, including the right to engage in her chosen occupation free of unreasonable and arbitrary interference by state actors, her right to due process and the equal protection of the laws, violations of her rights to contract free of anti-trust violations, and to not suffer

1

violations of Pennsylvania State Law.

## JURISDICTION AND VENUE

2.) Jurisdiction is conferred on this Court by 28 U.S.C. §1331 and 28 U.S.C. §1343 (a) (3) and (4) and by the remedial statute 42 U.S.C. §1983.

3.) A jury trial is demanded.

4.) Punitive damages are requested of the individual defendants.

5.) This Court's supplemental jurisdiction is invoked as per 28 U.S.C. §1367.

6.) Venue is properly in the Middle District because all parties, material witnesses, and events relevant to this matter are common to Cumberland, Dauphin, and Perry Counties, Pennsylvania.

7.) The plaintiff, Beverly Beam, is an adult American citizen engaged in the business of transporting school students for educational purposes.

8.) The defendants, Sweger and Graybill is an independent contractor who transports children for hire for the IU.

9.) The defendant, Downey is Transportation Director for the IU.

10.) The defendant, Morrison is an independent contractor, who like the plaintiff, transports school children for the IU also.

10a.) The defendant, Sweger is also an independent contractor with the IU.

## OPERATIVE FACTS

11.) The plaintiff has been an independent contract driver for the IU for 15 years.

12.) During that period of time, plaintiff has been a proficient, hard working business person, providing excellent service to students, member school districts, and the IU. She has had, on average, over 400 miles over the past 4-5 years. Last years miles (1999 -2000) averaged 530 miles. This year, (200 - 2001) plaintiff has been cut to less than 190 miles. Downey has given her work to Sweger/ Graybill.

13.) A number of years ago plaintiff, and many other small independent contractors, supported Mr. Morrison with money in his efforts to debunk and defeat the attempts of Mr. Don Boyanowski to establish a transportation contracting business to compete with the IU.

14.) At that time Morrison promised, as did IU officials, including Mr. Marc Bauer, the Assistant Executive Director, that the IU intended to maximize state reimbursement and preserve the small independent contractor's relationships with the IU on into the future i.e. save the small IC's jobs.

15.) Instead, upon information and belief, a small group of the larger independent contractors, including Morrison, Sweger and Graybill, along with IU officials, including Downey, decided to squeeze small independent contractors, like

3

plaintiff, out of business to benefit the favored group of larger independent contractors.

16.) The defendant Downey has openly made statements about his plans to force the small independent contractors (IC's) like plaintiff out of business.

17.) The defendant Downey has provided unlawful, selective, and targeted support to the business plans and efforts of the defendants Morrison, Sweger and Graybill.

18.) Downey has taken runs (regularly scheduled trips to pick children up, transport them to education sites and return them home) from small independent contractors, including plaintiff, solely for the purpose of forcing them out of business and giving their runs to the larger IC's such as Morrison, Sweger/Graybill.

19.) Downey has caused a run that has been served by the plaintiff through a steady employee for many many years, where she transported among others, a number of deaf children, to be taken from plaintiff and given them to Sweger and Graybill for no reason other than to force plaintiff out of business and give Sweger and Graybill more business.

20.) Plaintiff's employee (Jackie Shutt) could communicate effectively with the deaf children. She and Plaintiff were liked and respected by the family. The children were happy and secure.

21.) But to merely add to Sweger and Graybill's coffers, and to injure plaintiff, the defendants Downey, Sweger and Graybill arbritarily took the runs from plaintiff and gave it to Graybill. Consequently, children were made to suffer without any concern or respect for their interest or safety. Graybill is not even from the area. Neither he nor his employees even knew the run. There was virtually no financial benefit to anyone except Sweger/Graybill affected by the change and it hurt plaintiff, her employee, the children and their family.

22.) The Defendant Downey has reassigned runs from small independent contractors to provide more money to the group of favorites, especially Morrison.

23.) Downey has unlawfully taken these "runs" (the routes where children are picked up at home and driven to schools, or other educational sites, and returned) from small IC's and redistributed them to a small group of favorites (Morrison is first among them) seeking to run the small IC's out of business.

24.) The defendant Downey has intentionally adopted policies designed to force the cost of business for small IC's, like plaintiff, higher and higher, to the point of making it prohibitive.

25.) Downey has openly stated the IU intends to drive small IC's out of business and eliminate them as contractors.

26.) This is being done as part of a larger overall plan to also eliminate

5

transportation services by IU employees and put all of the IU business into the hands of the small group of favored independent contractors such as Morrison, Sweger/Graybill, and others, but particularly Morrison.

27.) The unlawful actions by the defendants Downey, Morrison, Sweger and Graybill included changing the plaintiffs' runs for the sole purpose of yielding to the wishes of Graybill and the larger independent contractors. This practice has caused plaintiff money, debt, and worked to the detriment of children and taxpayers.

28.) Downey, and it is believed, some of the large IC's put together a plan to require each IC to acquire at least 2 wheel chair vans.

29.) This false and pretextual policy was not only unnecessary, but was designed solely to force plaintiff and other small IC's out of business.

30.) This wheel chair van policy required IC's with only one or two runs to acquire 2 wheel chair vans while those with 10 to 20 runs making hundreds of thousands of dollars, also only had to acquire 2 vans.

31.) Many small IC's, such as plaintiff, have never had any use for a wheel chair van but went ahead, and, like plaintiff purchased a van for conversion purposes, at great financial loss.

32.) Plaintiff believes, and therefore aver, that the IU has at least 20 wheel chair vans sitting in their parking lot unused but instead funnels wheel chair business

to favored contractors. Downey has done this as part of defendants plan to coerce plaintiff into giving up her IC business.

33.) Plaintiff, based upon information and belief, avers that the plan by defendants to force her and other small IC's out of business has been ongoing for a long time and is designed to create more business for Morrison, Sweger, Graybill and others, where they will be able to take over the entire business of the IU.

34.) Morrison and it is believed, Sweger and Graybill, are allowed to choose their runs and do not have to conform to the rules and regulations which govern other contractors.

35.) Morrison is permitted to pad miles and he and other favored contractors who were supportive of the IU, in an earlier legal dispute, have their choice of runs at the expense of other and smaller independent subcontractors.

36.) Downey had assisted Morrison, Sweger, Graybill, and others, to the detriment of other contractors, and even IU employees, in building their independent contractor (IC) business, through a pattern of preferential treatment using his powers as a government employee to bestow special help. For example, Downey has even assigned IU drivers and vehicles to help Morrison.

37.) The defendant Downey has even helped Morrison avoid contract requirements on racial issues in their unlawful efforts to make it possible for

7

Morrison to exaggerate his empty mileage and "pad" or increase run mileage, and thereby maximize profits for Morrison.

38.) Even though the IC's are required to conduct themselves in a non-racist fashion, via express provisions of their contract with the IU, Downey assisted Morrison in writing a newspaper advertisement to be placed in newspapers in Northern Dauphin County for the purpose of hiring drivers.

39.) It is averred that this plan was carried out for the purpose of ensuring that all of Morrison's drivers were white, and also so that he could "pad" miles by maximizing empty miles and long trips for short hauls to serve the Harrisburg School District.

40.) To carry this plan out to shift Harrisburg School District runs to Morrison, Morrison with Downey's help, wrote the advertisement at the IU, then ran it in Northern Dauphin County to hide from Black officials in Harrisburg for 2 reasons, 1.) to avoid hiring black persons, and 2.) to ensure long runs with vehicles stationed in Northern Dauphin County that would maximize mileage. Downey then removed the IU driver and the IU vehicle (a wheel chair van) from service, even though the family had known and trusted the driver and had received dependable service for years. Now the run will originate in Northern Dauphin County instead of Summerdale, just across the I 81 bridge from the Harrisburg School District.

41.) The second part of the Downey plan was to feed field trips and other special trips from Harrisburg School District to Morrison (and presumably other favorites) to pad miles. Because the trips originate so far away, the mileage is quite long, and the total reimbursement is much higher.

42.) The IU has, in the Harrisburg School District, a predominately black district as a member. But for years the IU has not hired even one black employee, at Summerdale at least, and there are no black employees who drive for the IU.

43.) Thus Harrisburg, by design, is denied many deserved employment opportunities for its black residents due to the racist policies of the defendants, particularly Downey and Morrison who conspire to give special assistance to their business.

44.) The impact of this racist misconduct on plaintiff, and other's similarly situated, is to deprive them of an equal opportunity to share in field trip opportunities which is a valuable financial emolument of the IC relationships with the IU.

**WHEREFORE** the plaintiff demands judgement of the defendants for the deprivation of plaintiff's rights under the 14th Amendment in depriving plaintiff of her rights to substantive due process. Plaintiff also demands judgement for the deprivation of the plaintiff's rights pursuant to the Privileges and Immunities clause of the 14th Amendment, and for violations of her rights to the equal protection of the

laws. Additionally plaintiff's rights, as supplemental state claims, to be free of breach of contract violations and civil conspiracies has been violated by the defendants and she demands judgement therefore. Lastly, the plaintiffs right to be free of protections afforded by the anti-trust laws has been violated by the defendants. For all violations stated above plaintiff demands judgement jointly and severally and seeks fees, costs, attorneys fees, and such other relief as the Court may deem appropriate.

                                                    RESPECTFULLY SUBMITTED,

                                                    *Don Bailey*
                                                    Don Bailey PAID# 23786
                                                    4311 N. 6th Street
                                                    Harrisburg, PA 17110
                                                    (717) 221-9500

January 16, 2001

## **VERIFICATION**

I, Beverly Beam, hereby swear and affirm that the aforegoing Complaint is true and correct to the best of my knowledge, information, and belief. I am aware that making false representations to Authorities is a violation of law.

*Beverly Beam*
Beverly Beam

Dated: January 15, 2001