**STOCK AND LEADER,**
**A Professional Corporation**
**35 S. Duke Street**
**P.O. Box 5167**               **Phone: (717) 846-9800**
**York, PA 17405-5167**          **Fax:    (717) 843-6134**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

BEVERLY BEAM                          :
    Plaintiff                     :
                     :
        v.                      :    **CIVIL ACTION NO.**
                     :    **NO.: 1:CV-01-0083**
                     :
SCOTT DOWNEY,                         :
ROGER MORRISON,                       :
DAVID GRAYBILL                        :
and MICHAEL SWEGER                    :
    Defendants                     :

FILED
WILLIAMSPORT, PA
MAR 15 2001
MARY E. D'ANDREA, CLERK
Per _____ Deputy Clerk

### ANSWER OF DEFENDANT SCOTT DOWNEY

1.    Admitted that Plaintiff is an independent contractor who provides services

to the Capital Area Intermediate Unit. (the "IU"). Denied that Defendant Downey

is the Transportation Director for the IU. Rather, Downey's proper title is

Transportation Supervisor of the IU. Admitted that Defendants Morrison and

Graybill are independent contractors for the IU. Denied that Sweger is an

independent contractor. The remainder of Paragraph 1 sets forth the legal theories

under which Plaintiff brings her claims and thus no responsive pleading is

required.  To the extent a response is required, it is denied that Downey violated

any of the federal or state rights set forth.

## JURISDICTION AND VENUE

2.    Admitted.

3.    Admitted.

4.    Denied that plaintiff is entitled to punitive damages from Downey.  By way

of further answer, it is assumed from the face of the Complaint that Downey is

being sued in his official capacity as Transportation Supervisor of the IU in which

case punitive damages are not available against him.

5.    Admitted.

6.    Admitted.

7.    Admitted on information and belief based on the Complaint.

8.    Denied.  No contractor by the name of "Sweger and Graybill" currently

contracts to provide transportation for the IU.

9.    Admitted in part and denied in part.  Downey's proper title is Transportation

Supervisor of the IU.

10.    Admitted.

10a.   Denied.  To the best of Downey's knowledge, Defendant Sweger is

currently employed by GS Transportation and provides driving services to the IU

in that capacity.

## OPERATIVE FACTS

11.   Admitted.

12.   Admitted in part and denied in part.  It is denied that Plaintiff has been a

"proficient, hard working business person, providing excellent service to students,

member school districts and the IU."  It is admitted that Plaintiff has averaged

approximately 400 miles over the past 4-5 years.  It is admitted that last year

Plaintiff's miles were approximately 530.  It is admitted that this year Plaintiff's

miles are approximately 190.  It is denied that Downey has given Plaintiff's work

to Sweger/Graybill.  By way of further answer, several of the children whom

Plaintiff transported during the 1999/2000 school year transferred to a new school

for the 2000/2001 school year necessitating a change in their routes.

13.   Downey lacks sufficient information to admit or deny the allegations

contained in Paragraph 14.

14.   Downey lacks sufficient information to admit or deny the allegations

contained in Paragraph 14.

15.    Downey lacks sufficient information to admit or deny the state of mind of Morrison, Sweger and Graybill.  It is denied that Downey made any decisions to squeeze small contractors out of business in favor of large independent contractors.  By way of further answer, to the best of Downey's knowledge, GS Transportation, the company owned by Defendant Graybill and for which Defendant Sweger drives, only operates five (5) busses and, therefore, is not a "large contractor."

16.    Denied that Downey has made any statements openly or in private about his plans to force small independent contractors out of business.

17.    Denied that Downey has provided unlawful, selective and targeted support to the business plans and efforts of Defendants Morrison, Sweger and Graybill.

18.    Denied that Downey has reassigned runs from small contractors to larger contractors for the purpose of forcing the small contractors out of business.  It is further denied that Sweger/Graybill is a "large contractor."

19.    Denied.  Defendant is unaware of which route Plaintiff is alleging was taken away from her and given to Sweger/Graybill, and cannot answer said allegation without more information.  It is further denied that any actions by Downey were taken with the intent to force Plaintiff out of business and/or to give

4

Sweger/Graybill more business.  By way of further answer, several of the children whom Plaintiff transported during the 1999/2000 school year transferred to a new school for the 2000-2001 school year necessitating a change in their routes.

20.    Downey lacks sufficient information to admit or deny the allegations contained in Paragraph 20.

21.    Denied that any actions made by Downey were arbitrary, caparious and/or taken to add to the coffers of Sweger and/or Graybill.  Denied that any children were made to suffer and/or that Downey took any actions to endanger any children.  Downey lacks sufficient information to admit or deny whether Graybill is "from the area" as that area has not been defined.  Downey lacks sufficient information to admit or deny whether Graybill "knew the run" as the Complaint fails to set forth which run is in question.  It is denied that any change in routes from a previous year resulted in no financial benefits to anyone other than Sweger/Graybill.  It is further denied that any change in route hurt any students or their families.  Downey lacks sufficient information to admit or deny whether any change in routes harmed Plaintiff or her employees.  By way of further answer, any change in routes was made based on valid business reasons and/or because of changes in the student population being served by IU transportation.  Plaintiff and

any other independent contractor was never promised any specific route or any specific number of miles.  The overall changes made in the transportation system for the 2000-2001 school year have resulted in dramatic decreases in the cost of providing that transportation.

22.    Denied that any reassignment of runs has been for the purposes of providing more money to any specific contractor.  By way of further answer, any changes have been made in an effort to decrease the cost of providing transportation services.

23.    Denied that any changes to bus routes Downey made were "unlawful."  It is further denied that any actions by Downey were taken with the intent to providing more business to any particular contractor and/or to run small independent contractors out of business.

24.    Denied that Downey has any policy designed to force the costs for smaller independent contractors to increase to the point of being prohibitive.  It is further denied that Downey is a policymaker for the IU.

25.    Denied that Downey has openly (or privately) stated that the IU intends to drive small independent contractors out of business.

26.   Admitted that the IU has begun to cut back on the number of IU employees providing transportation services in an effort to reduce the cost of providing that transportation. It is denied that this is part of an overall plan to give all the IU transportation business to alleged "favored contractors".

27.   Denied that any actions by Downey were unlawful and/or taken with the purpose of yielding to the wishes of Morrison and/or any other unnamed "larger independent contractors." It is denied that any actions of Downey have been detrimental to any children or the taxpayers. By way of further answer, the IU has spent significantly less on transportation services this year than in other years due in large part to the reorganization of bus routes to be more economically sound. Downey lacks sufficient information to admit or deny whether the reorganizations caused plaintiff to lose money or incur debt.

28.   Admitted in part and denied in part. It is admitted that in large part because the IU provides transportation services to disabled and other special needs students the IU determined that it was necessary that each independent contractor have one wheelchair accessible van available. It is denied that they were required to purchase two wheelchair vans. Rather, each contractor was required to have access to a second wheelchair vehicle (possibly through an available lease

situation) in case of a breakdown of their own wheelchair vehicle.  It is denied

that any of the unnamed "larger contractors" took part in this decision.

29.    Denied that the requirement for each contractor to have a wheelchair van

was false and pretextual and/or designed to force plaintiff or any other contractor

out of business.  By way of further answer, such a requirement was appropriate

because it is never known when a child may become wheelchair bound or when a

child with need of a wheelchair accessible vehicle might move into a school

district.  In addition, the requirement was applied equally to all independent

contractors.

30.    Admitted that the rule applied to all contractors equally regardless of the

number of buses they owned.  It is denied that the rule required any contractor to

purchase two wheelchair accessible vans.

31.    Admitted that many of the independent contractors have not needed a

wheelchair accessible vehicle in the past.  By way of further answer, it is

impossible for the IU to predict when such a vehicle might be needed.  Downey

lacks sufficient information to admit or deny whether Plaintiff or any other

contractor purchased a conversion van and whether this was at a great financial

loss.  By way of further answer, Plaintiff has never registered with the IU the fact

that she purchased this alleged van as is required in order for her to use any such

van in transporting children for the IU.  To the best of Downey's knowledge,

Plaintiff has not registered the purchase of any vehicle since this requirement was

established.

32.    Denied that there are at least 20 wheelchair vans sitting in the IU parking

lot.  By way of further answer, the IU has been attempting to sell and/or dispose of

approximately nineteen (19) high mileage, older vehicles because the IU does not

have sufficient drivers to use them.  It is denied that any wheelchair business is

funneled to any unnamed "favored contractors."  It is further denied that any

actions by Downey were taken with the intent of forcing Plaintiff out of business.

33.    Denied that any plan exists to force Plaintiff or any other independent

contractor out of business.  By way of further answer, Downey has only been

employed by the IU since June 1999, not even a full two years.  As such, any

actions by Downey could not have been "ongoing for a long time."  It is further

denied that any action has been taken by Downey to increase the business of

Morrison, Sweger or Graybill.

34.    Denied that any contractor is allowed to choose his/her own routes.  It is

further denied that any contractor is allowed to ignore the rules and regulations

that govern all contractors. By way of further answer, routes are assigned based on the location of available drivers with an attempt to make them the most cost effective for the IU.

35.    Denied that Morrison and/or any other unnamed "favored contractors" are allowed to "pad" miles and/or have their choice of bus routes. Downey lacks sufficient information to admit or deny whether Morrison and/or any other contractor supported the IU in any previous unnamed legal disputes.

36.    Denied that Downey has assisted any contractor to the detriment of any other contractors and/or IU employees. It is denied that Downey has provided unspecified "special help" to any contractor. It is admitted that on occasion, IU employees have been required to cover a route for a contractor who is unable to provide coverage for the route on a specific day. Downey does not have sufficient information at this time to admit or deny whether such assistance has ever been provided for Morrison. By way of further answer, it is the ultimate responsibility of the IU to provide the contracted transportation services and if an assigned contractor is unable to provide the service on a particular day, the IU still remains responsible to provide that transportation service. It is denied that this assistance

is given preferentially to any particular contractor. Rather, this assistance would be provided to all contractors if needed.

37-40.    The allegations contained within Paragraphs 37-40 are denied and are the subject of Defendants' partial Motion to Dismiss and to Strike Impertinent Material filed simultaneously with this Answer.

41.    Denied that Downey had any plan to give field trips and/or other special trips from the Harrisburg School District to Morrison (and/or any other unnamed "favorite contractors") to pad miles. It is further denied that trips given to Morrison originated from "far away" to increase the mileage reimbursement.

42-44. The allegations in Paragraphs 42-44 are denied. See the Motion to Strike filed simultaneously with this Answer.

## NEW MATTER

45.    Plaintiff failed to state a claim upon which relief can be granted.

46.    Plaintiff failed to allege a violation of any specific anti-trust statute.

47.    Plaintiff failed to allege that the alleged activities of Downey affect interstate commerce.

48.    All regularly scheduled transportation provided by the IU is provided within the Commonwealth of Pennsylvania.

49. There are approximately twenty-two (22) contractors, including Plaintiff, of varying sizes providing transportation services for the IU. Plaintiff has failed to establish how this constitutes an anti-trust violation.

50. Plaintiff has failed to allege any facts demonstrating the existence of a contract between the IU and Plaintiff.

51. Plaintiff has failed to allege any facts demonstrating a breach of any contract between the IU and Plaintiff.

52. Plaintiff has failed to allege any damages suffered.

53. Downey is sued in his official capacity as the Transportation Supervisor of the IU, and therefore, cannot have punitive damages levied against him.

54. Plaintiff has failed to allege facts sufficient to establish a conspiracy to commit an unlawful act as required under state common law.

55. Plaintiff has failed to make any allegations of meetings, conferences, telephone calls, or other cooperative efforts to conduct any illegal actions.

56. Downey, as a new employee of the IU, was not involved in any of the legal actions that occurred in the past involving the IU, Plaintiff and/or any other contractors.

57.    Some or all of Plaintiff's claims may be barred by applicable statutes of

limitation.

58.    Plaintiff may be entitled to good faith or other immunity under state or

federal law.

                              Respectfully submitted,
                              STOCK AND LEADER,
                              A Professional Corporation


                    BY:_____
                              Stephen S. Russell, Esquire
                              I.D. No. 17102
                              Melinda B. Kaufmann, Esquire
                              I.D. No. 82088
                              35 South Duke Street
                              P.O. Box 5167
                              York, PA  17405-5167
                              (717) 846-9800

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

BEVERLY BEAM              :
      Plaintiff             :
                          :
        v.               : CIVIL ACTION NO.: 1:CV-01-0083
                          :
SCOTT DOWNEY,         :
ROGER MORRISON,      :
DAVID GRAYBILL        :
and MICHAEL SWEGER   :
     Defendants         :

## CERTIFICATE OF SERVICE

      AND NOW, this ___14ᵗʰ___ day of March 2001, I, Melinda B. Kaufmann, Esquire, of the law firm of Stock and Leader, a Professional Corporation, attorneys for the Defendant, hereby certify that I served the foregoing ANSWER OF DEFENDANT SCOTT DOWNEY this day by depositing the same in the United States first-class mail, postage prepaid, in York, Pennsylvania, addressed to:

Don Bailey, Esquire
4311 N. 6th Street
Harrisburg, PA 17110

Daniel P. Altland, Esquire
3401 N. Front Street
Harrisburg, PA 17110

Steven J. Schiffman, Esquire
2080 Linglestown Road
Harrisburg, PA 17110

STOCK AND LEADER,
A Professional Corporation

By_____
      Melinda B. Kaufmann, Esquire
      I.D. # 82088
      35 South Duke Street
      P. O. Box 5167
      York, PA 17405-5167
      Telephone: (717) 846-9800