**ORIGINAL**

IN THE UNITED STATES DISTRICT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BEVERLY BEAM | ) | CIVIL ACTION LAW |
| | ) | |
| Plaintiff | ) | 1:CV-01-0083 |
| | ) | |
| vs. | ) | |
| | ) | |
| SCOTT DOWNEY, ROGER | ) | |
| MORRISON, DAVID | ) | |
| GRAYBILL AND MICHAEL | ) | JURY TRIAL DEMANDED |
| SWEGER | ) | |
| Defendants | ) | |

FILED
APR 0 6 2001
PER _____
HARRISBURG, PA.   DEPUTY CLERK

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT
DOWNEY'S PARTIAL MOTION TO DISMISS
AND TO STRIKE IMPERTINENT MATTER
FROM THE COMPLAINT**

I.  **BACKGROUND**

   A.) **PROCEDURAL HISTORY**

   On or about January 16, 2001 the plaintiff filed her Civil Rights complaint. On March 14, 2001, the defendant Downey filed an Answer and also filed a motion to dismiss. This brief is in opposition to that motion.

1

## B.) **FACTUAL HISTORY**

Plaintiff had been an independent contractor driving for the Capital Area Intermediate Unit (IU) for over 20 years. Transportation of special needs children is a cash cow for the IU who has successfully won numerous political and legal fights to maintain control of the lucrative trade in moving children about to special needs classes. The real victims in the various struggles the IU waged to prevent interference in their control of public transportation has been the safety and welfare of the affected children and their families, and the cost that taxpayers put into the system each year. Consequently the IU, whose transportation system and methodology is directed by the defendant Downey, and ignored by an IU Board composed of representatives of the member school districts whose first interest appears to be IU and member district politics, with children and taxpayers bringing up the rear, has suffered serious erosion of its transportation work. Some school districts have assumed the functions themselves, and some have contracted out to independent contractors like Boyo Transportation or Rohrer. Out of loyalty for help rendered on past legal problems to the IU, the defendant Downey and others at the IU made private agreements to give special assistance to help certain IU friends build large subcontracting groups to handle special needs transportation. Among them are the defendants Morrison, Graybill and Sweger. Downey has in fact made

2

express statements to third persons that he was going to help force the small independent drivers like plaintiff out of business with the IU. These are drivers who for years (in excess of 30 years) have provided safe, reliable efficient service for special needs children and their families. Downey even helped Morrison design an advertisement for drivers so that he could avoid hiring blacks to work for him and avoid shortening the "dead" miles on runs while serving Harrisburg School District. Downey, to help Morrison, laid off one IU driver, in a move that not only cost the woman her job, but subjected children and their families to needless anxiety. The exact same run was turned over to Morrison so that he could make more money. This was the only reason for the change. This was a wheel chair run and the change was made so that Mr. Morrison could make more money while the IU ate the costs of unemployment and the IU wheel chair van was left to sit in the lot at Summerdale. Downey also took runs, and miles, from plaintiff and arbitrarily assigned them to the defendants Graybill and Sweger for no reason other than to keep political commitments and squeeze plaintiff out of the system. This move caused significant discomfort to innocent children and family members and it cost one of plaintiff's long time employees needed income. Instead, with more miles added, a plum was given to Sweger and Graybill while others went to Morrison. In an effort to force a large number of small contractors out of business Downey came

3

up with an absolutely draconian scheme to force every contractor to have two wheel chair vans. So if you only had one or two runs, never had a need for a wheel chair van in the past, and no present or future needs at all, you still had to go out and purchase 2 expensively retro-fitted wheel chair vans to sit in your driveway, even though they would never be used. This scheme was so incredibly devoid of merit that it fell of its own weight. Even the typically lethargic and uninterested Board began to balk at the injustice and absurdity of this accommodation to the defendant interests. But not before some small contractors dropped out because they couldn't afford financing 2 idle vehicles, and besides, they wouldn't even use the vans for any other purpose. Others just sickened of the endless pressure and favoritism, threw up their hands, and left.

## II  ISSUES

A.) Did plaintiff state an anti-trust claim?

B.) Did plaintiff state a claim for breach of contract?

C.) Did plaintiff state a due process claim?

D.) Should allegations of unlawful racist misconduct be stricken from the complaint and are they irrelevant and immaterial here?

## III  ARGUMENT

A synopsis of plaintiff's factual allegations would be helpful. Plaintiff in a

nutshell, complains that she is a victim of a knowing plan to drive her out of business, not for any personal reasons, but because the defendants have a deal going to 1.) reward past supporters of IU policies, and, 2.) squeeze small independent constructors out of business for the sole purpose of giving their work to a small favored group of insiders, to include the defendants. Plaintiff also alleges that to effectuate these plans, the defendants went so far as to implement a racist plant to avoid hiring black drivers for a black school district in anticipation of giving one contractor work previously performed by the IU itself. Plaintiff also alleges that a wheel chair van policy was instituted by the defendant Downey which has unlawfully cost plaintiff and others substantial financial losses. Legally plaintiff claims defendants are acting to monopolize and restrain trade, are violating the agreed upon IU policy prohibiting racist hiring and employment practices to provide favored contractors with business. Downey has accomplished this simply by reassigning runs to a chosen few seeking to give them unfair advantages.

### A.) **ANTI-TRUST ACTION**

Plaintiff alleges that Downey is working with certain favored contractors to help them monopolize the transportation of special needs children (complaint 15). Downer even spoke to third person about his and plans to force the independent contractors (IC's) like plaintiff, out of business. See averments in paragraphs 17, 18,

5

19, 22, 23, 24, 25, 26, 30, 33, 35, 36, and 39 of the Complaint. The business involved does affect interstate commerce. Millions of dollars flow into Pennsylvania from the federal government to fund education programs including transportation. The IC's and the IU get tax-free gasoline. They move students on inter-state highways and the miles and routes used or abused directly impact on the miles traveled and the cost for transportation and the burden on the transportation system. Such detail need not be pled at this stage in any event. <u>U.S. v. Employing Plasterers Asso.</u> (1954) 347 U.S. 186, 98L.Ed 618 74S.Ct. 452; <u>Crane v. Intermountain Health Care, Inc.,</u> (1980, 10th Cir) 637 F2d 715. Nor is there a required need to numerate the Act, <u>Michigan Gas & Electric Co v. American Electric Power Co.</u> (1966 SD NY) 41 FRD 462. The allegations are not mere conclusions and are in fact quite specific as is plain on their face. Plaintiff has pled an anti-trust violation for defendants' efforts at monopolization and in restraint of trade. Here defendants violated both the provisions of the Sherman Act and the Clayton Act, since, they conspired and acted to monopolize and also to restrain trade.

**B.) <u>BREACH OF CONTRACT</u>**

Plaintiff has pled a breach of contract or more specifically that Downey acted for third persons such as the non government defendants here, to ensure that the IU, by and through him, did not, in good faith, contract with the plaintiff. Terms and

conditions of the years long contracts were changed by Downey to force people like plaintiff to not do business with the IU. Downey's misconduct may be more alien to tortuous interference with contract, and although difficult to classify, plaintiff alleges a breach.

### C.) DUE PROCESS

Plaintiff has alleged a due process claim because she had a right to enter into and maintain contracts free of interference from the state ( Downey is a state actor) and private actors working together to disembowel her business and scuttle her contracts. She has a protection afforded by the due process clause to pursue her chosen profession free of unreasonable, arbitrary, and capricious government actions lacking in any reasonable government goals. Plaintiff has rights under the Privilege and Immunities clause of the 14th Amendment to pursue her chosen occupation free of unreasonable restraints and limitations by arbitrary government actions, Saenz v. Roe, ___U.S. ___, 119 S.Ct. 1518 (May 1999) and Craigmiles v. Giles, (E.D. Tenn at Chattanooga 1:99-CV-304 (Aug 2000).

### D.) RACIST POLICIES AND ACTIONS - IRRELEVANT AND IMMATERIAL?

Defendants ask that ¶'s 37 - 40 and 42, 43, and 44 be stricken because they are not relevant or material. It is true that they do not directly affect the plaintiff in a

racial manner and she has not pled discrimination as to her situation. It is also true that these allegations can be supported by abundantly clear testimonial and documentary evidence, and are ( or should be) a source of concern to the defendants, the IU, and the entire community. But they are not included to be prejudicial or inflammatory. Central Pennsylvania is not Philadelphia or New York or Chicago or Los Angeles, or Miami so plaintiff doubts that they would inflame anybody here. Rather they are included because they materially demonstrate the breadth, extent, and extreme to which a small group of people, using taxpayers money, will abuse the rights of small children, their families, and poor unrepresented employees, to build a special business at the expense of plaintiff and those like her. That is the relevancy of the Harrisburg run favors the exclusionary hiring practices, the wheel chair favors, and the expropriated run favors for Sweger and Graybill.

    **WHEREFORE** this Court is requested to deny defendants' Motion to Dismiss.

Respectfully Submitted,

_____  4/6/01
Don Bailey PAID# 23786
4311 N. 6th Street
Harrisburg, Pa 17110
(717) 221-9500

## CERTIFICATE OF SERVICE

I hereby certify that on this **6th DAY OF APRIL 2001**, a true and correct copy of the foregoing **Plaintiff's Brief in Opposition to Defendant Downey's Partial Motion to Dismiss and to Strike Impertinent Matters From the Complaint** was served upon the following counsel of record by United States Mail, postage prepaid:

**Melinda B. Kauffman, Esquire**
**Stock and Leader**
35 S. Duke Street
P.O. Box 5167
York, PA 17405-5167

**Steven Schiffman, Esquire**
**Serratelli, Schiffman, Brown and Calhoun, P.C.**
2080 Linglestown Road
Harrisburg, PA 17110

**Daniel P. Altland, Esquire**
**Mette, Evans and Woodside**
3401 N. Front Street
Harrisburg, PA 17110

BY: _____
Don Bailey ID# 23786
4311 N. 6th Street
Harrisburg, PA 17110
(717) 221-9500