⑮
4/19/0

IN THE UNITED STATES DISTRICT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

BEVERLY BEAM ) CIVIL ACTION LAW
)
)
)
Plaintiff ) 1:CV-01-~~0600~~ 83
)
vs. )
)
SCOTT DOWNEY, ROGER )
MORRISON, DAVID )
GRAYBILL AND MICHAEL ) JURY TRIAL DEMANDED
SWEGER )
Defendants )
)

**FILED
HARRISBURG
APR 1 8 2001
MARY E. D'ANDREA, CLERK
Per _____
DEPUTY CLERK**

## PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT GRAYBILL AND SWEGERS' MOTION TO DISMISS

I.    **BACKGROUND**

A.)  **PROCEDURAL HISTORY**

On or about January 16, 2001 the plaintiff filed her Civil Rights complaint. On

March 27, 2001, the defendants' Graybill and Sweger (hereinafter movants) filed a

motion to dismiss. Movants brief was filed on March 27, 2001. This brief is in

opposition to that motion.

## B.) FACTUAL HISTORY

Plaintiff had been an independent contractor driving for the Capital Area Intermediate Unit (IU) for over 15 years. Transportation of special needs children is a cash cow for the IU who has successfully won numerous political and legal fights to maintain control of the lucrative trade in moving children about to special needs classes. The real victims in the various struggles the IU waged to prevent interference in their control of public transportation has been the safety and welfare of the affected children and their families, and the cost that taxpayers put into the system each year. Consequently the IU, whose transportation system and methodology is directed by the defendant Downey, and ignored by an IU Board composed of representatives of the member school districts whose first interest appears to be IU and member district politics, with children and taxpayers bringing up the rear, has suffered serious erosion of its transportation work. Some school districts have assumed the functions themselves, and some have contracted out to independent contractors like Boyo Transportation or Rohrer. Out of loyalty for help rendered on past legal problems to the IU, the defendant Downey and others at the IU made private agreements to give special assistance to help certain IU friends build large subcontracting groups to handle special needs transportation. Among them are the defendants Morrison, Graybill and Sweger the movants here. Downey has in fact made express statements to third persons that he

2

was going to help force the small independent drivers like plaintiff out of business with the IU. These are drivers who for years (in excess of 30 years) have provided safe, reliable, efficient service for special needs children and their families. Downey even helped Morrison design an advertisement for drivers so that he could avoid hiring blacks to work for him and avoid shortening the "dead" miles on runs while serving Harrisburg School District. Downey, to help Morrison, laid off one IU driver, in a move that not only cost the woman her job, but subjected children and their families to needless anxiety. The exact same run was turned over to Morrison so that he could make more money. This was the only reason for the change. This was a wheel chair run and the change was made so that Mr. Morrison could make more money while the IU ate the costs of unemployment and the IU wheel chair van was left to sit in the lot at Summerdale. Downey also took runs, and miles, from plaintiff and arbitrarily assigned them to the defendants Graybill and Sweger, the movants here for no reason other than to keep political commitments, give movants some money, and squeeze plaintiff out of the system. This move caused significant discomfort to innocent children and family members and it cost one of plaintiff's long time employees needed income. Instead, with more miles added, a plum, at plaintiff's expense was given to Sweger and Graybill while others from different little people, went to Morrison. In an effort to force a large number of small contractors out of business Downey came up with an absolutely

3

Draconian scheme to force every contractor to have two wheel chair vans. So if you only had one or two runs, never had a need for a wheel chair van in the past, and no present or future needs at all, you still had to go out and purchase 2 expensively retro-fitted wheel chair vans to sit in your driveway, even though they would never be used. This scheme was so incredibly devoid of merit that it failed of its own absurdity. Even the typically lethargic and uninterested Board began to balk at the injustice and absurdity of this accommodation to the defendants' interests. But not before some small contractors dropped out because they couldn't afford financing 2 idle vehicles, and besides, they couldn't even use the vans for any other purpose. Others just sickened of the endless pressure and favoritism, threw up their hands, and left.

## II    ISSUES

1.) Did plaintiff state a due process claim under the 14th Amendment?

2.) Did plaintiff state a claim for violation of her rights to the equal protection of the laws?

3.) Did plaintiff state an anti-trust claim against the movants ?

4.) Has plaintiff made out a claim for civil conspiracy under state tort law ?

## III.) ARGUMENT

Factually, defendants got together and decided to follow a course of conduct designed to drive the plaintiff out of business. As an independent contractor with the

4

Capital Area Intermediate Unit (IU) she transported special need's children for a living. The movants, (Graybill and Sweger) conspired with Downey and others to take the plaintiffs runs (transportation routes for pay) and thus reduce her business to a bare minimum. In doing so they also caused serious anxiety and alarm to innocent deaf children and their parents. As part of the process of injuring the plaintiff, the defendants conjured up a wheel chair van scheme. The idea was to force each independent contractor to buy two wheel chair vans (an extremely expensive proposition) and to do so regardless of need whether real or prospectively. For someone with 1, 2, or 3 runs per day, like plaintiff, this was a financial hurdle of hiatal proportions. For someone with many runs this was of little consequence, besides, the defendants saw that such persons got wheel chair runs through the IU even if it meant grounding one of their own vans as they did for Mr. Morrison in the case of a Harrisburg run. It is also believed that the defendant Morrison and Downey conspired to exclude black person drivers for Morrison and also to ensure the drivers for Morrison would originate their runs in the Northern part of Dauphin County to maximize miles. These actions constitute outrageous and arbritary violations of the plaintiffs rights. All defendants argue that no property interest nor any liberty interest was implicated in what the defendants allegedly did. The isn't so. The whole chair scheme began before the plaintiff and others like her accepted their contracts and undertook the prodigious and

draining task of buying wheel chair vans. After the plaintiff bought a van, before she retrofitted it to be a wheel chair cans, this nefarious plan cost the plaintiffs, and others like her, thousands of dollars. She and her husband actually purchased a 1998 Oldsmobile Silhouette van in order to comply with the game defendants were playing. Isn't the fraudulently induced commitment to an otherwise unnecessary debt and the loss of money to satisfy a misleading and unnecessary requirement of a government contract a violation of liberty and property interest? Plaintiff believes it is.

## A.) <u>DUE PROCESS</u>

Defendants argue that the plaintiff has suffered no due process violation. The boundaries of what a due process violation is, must be decided on almost a case by case basis, the current Supreme Court directing that recourse to more specific violations of more specific Amendments or clauses being preferable to use of the due process clause. The touchstone of a due process violation is the arbitrary or capricious application or use of government power in the absence of any reasonable government objection. <u>County of Sacramento v. Lewis, 523</u> U.S. 833 (1998). <u>Daniels v. Williams,</u> 474 U.S. 327 (1986). The egregious misconduct engaged in must rise to the level of constitutional violations and, ideally at least, should implicate the deprivation of some other constitutional interest (such as a right to contract or a loss or destruction of property). Here the plaintiff was, like those similarly situated, cruelly and insidiously

manipulate to buy at least two vans and convert them to wheel chair vans just to sit and be available in her driveway and for no other use. This was a deliberate stunt designed to force many small operators out ( so that defendants could get business). By the time this ludicrous and totally arbitrary policy was dropped, many of the contractors had made purchases of totally unnecessary equipment at great personal expense as a price for being retained as contractors. Plaintiff was one. This planned attempt to destroy the life long business of innocent businessmen and women in order to make more money for a small group of defendants like Morrison, Graybill and Sweger is certainly an egregious application of government power designed to force competitors of these defendants out of business because Downey and these defendants knew that there was no above board, decent, honest, lawful way to make these time proven small business persons quit their proficient delivery of services to the IU short of altering, in a select way, the terms and conditions of their contracts to make it impossible for them to continue. And as defendants correctly point out in their brief, there is no absolute requirement in due process cases, to specifically implicate a liberty or property interest. Defendants imply that they aren't state actors, but allegations of their working directly with Downey ( who is a state actor as Transportation Director for the IU) is expressly made in the Complaint, see ¶ 's 15, 17, 18, 19, 21, 22, 23, 27, 33, and 36. Thus the private defendants, are, for the purposes of §1983, state actors. Adickes v. Kress, 398

U.S. 144 (1970), <u>Lugar v. Edmundson Oil Co. Inc.</u>, 457 U.S. 922 (1982). The defendants' flirtation (never stated as an issue) with the defendants not being state actors cannot be taken seriously given the allegations of the complaint as aforementioned.

### B.) <u>EQUAL PROTECTION</u>

The essence of an equal protection violation is for the government to selectively discriminate against similarly situated persons who, but for the deprivation would interact with the government in some way. That is precisely the case here. This is not a "suspect category" case. The small IC's constitute a cognizable distinct group. One cannot, as a government actor like Downey selectively apply in such drastic fashion one set of rules to one part of a group intending to harm them on a matter affecting a life occupation without running afoul of the Commerce Clause.

### C.) <u>ANTITRUST</u>

The defendants also misinterpret the understandable !st Amendment concerns meant to protect private persons from soliciting policy changes from the government (even policy changes or anti-trust legislation) and consequently the defendants do not correctly apply <u>City of Columbia, et al v. Omni Outdoor Advertising, Inc.</u>, 499 U.S. 365 (1991). Plaintiff alleges that the defendant Downey a state actor is working with certain favored contractors to help them monopolize the transportation of special needs

children (complaint 15). The defendants are part of the favored group. Downey even spoke to third person about his plans to force the independent contractors (IC's) like plaintiff, out of business. See averments in paragraphs 17, 18, 19, 22, 23, 24, 25, 26, 30, 33, 35, 36, and 39 of the Complaint. The business involved does affect interstate commerce. Millions of dollars flow into Pennsylvania from the federal government to fund education programs including transportation. The IC's and the IU get tax-free gasoline. They move students on inter-state highways and the miles and routes used or abused directly impact on the miles traveled and the cost for transportation and the burden on the transportation system. Such detail need not be pled at this stage in any event. U.S. v. Employing Plasterers Asso. (1954) 347 U.S. 186, 98L.Ed 618 74S.Ct. 452; Crane v. Intermountain Health Care, Inc., (1980, 10th Cir) 637 F2d 715. Nor is there a required need to numerate the Act, Michigan Gas & Electric Co v. American Electric Power Co. (1966 SD NY) 41 FRD 462. The allegations are not mere conclusions and are in fact quite specific as is plain on their face. Plaintiff has pled an anti-trust violation for defendants' efforts at monopolization and in restraint of trade. Here defendants violated both the provisions of the Sherman Act and the Clayton Act, since , they conspired and acted to monopolize and also to restrain trade. Defendants can't avoid liability for anti-trust violations simply because one party to the conspiracy is a government official. Such a situation does not confer immunity on private

defendants.

### D.) <u>CIVIL CONSPIRACY</u>

In <u>Boyanowski v. CAIU</u>, 215 F. 3d 396 (3d Cir 2000) the Third Circuit opined that the Supreme Court of Pennsylvania would hold, if given the opportunity, that without an underlying tort, a state claim for civil conspiracy would not be in order. The Honorable Sylvia Rambo, in the underlying case had quite correctly held that there was no case law to indicate that a separate tort for conspiracy could not stand alone in Pennsylvania. Indeed situations are quite common - particularly under the criminal law - where conspiracy can stand alone as a charge. But that doesn't matter here though. What is evident here is that there is an allegation of an underlying number of constitutional torts (substantive due process and privileges and immunities) and break of contract or perhaps "tortious interference with contract," that would support civil conspiracy as a tort here.

**WHEREFORE** defendants' Motion to Dismiss should be denied.

Respectfully Submitted,

Don Bailey PAID# 23786
4311 N. 6th Street
Harrisburg, PA 17110
(717) 221-9500

10

## CERTIFICATE OF SERVICE

I hereby certify that on this **18ᵗʰ DAY OF APRIL 2001**, a true and correct copy of the

foregoing **Document** was served upon the following counsel of record by United States Mail,

postage prepaid:

**Melinda B. Kauffman, Esquire**
**Stock and Leader**
35 S. Duke Street
P.O. Box 5167
York, PA 17405-5167

**Steven Schiffman, Esquire**
**Serratelli, Schiffman, Brown and Calhoun, P.C.**
2080 Linglestown Road
Harrisburg, PA 17110

**Daniel P. Altland, Esquire**
**Mette, Evans and Woodside**
3401 N. Front Street
Harrisburg, PA 17110

BY: _____
Don Bailey ID # 23786
4311 N. 6ᵗʰ Street
Harrisburg, PA 17110
(717) 221-9500