IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

BEVERLY BEAM,            :     CIVIL NO.1:CV-02-1797

       **Plaintiff**              :

       **v.**                 :

**MARC BAUER, GLENN ZEHNER,**   :
**CAPITAL AREA INTERMEDIATE**
**UNIT, SCOTT DOWNEY, ROGER**   :
**MORRISON, DAVID GRAYBILL,**
**and MICHAEL SWEGER,**            :

       **Defendants**         :



FILED

FEB 27 2003

PER _____
HARRISBURG, PA  DEPUTY CLERK

## M E M O R A N D U M

Before the court are the following motions: (1) Defendants Marc Bauer, Glenn Zehner, Scott Downey, and Capital Area Intermediate Unit's ("CAIU") motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6); (2) Defendants David Graybill and Michael Sweger's motion to dismiss pursuant to Rule 12(b)(6); (3) Defendant Roger Morrison's motion to dismiss pursuant to Rule 12(b)(6); (4) Defendants Bauer, Zehner, Downey and CAIU's motion for sanctions pursuant to Federal Rule of Civil Procedure 11; and (5) Defendants Graybill and Sweger's motion for sanctions under Rule 11.  The parties have briefed the issues, and matters are now ripe for disposition.

I.          **Background**

          A.    **Facts**

          In the instant action, Plaintiff alleges that Defendants violated her rights under the First and Fourteenth Amendments to the United States Constitution by

interfering with her access to the courts and retaliating against her for expressing viewpoints on matters of public concern.  Plaintiff also alleges violations of her substantive due process and equal protection rights, as well as pendent state law tort claims for civil conspiracy and interference with contractual relations.

Plaintiff alleges the following facts in her complaint.  Plaintiff is an independent contract driver who has provided transportation services to the CAIU for fifteen years.[1]  Plaintiff has averaged approximately 400 miles per school year over the past four or five years.  For school year 1999-2000 Plaintiff drove approximately 530 miles.  For school year 2000-2001, Plaintiff's miles were cut to 190.  For the current year, 2002-2003, Plaintiff alleges that her miles "have been cut further."[2]  (Compl. at 5, ¶ 12.)

Defendants Morrison, Graybill and Sweger are also independent contractors with the CAIU, [hereinafter, collectively the "Contractor Defendants"].  Defendant Bauer is the Assistant Executive Director of the CAIU.  Defendant Zehner is the Executive Director of the CAIU, and Defendant Downey is the Transportation Director of the CAIU.

---

[1]Plaintiff's complaint does not contain any background information about the CAIU or its operations.  Accordingly, the court provides the following supplemental information about the CAIU from *Boyanowski v. Capital Area Intermediate Unit,* 215 F.3d 396 (3d Cir. 2000):

> The CAIU is a governmental entity operating under Pennsylvania's public school laws.  Intermediate units ("IUs") are a part of the state's public school system and operate service programs that are open to the local public school districts assigned to each [IU].  *See* Pa. Stat. Ann. tit. 24 § 9-951 *et seq.* . . .  The CAIU provides transportation for disabled children to and from classes and programs throughout the unit's region.  It does so through a combination of employees and independent contractors.

*Id.* at 398.

[2]Plaintiff's complaint does not indicate her mileage for school year 2001-2002.

2

Plaintiff alleges that Defendants Morrison, Graybill and Sweger are all large independent contractors who, along with Defendants CAIU, Downey, Bauer and Zehner, [hereinafter, collectively the "CAIU Defendants"], are attempting to force smaller independent contractors like Plaintiff out of business. Specifically, Plaintiff alleges that the CAIU Defendants have "provided unlawful, selective, and targeted support to [the Contractor Defendants], by specifically giving them runs that would normally and presumably go to Plaintiff in order to harm her and help [the Contractor Defendants]." (*Id.* at 6, ¶ 17.) Plaintiff specifically mentions a route that involved her transportation of deaf children for a number of years. Plaintiff alleges that Defendant Downey took the route from her and gave it to Defendants Graybill and Sweger "for no reason other than to force Plaintiff out of business and to give Sweger and Graybill more business." (*Id.* at ¶ 19.)

Plaintiff further alleges that Defendants reassigned work and forced "exorbitant costs on small independent contractors like plaintiff." (*Id.* at 7, ¶ 22.) As to these allegations, Plaintiff specifically states that the CAIU Defendants and some of the large independent contractors implemented a policy requiring each independent contractor to acquire at least two wheelchair accessible vans. According to Plaintiff, this policy was an unnecessary pretext designed solely to force Plaintiff and other small independent contractors out of business. Plaintiff and other small independent contractors complained about the wheelchair policy to CAIU's member school districts. Because of the pressure being placed on it by those school districts, Defendant CAIU withdrew the wheelchair policy.

Plaintiff alleges that the CAIU Defendants and the Contractor Defendants were upset that the wheelchair policy was withdrawn. Plaintiff alleges

3

that Defendants were aware of, and monitored, meetings that Plaintiff organized with an attorney for the purpose of taking legal action against Defendants. Plaintiff alleges that the CAIU Defendants "met secretly with [Defendant] Morrison to discuss the [CAIU] wheelchair van policy so they could devise a way to funnel money to [Defendant] Morrison to the exclusion of the group of small [independent contractors] who did not have wheelchair vans." (*Id.* at 11, ¶ 43.) After this meeting, the CAIU Defendants and Defendant Morrison decided to increase the per mile rate to wheelchair vans only. This policy change was allegedly designed to force Plaintiff out of business.

Plaintiff alleges that shortly after she filed her "original lawsuit" on January 16, 2001, Defendants "as an act of retaliation and support of [the Contractor Defendants], and to punish Plaintiff, instituted a policy whereby the large [independent contractors] could reimburse, on a one for one basis, a regular van for a wheelchair van at the much higher per mile basis." (*Id.* at 12, ¶ 48.) Plaintiff contends that this was a "political reward" and an "unlawful manipulation and misrepresentation of vehicle use and mileage records to the state." (*Id.* at 13, ¶ 49.) Plaintiff also alleges that her mileage was reduced in the 2000-2001 and 2002-2003 school years in retaliation for the filing of her original complaint in January of 2001.

**B.    Procedural History**

On January 16, 2001, Plaintiff filed a civil action in this district captioned *Beam v. Downey, Morrison, Graybill & Sweger,* and docketed as 1:CV-01-0083, ("2001 Complaint"). That action was assigned to Judge McClure. In her 2001 Complaint, Plaintiff alleged violations of her substantive due process and equal protection rights as well as violation of anti-trust laws. Plaintiff also alleged

4

pendent state law claims of civil conspiracy and breach of contract. The facts alleged in the 2001 Complaint are nearly identical to those alleged in the instant action. The 2001 Complaint was dismissed in its entirety by Judge McClure on April 10, 2002 based upon Plaintiff's failure to state a claim upon which relief could be granted. *See Beam v. Downey, et al.*, No. 1:CV-01-0083, slip op. at order, (M.D. Pa. April 10, 2002) (McClure, J.). Plaintiff appealed that decision. The Third Circuit Court of Appeals affirmed Judge McClure's order dismissing Plaintiff's 2001 Complaint. *See Beam v. Downey, et al.*, No. 02-2050, slip op., (3d Cir. December 23, 2002). On October 7, 2002, Plaintiff commenced this action by filing the Complaint which alleged a violation of her rights to due process, equal protection, First Amendment violations, conspiracy, and tortious interference with contract.

## II.        Legal Standard: Motion to Dismiss

In deciding a motion to dismiss pursuant to Federal Rule 12(b)(6), the court is required to accept as true all of the factual allegations in the complaint and all reasonable inferences that can be drawn from the face of the complaint. *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996). "The complaint will be deemed to have alleged sufficient facts if it adequately put[s] the defendant[s] on notice of the essential elements of the plaintiff's cause of action." *Id.* The court will not dismiss a complaint for failure to state a claim "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of her claim that would entitle her to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

5

"In determining whether a claim should be dismissed under [Federal] Rule 12(b)(6), a court looks only to the facts alleged in the complaint and its attachments without reference to other parts of the record." *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). However, the court may consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] document[s]." *Pension Ben. Guar. Corp. v. White Consol. Ind*, 998 F.2d 1192, 1196 (3d Cir. 1993). Finally, in the Third Circuit, a court must grant leave to amend before dismissing a complaint that is merely deficient. *See, e.g., Weston v. Pennsylvania*, 251 F.3d 420, 428 (3d Cir. 2001); *Shane v. Fauver*, 213 F.3d 113, 116-17 (3d Cir. 2000).

## III.          Discussion

Defendants, in their respective motions to dismiss, argue that Plaintiff's complaint should be dismissed (1) based on *res judicata* and collateral estoppel, and (2) because Plaintiff fails to state a claim upon which relief can be granted. Defendants Bauer, Zehner, CAIU, Downey, and Defendants Graybill and Sweger argue, in their respective motions for sanctions pursuant to Rule 11, that Plaintiff's complaint in the instant matter is not presented for any other purpose but to harass Defendants and unnecessarily increase the costs of litigation. Defendants also argue that based on Plaintiff's counsel's previous experience, it was objectively unreasonable for him to have believed that the allegations in the instant complaint are warranted by existing law or by a nonfrivolous extension of existing law.

Plaintiff argues that the differences in the 2001 Complaint dismissed by Judge McClure and the instant complaint are significant. Plaintiff, however, points to no differences other than the addition of three Defendants and her claims of retaliation. Plaintiff also states that Judge McClure's dismissal was not an "adjudication[] of any fact issue[], nor any judgment on the merits of anything." (Pl. Br. in Opp. to Defs. Bauer, Zehner, CAIU, and Downey's Mot. to Dis. at 5.)[3] Plaintiff further states that Judge McClure, "probably forgot to give plaintiff an opportunity to go back to the drawing board and amend her complaint, but plaintiff did not forget her right, to avoid, the opportunity to do so." (*Id.* at 6.)

In response to Defendants' motions for sanctions, Plaintiff, through her counsel, asserts that because the instant case has pending motions, "[i]t can, and should, stand on its own because none of the discovery material was ever considered in the previous case." (Pl. Br. in Resp. to Defs. Mot. for Sanc. at 5.) Plaintiff further argues that Rule 11 sanctions should be denied because the instant case is "quite different, even on the face of the complaint, from its predecessor." (*Id.*)

To the extent that Defendants' arguments are similar, if not identical, the court will discuss simultaneously the issues raised. For the reasons that follow, the court will grant Defendants' motions to dismiss the case in its entirety. The court will defer ruling on the motions for sanctions under Rule 11 and order Defendants to file appropriate affidavits detailing the costs and fees incurred in filing said motions and defending the instant case.

---

[3]The court notes that Plaintiff's briefs in response to Defendants' respective motions to dismiss are nearly identical. Thus, the court will only cite to Plaintiff's Brief in Opposition to Defendants Bauer, Zehner, CAIU, and Downey's Motion to Dismiss, unless otherwise noted.

7

A.    **Defendants' motions to dismiss**

1. *Res Judicata*

*Res judicata*, commonly referred to as claim preclusion,[4] contemplates
that "a final judgment on the merits of an action precludes the parties or their privies
from relitigating issues that were or could have been raised in that action." *Kremer
v. Chemical Constr. Corp.*, 456 U.S. 461, 466 n.6 (1982). *Res judicata* acts to
"relieve parties of the cost and vexation of multiple lawsuits, conserve judicial
resources, and, by preventing inconsistent decisions, encourage reliance on
adjudication." *Allen v. McCurry*, 449 U.S. 90, 94 (1980).

Where a prior lawsuit involves "the same parties and germane facts, as
well as related issues" as a subsequent proceeding, for the purposes of claim
preclusion, they shall constitute "a single cause of action that should have been
joined in a single case." *Churchill v. Star Enters.*, 183 F.3d 184, 187 (3d. Cir.
1999). "Claim preclusion gives a dispositive effect to a prior judgment if a
'particular issue, although not litigated, could have been raised in the earlier
proceeding.' " *Id.* at 194 (quoting *United States v. Athlone Indust., Inc.,* 746 F.2d
977, 984 (3d. Cir 1984)). For a party to invoke *res judicata* in defense of an action
against it, "that party must show that there has been '(1) a final judgment on the
merits in a prior suit involving (2) the same parties or their privies, and (3) a
subsequent suit based on the same causes of action.' " *Williams v. City of Allentown*,
25 F. Supp.2d 599, 602 (E.D. Pa. 1998) (quoting *Athlone Indust.,* 746 F.2d at 983).
As demonstrated below, the instant complaint is barred by operation of *res judicata*.

---

[4]The court will use the terms *res judicata* and claim preclusion interchangeably throughou
this memorandum.

8

First, as to Plaintiff's claims for a violation of due process, equal protection and conspiracy, Judge McClure's dismissal of those claims constituted a final judgment on the merits. After consideration of Defendants' motion to dismiss, Judge McClure dismissed all of Plaintiff's claims. Although the April 10, 2002, order does not specifically state that Plaintiff's claims were dismissed with prejudice, it is clear from the order that they were. Judge McClure did not grant Plaintiff leave to amend her complaint. Additionally, the final sentence of the April 10, 2002 order directed the clerk of court to close the case file. Moreover, "[i]f an action is dismissed for failure to state a claim, but the court rendering the judgment does not specify whether or not the dismissal was with prejudice, then the presumption is that the dismissal is with prejudice and should be afforded claim preclusive effect." 18 James Wm. Moore, *et al., Moore's Federal Practice* § 131.30(3)(e) (3d. ed. 1998); *accord Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 399 n.3 (1981) ("[A] dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is a judgment on the merits."). Thus, the April 10, 2002 order was a final judgment on the merits.

Second, it is clear that the 2001 Complaint and the instant action involve that same parties or their privies. Defendants Downey, Morrison, Graybill and Sweger were all named Defendants in the 2001 Complaint. In the instant case, Plaintiff includes three new Defendants, not named in the 2001 Complaint. However, Plaintiff cannot "bring a cause of action, lose, and then bring essentially the same cause of action against identical or closely related parties without encountering *res judicata*." *Avins v. Moll*, 610 F. Supp. 308, 316 (E.D. Pa. 1984). The additional Defendants named in this action – the CAIU, Zehner and Bauer – are

9

in privity with Defendant Downey.  This is the case because, "government officials sued in their official capacities for actions taken in the course of their duties are considered in privity with the government body."  *Gregory v. Chehi*, 843 F.2d 111, 120 (3d Cir. 1988).  Thus, the parties in the instant suit and the 2001 action are the same for the purposes of *res judicata.*

Finally, the causes of action in both cases are for all intents and purposes identical.  In determining whether the causes of action are identical, the test is "whether the acts complained of and the demand for relief are the same; whether the theory of recovery is the same; whether the witnesses and documents necessary at trial are the same; and whether the material facts alleged are the same." *Williams*, 25 F. Supp.2d at 604.  Defendants assert that with the exception of the alleged reduction of Plaintiff's mileage during the 2002-2003 school year and the accompanying First Amendment claim, "all of the acts complained of . . . are identical to the 2001 Complaint, the relief demanded is the same . . . and the material facts are the same."  (Defs. Bauer, Zehner, and CAIU's Br. in Sup. of Mot. to Dis. at 6-7.)  The court agrees.

In her 2001 Complaint, Plaintiff asserted that the reduction of her mileage in the year 2000-2001, the reassignment of routes by Defendant Downey to other drivers, in particular Defendants Morrison, Graybill and Sweger, and the implementation of the wheelchair policy were all designed to force Plaintiff out of business and were in violation of her constitutional rights.  (*See* Defs. Graybill and Sweger's Ex.2 in Supp. of Mot. for Sanc. at ¶¶ 12, 17-19, 28-32 and p. 9 at "WHEREFORE Clause.")  The Complaint in the instant case makes the same

10

allegations.  (*See* Compl. at ¶¶ 12, 15, 17-19, 28-37 and p. 15 at "WHEREFORE Clause.")

The court concludes that with the exception of Plaintiff's claims for retaliation, the instant complaint is an attempt to relitigate the same matters previously decided by this court.  Plaintiff admits as much in her responsive briefs, where she states:

> The district court in 01-0083 probably forgot to give plaintiff the opportunity to go back to the drawing board and amend her complaint, but plaintiff did not forget her right, or avoid, the opportunity to do so.  In short, plaintiff argues that the doctrine of res judicata and collateral estoppel do not apply.

(Pl. Br. in Opp. to Defs. Bauer, Zehner, CAIU, and Downey's Mot. to Dis. at 6.)

The essence of Plaintiff's argument is that because Judge McClure did not convert Defendants' motions to dismiss into motions for summary judgment that "[t]here were no adjudications of any fact issues, nor any judgments on the merits of anything."  Plaintiff made the same argument in her appeal of Judge McClure's order.  In response to that argument, the Third Circuit stated:

> On appeal, [Plaintiff] most prominently argues that the District Court abused its discretion in failing to convert the motions to dismiss to motions for summary judgment, and committed legal error in dismissing [Plaintiff's] equal protection claims. [Plaintiff's] arguments are meritless.  After careful review, we agree that [Plaintiff's] complaint failed to state a claim upon which relief can be granted, and will affirm for substantially the reasons set forth in the Memorandum filed by the District Court.

*Beam v. Downey, et. al.,* No. 02-2050, slip op. at 2 (3d Cir. Dec. 23, 2002).

This court will not allow Plaintiff to reargue issues that were decided by Judge McClure and affirmed by the Court of Appeals.  Accordingly, with the exception of Plaintiff's claims for retaliation, the court will dismiss Plaintiff's

11

complaint pursuant to the principles of *res judicata*.[5]  Because the court is

dismissing the instant claims on the basis of *res judicata*, it would be futile to grant

Plaintiff an opportunity to file an amended complaint.

## 2. Plaintiff's retaliation claims

Plaintiff alleges that Defendants instituted a policy whereby contractors

who were operating wheelchair vans were reimbursed at a higher per mile rate for

the wheelchair van and one other non-wheelchair van. (Compl. at 12, ¶¶ 48-50.)

Plaintiff alleges that this policy was an act of retaliation against Plaintiff because of

her filing of the 2001 complaint. (*Id.* at ¶ 48.)  Plaintiff also alleges that this policy

violates "plaintiff's rights to be treated on an equal basis similar to other

[independent contractors] similarly situated." (*Id.* at ¶ 53.)  Defendants argue that

these new equal protection claims fail for the same reasons that Plaintiff's initial

equal protection claims were dismissed by Judge McClure.  Namely, that Plaintiff

---

[5]Although Plaintiff's 2001 Complaint alleged a claim for breach of contract and the instant complaint alleges a claim for tortious interference with contract, the court finds that these claims are al barred by *res judicata*. *Res judicata* bars these claims because they are presumably based on Defendants' reductions of Plaintiff's mileage and as such they could have been brought in the 2001 action. *See Churchill*, 183 F.3d at 194, ("Claim preclusion gives a dispositive effect to a prior judgme if a 'particular issue, although not litigated, could have been raised in the earlier proceeding.' " (quotin *Athlone Indust.*, 746 F.2d at 984)).  Even if Plaintiff's claims are based on events that occurred after th 2001 complaint was filed, the instant complaint fails as a matter of law.  Plaintiff has not alleged the existence of a contractual relationship other than her contract with the CAIU.  As to Defendants CAIU Downey, Zehner and Bauer, Plaintiff's claim fails because a party cannot be liable for tortious interference with a contract to which it is also a party. *Michaelson v. Exxon Research & Eng'g Co.*, 8( F.2d 1005, 1007-08 (3d Cir. 1987).  As to the other Defendants, Plaintiff does not allege any purposef action on their part that is or was intended to harm Plaintiff's relationship with the CAIU. *See Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.*, 140 F.3d 494, 530 (3d Cir. 1998) (stating that one c the requirements for pleading tortious interference with contract is a purposeful action on the part of the defendant specifically intended to harm the existing relationship).  Accordingly, Plaintiff's tortious interference with contract claims are either barred by operation of *res judicata* or fail as matter of law. In either event, the court will dismiss these claims.

12

cannot show that she was a member of a protected class and was treated differently than other similarly situated independent contractors. The court agrees.

In order to succeed on a claim under § 1983 for denial of equal protection under the Fourteenth Amendment, a plaintiff must prove "the existence of purposeful discrimination and demonstrate the [s]he received treatment different from that accorded to other individuals similarly situated." *Wood v. Rendell*, 1995 WL 676418 at * 4 (E.D. Pa. Nov. 3, 1995) (citing *Keenan v. City of Philadelphia*, 983 F.2d 459, 465 (3d Cir. 1992); *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1478 (3d. Cir. 1990)).

Here, Plaintiff does not allege that she has been treated differently than other similarly situated independent contractors. Moreover, Plaintiff does not aver how she – an independent contractor who does not own a wheelchair van – is similarly situated with Defendants Morrison, Graybill and Sweger – independent contractors who own wheelchair vans. At most, Plaintiff's complaint indicates that all independent contractor's who own wheelchair vans are reimbursed at a higher rate because of the considerable expense of operating these vans. This policy is applied equally to all independent contractors. Thus, Plaintiff's equal protection claim relating to the wheelchair van reimbursement policy fails as a matter of law.[6]

---

[6]Plaintiff also makes no showing to support her claim that this policy was implemented in retaliation for her filing of the 2001 complaint. Absent her mere assertion that this is the case, Plaintif avers no facts which demonstrate that Defendant CAIU instituted this policy for invidious or retaliator reasons. While it is true that in deciding a motion to dismiss pursuant to Rule 12(b)(6), the court must accept as true all factual allegations of the complaint and draw all reasonable inferences in the light mc favorable to the non-moving party, the court "need not accept as true unsupported conclusions and unwarranted inferences." *Doug Grant, Inc. v. Great Bay Casino Corp.*, 232 F.3d 173, 184 (3d Cir. 2000).

13

Finally, Plaintiff's complaint alleges that the reduction in her mileage during the 2000-2001 and the 2002-2003 school years as well as the above-referenced wheelchair policies all were instituted in retaliation for her having engaged in constitutionally protected activity under the First Amendment to the United States Constitution. Defendants argue, as to the reduction of her mileage at the beginning of the 2000-2001 school year, "[i]t is ridiculous to suggest that the CAIU reduced her mileage five months prior to her filing the [2001 Complaint] in retaliation for her filing the [2001 Complaint]." (Defs. Bauer, Zehner, and CAIU's Br. in Sup. of Mot. to Dis. at 17.) Defendants further argue that as to the reduction of Plaintiff's mileage at the beginning of the 2002-2003 school year, Plaintiff's speech was not on a matter of public concern and there is no evidence to suggest that Plaintiff's reduction in mileage was substantially motivated by Plaintiff's speech.

In response, Plaintiff alleges the reduction of her mileage occurred when:

> she became active in 1.) successfully protesting [CAIU's] [two] wheelchair van policy; 2.) meeting with colleagues and retaining a lawyer (defendants had inside sources at the meetings); 3.) planning a lawsuit and attempting to recruit others to join with her and; 4.) finally filing the law suit which was researched, planned, and announced for almost 5 months [by the time the 2001 complaint was filed].

(Pl. Br. in Opp. to Defs. Bauer, Zehner, CAIU, and Downey's Mot. to Dis. at 10.)

In order to succeed on a claim of retaliation under the First Amendment, Plaintiff must establish that "(1) [she] engaged in constitutionally protected speech, (2) [she] was subjected to an adverse action or was deprived some benefit, and (3) the protected speech was a 'substantial' or a 'motivating factor' in

14

the adverse action." *Sharp v. Lindsey,* 285 F.3d 479, 484 (6th Cir. 2002) (citing *Mt. Healthy v. School District Board of Education v. Doyle*, 429 U.S. 274, 287 (1977)).

As to Plaintiff's claim that the reduction of her mileage at the beginning of the 2000-2001 school year was an act of retaliation, the court finds this argument to be implausible. As stated by Defendants, it is difficult to discern how Defendants retaliated against Plaintiff for filing the 2001 Complaint *before* Plaintiff filed that complaint. Even assuming the reduction in mileage was a result of Defendants' knowledge that Plaintiff was *planning* on filing a complaint, protesting the wheelchair policies, or meeting with colleagues and retaining a lawyer – as Plaintiff suggests – these actions were known to Plaintiff at the time she filed her 2001 Complaint. Accordingly, they too would be barred by operation of *res judicata. See Churchill*, 183 F.3d at 194 ("Claim preclusion gives a dispositive effect to a prior judgment if a 'particular issue, although not litigated, could have been raised in the earlier proceeding.' " (quoting *Athlone Indust.*, 746 F.2d at 984)).

Plaintiff's final claim of retaliation is that, at the beginning of the 2002-2003 school year, the CAIU once again reduced her mileage because she filed the 2001 complaint. However, neither Plaintiff's complaint, nor Plaintiff's responsive briefs to Defendants' motions to dismiss, provide any indication that the reduction of Plaintiff's mileage was substantially motivated by Plaintiff's speech. Plaintiff's 2002-2003 mileage was reduced approximately one and one-half years after she filed the 2001 complaint. There is neither temporal proximity between the allegedly protected speech and Defendant's actions, nor any suggestion of any other connection between the two events. Put simply, Plaintiff fails to allege facts which are sufficient to establish that her speech was a motivating factor in any of

15

Defendants' actions. Moreover, Plaintiff's conclusory allegations of retaliation are insufficient as a matter of law. *See Doug Grant, Inc.,* 232 F.3d at 184 (stating that the court "need not accept as true unsupported conclusions and unwarranted inferences"). The court believes that Plaintiff's allegations of retaliation in the instant case are nothing more than a mere pretextual attempt to relitigate a case that was unfavorably decided by Judge McClure. Accordingly, the court will dismiss Plaintiff's claims for retaliation. Because the court finds that Plaintiff's retaliation claims were added as a mere pretext to avoid the imposition of the principles of *res judicata* and because of the flippant nature of Plaintiff's response to Defendants' motions, the court concludes that it would be futile to grant Plaintiff leave to amend her complaint.

### B.    Motions for Sanctions

Also before the court are (1) Defendants CAIU, Downey, Zehner and Bauer's motion for sanctions pursuant to Rule 11 and (2) Defendants Graybill and Sweger's motion for sanctions pursuant to Rule 11. These motions have been fully briefed by the parties and are ripe for disposition. In their respective motions, Defendants request that the court hold Plaintiff, Plaintiff's attorney and his law firm jointly and severally liable for the reasonable attorney's fees and costs for defending the instant complaint and litigating the instant motions for sanctions. However, Defendants do not attach affidavits or exhibits outlining the time spent in defending the instant complaint and their hourly billing rate. Accordingly, the court will order Defendants CAIU, Downey, Zehner, Bauer, Graybill, and Sweger to file appropriate affidavits setting forth each attorney's education, relevant work experience, and a statement of their current hourly billing rate. The court will also order these

16

Defendants to submit an exhibit detailing the hours expended and work performed in defending the instant Complaint and litigating the instant motions for sanctions. The court will allow Plaintiff an opportunity to file objections to Defendants' hourly rate and the numbers of hours expended. The court will defer ruling on the motions for sanctions until after it has received this documentation.

## IV.    Conclusion

For the foregoing reasons, the court will grant Defendants' motions to dismiss Plaintiff's complaint in its entirety. The court will defer ruling on the pending motions for sanctions pursuant to Rule 11 and will order Defendants to file appropriate affidavits and exhibits as outlined above. An appropriate order will issue.

SYLVIA H. RAMBO
United States District Judge

Dated: February  27, 2003.

17