*SPERO T. LAPPAS, Esquire*
*Pa. Supreme Court ID No. 25745*
*Serratelli, Schiffman, Brown and Calhoon, P.C.*
*2080 Linglestown Road*
*Suite 201*
*Harrisburg, Pennsylvania 17110-9670*
*Telephone (717) 540-9170*
*Fax (717) 540-5481*
**ATTORNEY FOR APPELLEES DAVID GRAYBILL AND MICHAEL SWEGER**

## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

**BEVERLY BEAM,**                                    :

                                                     : **1:CV-01-0083**

                    **v.**                           :

                                                     : **JUDGE McCLURE**

**SCOTT DOWNEY, ROGER**                              :
**MORRISON, DAVID GRAYBILL,**                        :
**AND MICHAEL SWEGER**                               :

## DEFENDANTS' BRIEF IN SUPPORT OF MOTION FOR SANCTIONS

### I. STATEMENT OF THE CASE

The facts of this case, insofar as they relate to the present motion, are simple and largely not in dispute.

The Plaintiff filed a lawsuit against these and other defendants alleging violations of her constitutional rights. The lawsuit was dismissed on a motion

under Rule 12(b)(6) and on subsequent motion the court granted attorneys fees under 42 U.S.C. section 1983. The specific order against the Plaintiff required her to pay $12,588.53 dollars to these Plaintiffs by August 28, 2004. So far, she has not paid anything.

The District Court's order was appealed to the Third Circuit, but there was no request made to stay the effectiveness of the Order, nor was there a bond posted for the appeal. A copy of the Plaintiff's brief to the Third Circuit is attached hereto as Exhibit A. Also attached are a copy of a Motion under Federal Rules of Appellate Procedure 38 which the Defendants have filed in the Third Circuit (Exhibit B) and a copy of the Third Circuit's preliminary order on that motion (Exhibit C). As these documents reveal, the Plaintiff (or her counsel) has chosen to make a vicious and unprofessional ad hominem attack on the District Court Judge, and also on the Third Circuit Court of Appeals. By doing so, the Plaintiff (or her counsel) has magnified and clarified the extent of his/her/their contempt for the judicial process.

In response to the Defendants' motion in the Third Circuit, the Plaintiff (through Attorney Bailey) filed a document entitled "Counsel's Brief in Opposition to the Motion of Graybill and Swagger [sic] for relief under role [sic] of Appellate Procedure 38." In this "Brief" Attorney Bailey further plumbs the depths of his contempt by stating (in addition to a number of other remarkably preposterous averments) that certain judges of this court have essentially hatched

a conspiracy against him.  In particular, Attorney Bailey states that:

> "Counsel just became aware last week (of the names) of three Federal
> District Court Judges in the Middle District who decided in an
> improper agreement together, some time ago, to try to "get" counsel
> as best they could i.e. do what they could to harm and injure him.
> There could be no judicial immunity in such a case and the source of
> this information is simply impeccable.  Tragically and with great
> sadness counsel has had to advise Beverly Beam (and counsel) that
> she in fact may have a First Amendment Claim against at least two of
> those judges."

(Attorney Bailey's Brief, Exhibit D hereto, page 12).[1]

## II. ISSUES AND ARGUMENT

> Should the Plaintiff be held in contempt for failure to comply with
> this Court's previous Order?  Or in the alternative, should sanctions
> be imposed upon her attorney if he is found to have counseled or
> participated in that contempt?

Clearly, the Plaintiff has not paid the attorneys fees which she was ordered

to pay.  She filed an appeal, but the appeal does not operate as an automatic

supersedeas.  Accordingly, she is in contempt of that order and should be

sanctioned.

However, in this most recent filing by Attorney Bailey (Exhibit D hereto) he

refers to Ms. Beam as being "totally innocent of any of the decisions in any of

these matters." (Exhibit D, page 4)  He then states that "Mr. Bailey is totally

responsible individually for any and all of the decisions regarding the Beam cases

or appeals." (Id.).  Therefore, it may be that Mr. Bailey in addition to Ms. Beam

---

[1]The brief as filed did not have numbered pages.  We have
numbered them for ease of citation.

(or perhaps to the exclusion of Ms. Beam) is responsible for the noncompliance with this Court's Order.

This raises issues of fact relating to the Plaintiff's intent and ultimate culpability. Therefore, the Defendants request a hearing on this motion. Normally, we would suggest that depositions be taken and the transcripts filed with the court. However, in light of the difficulties that have attended this litigation throughout its history, we suggest that a hearing be convened in court and that Mr. Bailey and Ms. Beam be directly ordered to appear and give testimony at that hearing. Thereafter, the Court will have a proper record upon which to make any appropriate order.

SPERO T. LAPPAS, Esquire
Serratelli, Schiffman, Brown and Calhoon, P.C.

Page 4

## III. CONCLUSION

WHEREFORE, the Defendants request that a hearing be convened on this motion. By way of further request for relief, the Defendants note that a substantial amount of time and expense have been and will continue to be spent on this litigation, and the Defendants request leave at that hearing to supplement their claim for attorney's fees, requesting that the court order additional fees to be paid by Plaintiff and Plaintiff's Counsel.

*RESPECTFULLY SUBMITTED,*

*SERRATELLI, SCHIFFMAN, BROWN AND CALHOON, P.C.*

*By:* _____

*SPERO T. LAPPAS, Esquire*
*Pa. Supreme Ct. ID no. 25745*
*2980 Linglestown Road*
*Suite 201*
*Harrisburg, PA 17110-9670*
*(717) 540-9170*
*Attorney for Defendants Graybill & Sweger*

# UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

## NO. 4-3424

## BEVERLY BEAM

### Appellant

### VS.

## SCOTT DOWNEY et al.

### Appellees

## APPELLANTS BRIEF AND VOLUME I

---

Appeal from the Memorandum and Order of the Honorable Judge James F. McClure of the United States District Court for the Middle District of Pennsylvania entered on July 29, 2004.

Respectfully Submitted,

S/Don Bailey, Esquire
4311 N. 6th Street
Harrisburg, PA 17110
(717) 221-9500



# CORPORATE DISCLOSURE STATEMENT

I. Don Bailey do hereby state that I know of no corporate interest implicated in this case.

S/Don Bailey, Esquire
4311 N. 6th Street
Harrisburg, PA 17110
(717) 221-9500

i

# TABLE OF CONTENTS

Pages

Corporate Disclosure Statement............................ i

Table of Contents........................................ ii

Table of Authorities..................................... iii

I.)     Statement of Jurisdiction......................... 1

II.)    Statement of Issues.............................. 2

III.)   Statement of the Case............................ 3

IV.)    Statement of the Facts........................... 9

V.)     Statement of Related Cases and Proceedings... 11

VI.)    Standard of Scope of Review...................... 11

VII.)   Summary of the Argument......................... 11

VIII.)  Argument........................................ 12

IX.)    Conclusion...................................... 15

X.)     Certificate of Bar Membership................... 16

Certificate of Service....................................

# TABLE OF AUTHORITIES

Pages

**Cases:**

*Bryant et al v. Dupree et al*, 252 F.3d 1161 (11th Cir 2001)

*Christiansburg Garment Co v. Equal Employment Opportunity Commission*, 434 U.S. 412, 98 S.Ct. 694; 54 L.Ed 2d 648 (1978) ..............................     1

*Czeremcha v. IAMWU (11th Cir 1984)* 1984 U.S. App LEXJS 25413. ......................................

*Hensley v. Eckerhart*, 461, U.S. 424, at 433 n. 7........

*Hughes v. Rowe*, 449 U.S. 5, 15-16, 101S.Ct. 173, 66 L.Ed 2d 163 (1980)....................................

*Jane L v. Bangerter*, 61 F. 3d 1505 (10th Cir) (1995) ....

*Shane v. Faune*, 213 F.3d 113. ..............................

*Williamson v. Allstate Ins. Co.*, 204 F.R. D. 641 2001, U.S. Dist. LEXIS 22076......................................

## 1.)    <u>Statement of Subject Matter and Appellate Jurisdiction</u>

### A.)    Subject Matter Jurisdiction

Subject Matter jurisdiction is conferred on this court by 28 U.S.C. §1331 and 28 U.S.C. §1343(3) and (4) and by the remedial statue 42 U.S.C. §1983. The authority is hear state claims (supplemental jurisdiction) is conferred by 28 U.S.C. §1367(c ).

### B.)    Appellate Jurisdiction

Appellate jurisdiction is vested in this Court by 28 U.S.C. §1291 authorizing courts of appeals of the United States to review and hear causes dismissed by federal district courts.

1

## II.)    Statement of the Issues

1. Whether the defendants below, the appellees here. are prevailing parties for purposes of 42 U. S. C. §1988?

2. Whether the actions of the District Court below forced plaintiff below, appellant here, to be in the position of being assessed attorneys fees by the trial court?

## III.) <u>Statement of the Case</u>

The original complaint was filed on January 16, 2001, Docket Entry (DKT#) 1, A7e. A case management conference was held on April 30, 2001. Meanwhile motions to dismiss had been filed by all defendants (the last was on March 19, 2001 -Graybill and Sweger, DKT# 11 A7d). At the case management conference on April 30, 2000, Judge McClure made a point that discovery was to continue while the motions to dismiss were pending before the court after Beam's counsel raised the questions. On February 1, 2002 the defendants moved the court to stay the summary judgment deadline but plaintiff did not concur, DKT# 26 A7c. This motion was never briefed. On February 13, 2003 the court ordered the plaintiff to file a response "as a procedural nature". The court waived the filing of any brief by the defendants in support of their motion. Their request was summarily granted thus signaling that the Court wouldn't allow discovered materials to be presented nor leave to amend. It was a judicial nullification.

Plaintiff's counsel believed at this point that he was being intentionally set up for attorneys fees and sanctions by federal judge James F. McClure Jr., who had displayed time and time again an intense dislike for the politics and activities of plaintiff's counsel as a civil rights lawyer and who had unsuccessfully attempted numerous times to harm the plaintiff's

attorney in his professional capacity, in counsel's view, even trying to limit his representation of poor citizens and citizens of color in the Williamsport area. Plaintiff's counsel has always been open and honest in his assessment and response to these facts, see A28-A36. He has raised these complaints before. Its time they were investigated.

In the case below what happened is very simple. At the case management conference the trial judge overtly directed that discovery was to continue while the motions to dismiss were pending. Judge McClure at that point had an obvious view of the complaint (even suggesting at one point to defense counsel that they "would of course" be filing summary judgment motions). This is par for the course in the Middle District of Pennsylvania, and plaintiff was used to these kinds of disappointments. Regardless, a great deal of work and effort was then put into discovery, which in plaintiffs view, yielded very positive results. Plaintiff felt as a result of discovery that she was able to demonstrate a clear retaliation claim because she had hired a lawyer and she had also discovered that she was being retaliated against because of unlawful activities between large contractors and certain staff at the I.U..

However the defendants moved to stay dispositive motions until the court decided the motions to dismiss which had been pending for nearly a

4

year. Plaintiff's counsel could see very clearly what was occurring here. He knew that the court was going to find in favor of the defendants on the motions to dismiss while it was going to deny any opportunity for the fruits of discovery to find their way into summary judgment motion so that they would have to be dealt with by the District Court. Plaintiff went on to file a new complaint based upon the newly discovered information (which the Honorable Sylvia H. Rambo dismissed, also without reading one single word of the factual information discovered during the discovery conducted on the previous case). The reasoning behind dismissing the new complaint was that the first complaint was res judicata as to the second complaint which was based upon new facts and a different cause of action. This did not prevent Judge Nygaard of this court opining that the wheelchair vans were "needed", something which was not only in error, but was irrelevant to the issues raised in the second complaint. The bottom line is quite clear, not a single federal judge at either the district or appellate level has ever read one single deposition or addressed any of the facts developed during discovery which led to the second complaint. Counsel believes this is not only improper but deserves an objective review just as Judge McClure's abuse of discretion in denying the plaintiff, just as this court has, an opportunity to petition its government for a redress of grievances.

This state of affairs not only needs to be appealed to the Supreme Court of the United States so that those Justices can see the way this matter has been handled by our local and appellate courts, but it needs to be published and written about across our country as an example of how an attorney who fights diligently on behalf of the rights of American citizen's and the citizen in pursuit of an opportunity to be heard can have their case manipulated intentionally by judicial decisions that he genuinely believes are meant to intimidate and deter him as part of a course of judicial conduct.

Counsel genuinely believes that this entire matter has been intentionally handled in a certain way to insure a certain outcome and will continue to seek an investigation of the underlying facts. Counsel's only fault has been candor and advocacy. His client's only fault has been her decision to fight for her rights. Now she is expected to pay attorneys fees while not a single federal judge at any level has ever reviewed even a summary of the fruits of discovery which were the sole responsibility of the decisions of Judge James McClure. To her credit, even though counsel respectfully disagrees totally with what she did in the reasoning supporting her res judicata dismissal of plaintiff's second complaint (reasoning followed by Judge Nygaard of this court) judge Rambo did not permit discovery to go forward when motions to dismiss were filed in the second case. This proper

6

decision on Judge Rambo's part at least lowered plaintiff's exposure on legal fees and saved all parties a great deal of work. In this regard Judge Rambo demonstrated fairness. To the contrary, Judge McClure intentionally allowed and even encouraged discovery to go forward and plaintiff believes that Judge McClure decided long before that discovery period ended that he was going to grant the motions to dismiss.

Plaintiff's counsel believes that this matter should be investigated by the administrative offices of the federal courts. The irony of all of this is that the federal district court judges involved, and yes this appellate court, knows that the plaintiff should have been given an opportunity to amend her complaint. But even that opportunity was denied in clear and plain violation of the laws and practices of the Third Circuit. The denial of that opportunity meant the plaintiff was guaranteed that she would never have an opportunity to present in any court the things she had learned through discovery which led to her second complaint. An opportunity to conduct discovery encourages by Judge McClure was used by him to assess the plaintiff huge and painful sanctions in the form of legal fees. What a tragic distortion of justice and what an affront to the very purposes of our civil rights laws and our purported right to petition our government and enjoy access to our courts. Plaintiff's opportunity to be heard has been denied, while her

exposure for sanctions has not been caused by her, but by the intentional actions of the District Court.

Consequently the appellees are not prevailing parties under the law. If they are winning party's it is because of the direct actions and procedural decisions made by the District Court. Under these very strange circumstances an investigation is in order. Because, if they are, and plaintiff and her counsel know that most of our judges are not only intelligent and competent, but are honest, decent, people, our courts should not be the province of personal retribution, some nihilistic, inherently contradictory concept of getting even, or a dedication to teaching an attorney not to speak out at the expense of a citizen's rights, or even, God forbid, judicial nullification. Even as this brief is being written plaintiff and her counsel have received information that the FBI is investigating the activities of certain staff members at the I. U. It is counsel's impression that the investigation is looking into possible fraudulent practices that include the manipulation of the same reimbursement formulas through which Beverly Beam had been victimized and which formed part of the basis of her second complaint. Time will tell. In the future a Qui-Tam may also lie.

IV.) <u>Statement of the Facts</u>

Beverly Beam was one of a group of small independent contractors who transported special needs children for the Capital Area Intermediate Unit (IU) in the Harrisburg Area. Her group suspected they were being manipulated by defendants below, to take lucrative runs from them and give them to a small group of larger independent contractors who enjoyed favorable (and exclusive) access to certain defendants (appellees) who were deciding what business would be given (or rather taken from) to Beam and others like her. She, and part of her group of small contractors, began complaining to IU Board members and elected officials about the abusive treatment they were receving. They also consulted a lawyer, but only Beam proceeded legally. The original civil rights complaint had been filed. It's at this point that Judge McClure ordered discovery to proceed while he sat on the 12(b) (6) motions to dismiss. During discovery Beam learned that the appellees had secret meetings about manipulating the wheelchair reimbursement rate to the favor of the large contractors (who already had them) as they were touting a confiscatory, selective requirement for the small contractors that each of them must have 2 wheelchair vans whether they used them or not (they would never have any use for them). They (appellees) also secretly agreed that certain contractors (the favored large

9

contractors) would be able to let their wheelchair vans sit unused while they chose their longest runs and fraudulently (this was a criminal wrong) charged them to the government at a much higher wheelchair van rate. It is believed that this is what the FBI is pursing. This was a secret arrangement to reward the large contractors for supporting the staff with the Board members and elected officials over the 2 wheelchair van requirement for each contractor regardless of need (there was none). Some of them only had 1 run – the requirement was abused and the Board dashed it. Mr. Bauer, openly admonished the small contractors that he was going to help those who helped him. Ms. Beam viewed this as retaliation. Bauer was also upset because Beam had gone to an attorney and had filed her original lawsuit. He took action to make the secret deals mentioned above.

The above along with other material allegations, formed the basis of Bev Beams second complaint which she filed after Judge McClure dismissed her first complaint on the basis of year old pending motions to dismiss, without granting a right or opportunity to amend, and after granting defendants (appellees) request for a stay of dispositive motions (without a brief and in response to a conclusory request that "dispositive motions may not be necessary", but if so, more discovery was needed by defendants!).

The second complaint was dismissed on res judicata grounds even though it contained new and different claims based upon different facts and events that were within the statute of limitations. Neither the district court nor this Court ever reviewed any of the factual material, merely saying (without leave to amend) that the complaints were similar and thus subject to dismissal on issue preclusion grounds. This was facially incorrect and cannot be supported except for conclusory generalized legal conclusions lacking factual support. After all of this, the district court, Judge McClure presiding, assessed Beverly Beam over $40,000.00 in legal fees, even though the appellees, as a matter of law were not prevailing parties.

## V.) Related Cases or Proceedings

There are no known related cases or proceedings.

## VI.) Standard of Review

This Court has plenary review powers to review a final appealable order by a District Court denying a motion to dismiss. *PRO v. Donatucci*, 81 F3d 1283 (3r Cir. 1996).

## VII.) Summary of the Argument

The appellees are not prevailing parties because Ms. Beam's complaint wasn't frivolous, because she was denied an opportunity to amend

by both Judge McClure and the 3rd Circuit in violation of 3rd Circuit law and

because Judge McClure caused the imposition of attorneys' fees against her.

## VIII.) Argument

The defendants should not be granted attorney's fees. To be a

prevailing party under 42 U.S.C. §1988 a defendant must show that the

plaintiffs' action is;

> "Unreasonable, frivolous, merit less, or vexatious with
> regard to this standard, the term "meritless" means groundless
> or without foundation, rather than simply that the plaintiff has
> ultimately lost his case, and the term "Vexatious" in no way
> implies that the plaintiffs' subjective bad faith is a necessary
> prerequisite to a fee award against him,

*Christiansburg Garment Co v. Equal Employment Opportunity Commission*,

434 U.S. 412, 98 S.Ct. 694; 54 L.Ed 2d 648 (1978) head note 16.

Christiansburg, although an employment discrimination case, is the

precedent setting standard by which prevailing defendant attorney fee cases

are judged, including 1988 cases. See *Hensley v. Eckerhart*, 461, U.S. 424,

at 433 n. 7. *Christiansburg* has been cited with approval many many times.

It is the governing standard in this case. See also *Jane L. v. Bangerter*, 61 F.

3d 1505 (10th Cir) (1995). *Bangerter* also addresses another issue in this

case. Plaintiffs believe that their claims were not unreasonable or without

foundation. The *Bangerter* Court, in analyzing *Christiansburg* refers to page

42 1-22 of that decision:

12

"a finding that the plaintiffs action was frivolous unreasonable, or without foundation, even though not brought in subjective bad faith" enabled defendants' to recover attorneys' fees *Christiansburg* 434 U.S. id 421. In setting forth this standard, the Court underscored that district courts must resist the understandable temptation to engage in post hoc reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have Been unreasonable or without foundation. This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success."

Id at page 1513, citing *Christiansburg* and, also at page 1513 of the *Jane L. Bangerter* decision, the 10 Circuit cites *Hughes v Rowe*, 449 U.S. 5, 15-16, 1O1S.Ct. 173, 66 L.Ed 2d 163 (1980), for the proposition that seems most on point for this case:

"Those claims dismissed on 12(b)(6) motions that receive "careful consideration," especially as Evidenced by lengthy, detailed, and reasoned Orders or opinions, are not "groundless" or "Without foundation."

See the Memorandum Opinion. Surely the Court would not argue that its earlier opinion weren't equally given "careful consideration", aren't lengthily, aren't detailed, or conversely are groundless? One thing the court clearly did by deferring to appellees request below for relief in the form of not having to do "more discovery," was put itself in the position of not learning of the specific meetings and plans among defendants to retaliate and to provide special help for the preferred group of contractors like Morrison and G & S. By doing so the Court not only erred but cast shadows on its follow up attempt to assess attorneys fees. It's as if the Court engineered the

effort tacitly

Being denied an opportunity to amend, and refusing to allow dispositive motions, Beam could only file a new complaint. Those issues and sanctions are not before this court.

Further, in light of the Courts refusal to allow discovery for material to be consulted when it resurrected the 12 (b) (6) motions it denied leave to amend in a context where the denial can't be defended. Thus the prevailing party argument cannot be made here.

Thus there are more fundamental reasons for denying the court's grant of attorneys' fees. Judge McClure should have granted leave to Amend. See *Shane v. Faune.* 213 F.3d 113. And on the circumstances of where leave to amend should be granted see *Williamson v. Allstate Ins Co.*, 204 F.R. D. 641 2001, U.S. Dist. LEXIS 22076, *Bryant et al v. Dupree et al.* 252 F.3d 1161 (11th Cir 2001) *Czeremcha v. IAMWU (11th Cir 1984)* 1984 U.S. App LEXIS 25413. If the 3rd Circuit reviewed the appeal in this matter de novo, they should have seen through this and reviewed the discovery material that even unearthed criminal misconduct. They did not. But the docket and the facts remain. Defendants are not prevailing parties.

## IX.) <u>Conclusion</u>

This Court is respectfully requested to reverse Judge McClure's

assessment of attorneys fees against Beverly Beam.

RESPECTFULLY SUBMITTED,

**BAILEY STRETTON & OSTROWSKI**

Don Bailey, Esquire
4311 N. 6th Street
Harrisburg, PA 17110
(717) 221-9500

## X.) Certification of Bar Membership

I, Don Bailey do hereby certify that I am a member of the bar of this Court (U.S. District Court of Appeals for the Third Circuit) and I am in good standing.

By:  S/Don Bailey

## CERTIFICATE OF SERVICE

I, Don Bailey do hereby certify that on *November 24, 2004* I served a true and correct copy of the *Brief and Appendix* to the attorney below via First Class Mail, postage prepaid:

> Ambrose W. Heinz, Esquire
> Mette Evans & Woodside
> 3401 North Front Street
> P.O. Box 5950
> Harrisburg, Pa 17110-5950
>
> Stephen Russell, Esquire
> Stock & Leader
> 35 South Duke Street
> York, Pa 17405
>
> Melanie Erb, Esquire
> Spero Lappas, Esquire
> Steven Schiffman, Esquire
> Suite 201, 2080 Linglestown Road
> Harrisburg, Pa 17110

RESPECTFULLY SUBMITTED,

**BAILEY STRETTON & OSTROWSKI**

Don Bailey, Esquire
4311 N. 6th Street
Harrisburg, PA 17110
(717) 221-9500

17

## APPENDIX

## TABLE OF CONTENTS

**Pages**

1.) Notice of Appeal................................................... 1-2

2.) Docket Entries.................................................... 3-7e

3.) Memorandum and Opinion...................................... 8-27

4.) Plaintiff's Response to the Motion of Defendants to the
proceedings...................................................... 28-32

5.) Plaintiff's Response to Judges Order dated May 2, 2002   33-36



*SPERO T. LAPPAS, Esquire*
*Pa. Supreme Court ID No. 25745*
*Serratelli, Schiffman, Brown and Calhoon, P.C.*
*2080 Linglestown Road*
*Suite 201*
*Harrisburg, Pennsylvania 17110-9670*
*Telephone (717) 540-9170*
*Fax (717) 540-5481*
*ATTORNEY FOR APPELLEES DAVID GRAYBILL AND MICHAEL SWEGER*

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

BEVERLY BEAM,                          :
                                       :
                                       :
                                       :   No. 04-3424
              v.                       :
                                       :
MARC BAUER, GLENN ZEHNER              :
CAPITAL AREA INTERMEDIATE             :
UNIT, SCOTT DOWNEY, ROGER             :
MORRISON, DAVID GRAYBILL              :
AND MICHAEL SWEGER,                    :

<u>MOTION OF APPELLEES GRAYBILL AND SWEGER</u>
<u>TO STAY THE BRIEFING SCHEDULE AND FOR</u>
<u>RELIEF UNDER RULE OF APPELLATE PROCEDURE 38</u>

AND NOW, this 17 day of Dec 2004, come the above-named Appellees by and

through their attorneys, Serratelli, Schiffman, Brown and Calhoon, P.C., and Spero T. Lappas,

Esquire, and request that this Court issue an Order staying the briefing schedule and entering

relief in favor of the Appellees and against the Appellant pursuant to Federal Rule of Appellate

Procedure 38 respectfully representing as follows:

1. This is an appeal by Beverly Beam (Plaintiff in the Court below) from an Order of the

Honorable James F. McClure, Jr., United States District Judge, ordering her to pay attorneys fees

**EXHIBIT**
**B**

and costs under 42 USC 1983.

2. Beverly Beam (and more to the point her counsel, Donald Bailey, Esquire) appear to take the position that the District Court's Order was an error.

3. It is, however, difficult to discern from the brief filed by Attorney Bailey what is the exact nature of his complaints with the District Court. In fact, the Brief for Appellant is largely a series of frivolous, irrelevant and improper ad hominem attacks on this Court and the District Court.

4. This correct Brief is the latest outrage filed by this Appellant and her counsel in a series of frivolous lawsuits, motions, briefs, and appeals filed in the District and Circuit Courts on the same claims of civil rights violations, all of which have been rejected by the reviewing courts. A short history follows:

5. In 2001, Beverly Beam commenced a cause of action in the Middle District Court (Middle District No. CV-01-0083) alleging violations of her due process and equal protection rights, as well as a violation of anti-trust laws and asserting state claims of civil conspiracy and breach of contract. (Exhibit A)

6. All defendants filed motions to dismiss under Rule 12(b)(6) and those motions were granted by United States District Judge James McClure on April 10, 2002. (Exhibit B)

7. The Third Circuit Court of Appeals affirmed Judge McClure's Order on December 23, 2002 in a case docketed as Court of Appeals Docket No. 02-2050. A request for attorneys fees filed in the Circuit Court was denied with a note that Judge Nigard would have granted the motion. (Exhibit C)

8. On October 7, 2002, this same Plaintiff, represented by the same attorney, filed another lawsuit against these appellees (and others) raising essentially the same cause of action as the one which Judge McClure had dismissed on the 12(b)(6) motion in District Court Number

CV-01-0083. (Exhibit D)

9. These appellees (defendants in the court below) filed a motion for sanctions under Federal Rule of Civil Procedure 11 alleging that the second lawsuit was frivolous. (Exhibit E)

10. Judge Rambo granted the Rule 11 motion and granted, among other relief, attorneys fees to these appellees in the amount of $4,755.00 against Attorney Don Bailey and the Law Firm of Bailey, Stretton and Ostrowski. (Exhibit F)

11. In the course of the litigation of the second lawsuit, the court struck one of Attorney Bailey's briefs by an order which found that the brief was unprofessional, made disparaging remarks about the court, and violated the Pennsylvania Rules of Civility. (Exhibit G)

12. The plaintiff (through Attorney Bailey) has appealed Judge Rambo's order. That appeal is pending before this court as Third Circuit No. 04-2764. Briefs are due on January 10, 2005.

13. On July 29, 2004 United States District Judge McClure issued an Order in case number CV-01-0083, granting attorneys fees to these appellees and against the Plaintiff in the amount of $12,532.50 plus $56.03 in costs.

14. The Plaintiff (per Attorney Bailey) appealed this order (the present appeal). The appellant filed her brief on November 24, 2004.

15. In connection with the second lawsuit (District Court No. 02-CV-1797), this appellant filed an appeal from the District Court's February 27, 2003 Order granting the motions to dismiss pursuant to Rule 11. On September 9, 2004 the Circuit Court granted these appellees' motion for attorney's fees and costs in full, amounting to $2,487.50 (Exhibit H) in the case docketed to Third Circuit No. 03-1874.

16. An identical order was entered in the Third Circuit Docket No. 03-2194.

17. In granting the appellees' motion for attorneys fees in case number 03-1874 and case

number 03-2194, the Third Circuit held as follows:

> The decision whether to appeal from an order of the District Court is not a matter to be taken lightly, by either a losing party or her counsel. An appeal is not just the procedural next step in every lawsuit. Neither is it an opportunity for another "bite of the apple," nor a forum for a losing party to "cry foul" without legal or factual foundation. An appeal is a serious matter because it is a claim of error by the District Court and an attack on the validity of its order. Consequently, if the appeal is wholly lacking in merit, there are consequences. Appellant herein now must face them.

18. Accordingly, this Plaintiff, represented by the same attorney, has filed two lawsuits in the District Court, both of which raised the identical same case. Both of those lawsuits resulted in the District Judges granting attorneys fees to the Defendants. The Third Circuit has granted attorneys fees in at least one appeal. The District Court has found at least once that a brief filed by this Plaintiff needed to be stricken because of the unprofessional and disparaging way in which the Plaintiff's Counsel spoke of the courts.

19. Now pending before this court is the plaintiff's Brief in support of an appeal from the District Court's (Judge McClure) grant of attorneys fees in the first lawsuit.

20. Presenting the Appellant's unclear averments of error, Attorney Bailey has made the following scandalous, disparaging, unprofessional, and improper remarks:

A. "Federal Judge James McClure, had displayed time and time again an intense dislike for the politics and activities of Plaintiff's Counsel." (Page 3)

B. Judge McClure is "even trying to limit [Attorney Bailey's] representation of poor citizens and as citizens of color in the Williamsport area." (Page 4)  Attorney Bailey calls for an investigation of Judge McClure on these grounds. (Page 4)

C. "The Honorable Sylvia H. Rambo dismissed [one of the Plaintiff's lawsuits] without reading one single word of the factual information discovered during the discovery conducted on the previous case." (Page 5)

D.    "Not a single federal judge at either district or appellate level has ever read one single deposition or addressed any of the facts developed during discovery which lead to the second complaint." (Page 5)

E.    "This state of affairs not only needs to be appealed to the Supreme Court of the United States so that those justices can see the way this matter has been handled by our local and appellate courts, but it needs to be published and written about across our country as an example of how an attorney who fights diligently on behalf of the rights of American citizens and the citizen in pursuit of an opportunity to be heard can have their case manipulated intentionally by judicial decisions that he genuinely believes are meant to intimidate and deter him as part of a course of judicial conduct." (Page 6)

F.    "Counsel genuinely believes that this entire matter has been intentionally handled in a certain way to ensure a certain outcome..." (Page 6)

G.    "...not a single federal judge at any level has ever reviewed even a summary of the fruits of discovery which were the sole responsibility of the decisions of Judge James McClure." (Page 6)

H.    "The irony of all of this is that the Federal District Judge involved, and yes this Appellate Court, knows that the Plaintiff should have been given an opportunity to amend her complaint." (Page 7)

I.    Attorney Bailey charges that this case represents "a tragic distortion of justice and...an affront to the very purposes of our civil rights laws and our purported right to petition our government and enjoy access to our courts." (Page 7)

J.    The Plaintiff's "exposure for sanctions has not been caused by her, but by the intentional actions of the District Court." (Page 8)

K.    "Under these very strange circumstances an investigation is in order." (Page 8)

L.    "...our Court should not be the providence of personal retribution, some nihilistic, inherintantly contradictory concept of getting even, or a dedication to teaching an attorney not to speak out at the expense of a citizen's rights, or even, god forbid, judicial nullification." (Page 8)

21.  All of this constitutes an outrageous and unprofessional assault on the integrity of the District and Circuit Courts. The Appellant's repeated calls for investigations, Supreme Court scrutiny, and public revelation of the courts' alleged malfeasances ("...it needs to be published and written about across the country as an example of how an attorney who fights diligently on behalf of the rights of American citizens... can have their case manipulated intentionally by judicial decisions that he genuinely believes are meant to intimidate...") bespeak a profound disrespect.

22.  In addition to this outrageous conduct towards the courts, the Appellant's Brief includes a number of equally outrageous statements that are not only beyond the scope of any lower court record, but which are irrelevant and essentially meaningless. Chief among these averments is the repeated allegation that the FBI is "pursing" and "investigating the activities of certain staff members at the I.U." There is no evidence of this. This has never been a matter alleged or litigated in the court below. It is preposterous to drop such scandalous and absurd averments in an appeals brief.

23.  This court has written about Attorney Bailey's tactics and the Appellant's behavior in a related case. This court has assessed attorney's fees against Attorney Bailey based upon his pursuit of a prior frivolous appeal in connection with Beverly Beam's misguided crusade against these defendants.

24.  The Appellant's Brief and its contents identified the appeal as frivolous.

*SPERO T. LAPPAS, Esquire*
*Serratelli, Schiffman, Brown and Calhoon, P.C.*

Page 6

25. Taking all of this into account, the Appellees respectfully suggest that this Court should exercise its supervisory and discretionary authority by:

A.   Staying further proceedings in this case, including the briefing scheduled.

B.   Dismissing the Appellant's Appeal.

C.   Assessing double attorneys fees and costs against Attorney Bailey and in favor of these Appellees relative to the litigation of this Motion and Appeal.

D.   Referring this litigation and the Appellant's Brief to proper disciplinary authorities for their review.

*RESPECTFULLY SUBMITTED,*

*SERRATELLI/SCHIFFMAN, BROWN AND CALHOON, P.C.*

*By:* _____
 *SPERO T. LAPPAS, Esquire*
 *Pa. Supreme Ct. ID no. 25745*
 *2080 Linglestown Road*
 *Suite 201*
 *Harrisburg, PA  17110-9670*
 *(717) 540-9170*
 *Attorneys for Appellees Sweger and Graybill*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

BEVERLY BEAM )  **CIVIL ACTION LAW**
       )
       )
  Plaintiff   )
       )
  vs.     )
       )
SCOTT DOWNEY, ROGER )
MORRISON, DAVID GRAYBILL )
AND MICHAEL SWEGER )  **JURY TRIAL DEMANDED**
       )
  Defendants  )
       )



**1 : CV - 01 - 0083**

*FILED*
HARRISBURG, PA

JAN 1 6 2001

MARY E. D'ANDREA, CLERK
Per_____ Deputy Clerk

## COMPLAINT

## INTRODUCTORY STATEMENT

1.) The plaintiff is an independent contractor who transports special need's children for the Capital Area Intermediate Unit (IU). The defendant Downey is Transportation director for the IU. Mr. Morrison, Mr. Sweger and Mr. Graybill are also independent contractors who work with the IU. The gravamen of the plaintiffs complaint alleges violations of a number of federally guaranteed rights, including the right to engage in her chosen occupation free of unreasonable and arbitrary interference by state actors, her right to due process and the equal protection of the laws, violations of her rights to contract free of anti-trust violations, and to not suffer

violations of Pennsylvania State Law.

## JURISDICTION AND VENUE

2.)    Jurisdiction is conferred on this Court by 28 U.S.C. §1331 and 28 U.S.C. §1343 (a) (3) and (4) and by the remedial statute 42 U.S.C. §1983.

3.)    A jury trial is demanded.

4.)    Punitive damages are requested of the individual defendants.

5.)    This Court's supplemental jurisdiction is invoked as per 28 U.S.C. §1367.

6.)    Venue is properly in the Middle District because all parties, material witnesses, and events relevant to this matter are common to Cumberland, Dauphin, and Perry Counties, Pennsylvania.

7.)    The plaintiff, Beverly Beam, is an adult American citizen engaged in the business of transporting school students for educational purposes.

8.)    The defendants, Sweger and Graybill is an independent contractor who transports children for hire for the IU.

9.)    The defendant, Downey is Transportation Director for the IU.

10.)    The defendant, Morrison is an independent contractor, who like the plaintiff, transports school children for the IU also.

10a.)    The defendant, Sweger is also an independent contractor with the IU.

2

## OPERATIVE FACTS

11.)  The plaintiff has been an independent contract driver for the IU for 15 years.

12.)  During that period of time, plaintiff has been a proficient, hard working business person, providing excellent service to students, member school districts, and the IU. She has had, on average, over 400 miles over the past 4-5 years. Last years miles (1999 -2000) averaged 530 miles. This year, (200 - 2001) plaintiff has been cut to less than 190 miles. Downey has given her work to Sweger/ Graybill.

13.)  A number of years ago plaintiff, and many other small independent contractors, supported Mr. Morrison with money in his efforts to debunk and defeat the attempts of Mr. Don Boyanowski to establish a transportation contracting business to compete with the IU.

14.)  At that time Morrison promised, as did IU officials, including Mr. Marc Bauer, the Assistant Executive Director, that the IU intended to maximize state reimbursement and preserve the small independent contractor's relationships with the IU on into the future i.e. save the small IC's jobs.

15.)  Instead, upon information and belief, a small group of the larger independent contractors, including Morrison, Sweger and Graybill, along with IU officials, including Downey, decided to squeeze small independent contractors, like

3

plaintiff, out of business to benefit the favored group of larger independent contractors.

16.)   The defendant Downey has openly made statements about his plans to force the small independent contractors (IC's) like plaintiff out of business.

17.)   The defendant Downey has provided unlawful, selective, and targeted support to the business plans and efforts of the defendants Morrison, Sweger and Graybill.

18.)   Downey has taken runs (regularly scheduled trips to pick children up, transport them to education sites and return them home) from small independent contractors, including plaintiff, solely for the purpose of forcing them out of business and giving their runs to the larger IC's  such as Morrison, Sweger/Graybill.

19.)   Downey has caused a run that has been served by the plaintiff through a steady employee for many many years, where she transported among others, a number of deaf children, to be taken from plaintiff and given them to Sweger and Graybill for no reason other than to force  plaintiff out of business and give Sweger and Graybill more business.

20.)   Plaintiff's employee (Jackie Shutt) could  communicate effectively with the deaf children. She and Plaintiff were liked and respected by the family. The children were happy and secure.

4

21.)     But to merely add to Sweger and Graybill's coffers, and to injure plaintiff, the defendants Downey, Sweger and Graybill arbitrarily took the runs from plaintiff and gave it to Graybill. Consequently, children were made to suffer without any concern or respect for their interest or safety. Graybill is not even from the area. Neither he nor his employees even knew the run. There was virtually no financial benefit to anyone except Sweger/Graybill affected by the change and it hurt plaintiff, her employee, the children and their family.

22.)   The Defendant Downey has reassigned runs from small independent contractors to provide more money to the group of favorites, especially Morrison.

23.)   Downey has unlawfully taken these "runs" (the routes where children are picked up at home and driven to schools, or other educational sites, and returned) from small IC's and redistributed them to a small group of favorites (Morrison is first among them) seeking to run the small IC's out of business.

24.)   The defendant Downey has intentionally adopted policies designed to force the cost of business for small IC's, like plaintiff, higher and higher, to the point of making it prohibitive.

25.)   Downey has openly stated the IU intends to drive small IC's out of business and eliminate them as contractors.

26.)   This is being done as part of a larger overall plan to also eliminate

5

transportation services by IU employees and put all of the IU business into the hands of the small group of favored independent contractors such as Morrison, Sweger/Graybill, and others, but particularly Morrison.

27.) The unlawful actions by the defendants Downey, Morrison, Sweger and Graybill included changing the plaintiffs' runs for the sole purpose of yielding to the wishes of Graybill and the larger independent contractors. This practice has caused plaintiff money, debt, and worked to the detriment of children and taxpayers.

28.) Downey, and it is believed, some of the large IC's put together a plan to require each IC to acquire at least 2 wheel chair vans.

29.) This false and pretextual policy was not only unnecessary, but was designed solely to force plaintiff and other small IC's out of business.

30.) This wheel chair van policy required IC's with only one or two runs to acquire 2 wheel chair vans while those with 10 to 20 runs making hundreds of thousands of dollars, also only had to acquire 2 vans.

31.) Many small IC's, such as plaintiff, have never had any use for a wheel chair van but went ahead, and, like plaintiff purchased a van for conversion purposes, at great financial loss.

32.) Plaintiff believes, and therefore aver, that the IU has at least 20 wheel chair vans sitting in their parking lot unused but instead funnels wheel chair business

to favored contractors. Downey has done this as part of defendants plan to coerce plaintiff into giving up her IC business.

33.) Plaintiff, based upon information and belief, avers that the plan by defendants to force her and other small IC's out of business has been ongoing for a long time and is designed to create more business for Morrison, Sweger, Graybill and others, where they will be able to take over the entire business of the IU.

34.) Morrison and it is believed, Sweger and Graybill, are allowed to choose their runs and do not have to conform to the rules and regulations which govern other contractors.

35.) Morrison is permitted to pad miles and he and other favored contractors who were supportive of the IU, in an earlier legal dispute, have their choice of runs at the expense of other and smaller independent subcontractors.

36.) Downey had assisted Morrison, Sweger, Graybill, and others, to the detriment of other contractors, and even IU employees, in building their independent contractor (IC) business, through a pattern of preferential treatment using his powers as a government employee to bestow special help. For example, Downey has even assigned IU drivers and vehicles to help Morrison.

37.) The defendant Downey has even helped Morrison avoid contract requirements on racial issues in their unlawful efforts to make it possible for

7

Morrison to exaggerate his empty mileage and "pad" or increase run mileage, and thereby maximize profits for Morrison.

38.) Even though the IC's are required to conduct themselves in a non-racist fashion, via express provisions of their contract with the IU, Downey assisted Morrison in writing a newspaper advertisement to be placed in newspapers in Northern Dauphin County for the purpose of hiring drivers.

39.) It is averred that this plan was carried out for the purpose of ensuring that all of Morrison's drivers were white, and also so that he could "pad" miles by maximizing empty miles and long trips for short hauls to serve the Harrisburg School District.

40.) To carry this plan out to shift Harrisburg School District runs to Morrison, Morrison with Downey's help, wrote the advertisement at the IU, then ran it in Northern Dauphin County to hide from Black officials in Harrisburg for 2 reasons, 1.) to avoid hiring black persons, and 2.) to ensure long runs with vehicles stationed in Northern Dauphin County that would maximize mileage. Downey then removed the IU driver and the IU vehicle (a wheel chair van) from service, even though the family had known and trusted the driver and had received dependable service for years. Now the run will originate in Northern Dauphin County instead of Summerdale, just across the I 81 bridge from the Harrisburg School District.

8

41.) The second part of the Downey plan was to feed field trips and other special trips from Harrisburg School District to Morrison (and presumably other favorites) to pad miles. Because the trips originate so far away, the mileage is quite long, and the total reimbursement is much higher.

42.) The IU has, in the Harrisburg School District, a predominately black district as a member. But for years the IU has not hired even one black employee, at Summerdale at least, and there are no black employees who drive for the IU.

43.) Thus Harrisburg, by design, is denied many deserved employment opportunities for its black residents due to the racist policies of the defendants, particularly Downey and Morrison who conspire to give special assistance to their business.

44.) The impact of this racist misconduct on plaintiff, and other's similarly situated, is to deprive them of an equal opportunity to share in field trip opportunities which is a valuable financial emolument of the IC relationships with the IU.

**WHEREFORE** the plaintiff demands judgement of the defendants for the deprivation of plaintiff's rights under the 14th Amendment in depriving plaintiff of her rights to substantive due process. Plaintiff also demands judgement for the deprivation of the plaintiff's rights pursuant to the Privileges and Immunities clause of the 14th Amendment, and for violations of her rights to the equal protection of the

laws. Additionally plaintiff's rights, as supplemental state claims, to be free of breach of contract violations and civil conspiracies has been violated by the defendants and she demands judgement therefore. Lastly, the plaintiffs right to be free of protections afforded by the anti-trust laws has been violated by the defendants. For all violations stated above plaintiff demands judgement jointly and severally and seeks fees, costs, attorneys fees, and such other relief as the Court may deem appropriate.

RESPECTFULLY SUBMITTED,

Don Bailey PAID# 23786
4311 N. 6th Street
Harrisburg, PA 17110
(717) 221-9500

January 16, 2001

10

# VERIFICATION

I, Beverly Beam, hereby swear and affirm that the aforegoing Complaint is true and correct to the best of my knowledge, information, and belief. I am aware that making false representations to Authorities is a violation of law.


*Beverly Beam*
Beverly Beam


Dated: January 15, 2001

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

BEVERLY BEAM,  :
        Plaintiff  :  No. 1:CV-01-0083
        :  (Judge McClure)
        :
    v.  :
        :
        :
SCOTT DOWNEY, ROGER  :
MORRISON, DAVID GRAYBILL  :
and MICHAEL SWEGER,  :
        Defendants  :

**FILED**
WILLIAMSPORT, PA

APR 1 0 2002

MARY E. D'ANDREA, CLERK
Per_____
           DEPUTY CLERK

## O R D E R

April 10, 2002

For the reasons set forth in the accompanying memorandum,

**IT IS ORDERED THAT:**

1.    Defendant Scott Downey's partial motion to dismiss and to strike impertinent matter from the complaint (record doc. no. 7) is granted pursuant to Fed. R. Civ. P. 12(b)(6) and Fed. R. Civ. P. 12(f).

    1.1 Given the court's holding on plaintiff's equal protection claim, all of plaintiff's claims are dismissed as against defendant Downey.

    1.2 Downey's motion to strike impertinent matter from plaintiff's complaint is granted in its entirety.

2.    Defendant Roger Morrison's motion to dismiss (record doc. no. 10) is granted pursuant to Fed. R. Civ. P. 12(b)(6).



2.1  All of plaintiff's claims are dismissed as against defendant Morrison.

3.    Defendants David Graybill's and Michael Sweger's motion to dismiss (record doc. no. 11) is granted pursuant to Fed. R. Civ. P. 12(b)(6).

3.1  All of plaintiff's claims are dismissed as against defendants Graybill and Sweger.

4.    The clerk is directed to close the case file.

James F. McClure, Jr.
United States District Judge

2

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 02-2050

———————

BEVERLY BEAM,
                                              Appellant

v.

SCOTT DOWNEY; ROGER MORRISON;
DAVID L. GRAYBILL; MICHAEL SWEGER

———————

Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil No. 01-cv-00083)
District Court Judge:  Honorable James F. McClure, Jr.

———————

Submitted Pursuant to Third Circuit LAR 34.1(a)
on December 20, 2002

Before:  NYGAARD, ALITO and RENDELL, Circuit Judges

(Filed: December 23, 2002 )

———————

OPINION OF THE COURT

———————

RENDELL, Circuit Judge.

Beverly Beam appeals from an order entered in the District Court on April 10,

2002, granting defendants' motions to dismiss her complaint pursuant to Fed. R. Civ. P.

12(b)(6).  In that complaint, Beam alleges that the defendants infringed on her

constitutional rights of equal protection and substantive due process, and committed various state law and antitrust violations. The District Court had jurisdiction under 28 U.S.C. §§ 1331, 1343, and 1367. We exercise jurisdiction pursuant to 28 U.S.C. § 1291, and will affirm.

As we write solely for the parties, we need not detail the factual background of this litigation. On appeal, Beam most prominently argues that the District Court abused its discretion in failing to convert the motions to dismiss to motions for summary judgment, and committed legal error in dismissing Beam's equal protection claims. Beam's arguments are meritless. After careful review, we agree that Beam's complaint failed to state a claim upon which relief can be granted, and will affirm for substantially the reasons set forth in the Memorandum filed by the District Court.

The order of the District Court will be AFFIRMED.

———————————————

TO THE CLERK OF COURT:

Please file the foregoing opinion.

/s/ Marjorie O. Rendell
Circuit Judge

2

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 02-2050

———————

BEVERLY BEAM,
Appellant

v.

SCOTT DOWNEY; ROGER MORRISON;
DAVID L. GRAYBILL; MICHAEL SWEGER

———————

Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil No. 01-cv-00083)
District Court Judge:  Honorable James F. McClure, Jr.

———————

Submitted Pursuant to Third Circuit LAR 34.1(a)
on December 20, 2002
Before:  NYGAARD, ALITO and RENDELL, <u>Circuit</u> <u>Judges</u>

———————

JUDGMENT

———————

This cause came on to be heard on the record from the United States District Court

for the Middle District of Pennsylvania and was submitted pursuant to Third Circuit LAR

34.1(a) on December 20, 2002. On consideration whereof, it is now here

ORDERED and ADJUDGED by this Court that the Order of the District Court

entered on April 10, 2002, be and the same is hereby AFFIRMED.  All of the above in

accordance with the opinion of this Court.  Costs taxed against the Appellant.

ATTEST:

*Kathleen Brown*
Acting Clerk

Dated: December 23, 2002

## IN THE UNITED STATES DISTRICT COURT FOR
## THE MIDDLE DISTRICT OF PENNSYLVANIA



BEVERLY BEAM                   )     **CIVIL ACTION LAW**

            Plaintiff      )   **1 : CV 02-1797**

            vs.            )     NO.

MARC BAUER, GLENN ZEHNER )
CAPITAL AREA INTERMEIDATE)
UNIT, SCOTT DOWNEY, ROGER)
MORRISON, DAVID GRAYBILL )
AND MICHAEL SWEGER,      )     **JURY TRIAL DEMANDED**

        Defendants     )

### COMPLAINT

FILED
HARRISBURG, PA

OCT 0 7 2002

MARY E. D'ANDREA, CLER
Per _____
Deputy Clerk

### INTRODUCTORY STATEMENT

1.)  This is a civil rights complaint brought by an independent contractor

who works for the defendant Capital Intermediate Unit (IU). The suit

is brought against the IU and certain of its employees namely Marc

Bauer, Glenn Zehner and Scott Downey, and certain independent

contractors who work with the IU (Morrison, Graybill and Sweger),

who, plaintiff alleges, initially conspired to take, and did take,

plaintiffs work, interfering with her right to contract and enjoy the

equal protection of the laws. Plaintiff was one of a class of small

1

Independent Contractors (IC's) who, she alleges, were, and still are, victimized by defendants. Plaintiff further alleges she suffered retaliation because she pursued legal recourse against the defendants, and protected matters of public concern.

## JURISDICTION AND VENUE

2.) Jurisdiction is conferred on this court by 28 U.S. C. 1331 and 1343 (a) (3) and (4) and by the remedial statute 42 U.S.C. 1983. Plaintiff also invokes this Court's supplemental jurisdiction as per 28 U.S.C. 1367 (c).

3.) A jury trial is demanded.

4.) Venue is properly in the Middle District of Pennsylvania because all parties, material witnesses, and events are relevant to this matter are common to Cumberland, Dauphin, and Perry Counties, Pennsylvania.

## PARTIES

5.) The defendant Bauer is Assistant Executive Director at defendant IU where his assists the defendant Zehner, Executive Director at the IU. Downey is Transportation Director at the defendant IU.

6.) The defendants Sweger, Graybill, and Morrison are IC's for the IU who transport children (special needs children) for hire.

2

## RIGHTS VIOLATED

7.) Plaintiff is a member of a class of independent contractors whose rights to the equal protection of the laws under the 14th Amendment was violated by the defendants, who intentionally acted together to use the power of the state to force plaintiff out of business in order to take her contracts.

8.) Plaintiff's rights not to be deprived of state and federally guaranteed rights prohibiting the confiscation of property and the liberty to contract under the 1st and 14th Amendment were violated by the defendants.

9.) Plaintiff's rights under the 1st and 14th Amendment not to suffer interference with her access to the Courts, or suffer retaliation for attempting to utilize and for utilizing the courts, and for commenting and associating to be active in expressing view points on matters of public concern, were violated by the defendants.

10.) Plaintiff was deprived of her rights by the defendants' fraudulent misconduct which was designed to acquire state funds through deceitful and fraudulent misrepresentations of facts about vehicles

and the state reimbursable mileage they travel. Those fraudulent misrepresentations to acquire state funds were intentionally devised by the defendants to reward a group of large IC's, including the private defendants, who were part of a conspiracy by them and the government defendants, to surreptitiously get them more money for their wheelchair vans. Defendants knew this money was denied the group of small IC's like plaintiff, and was in part an act of retaliation for plaintiff taking legal action and for opposing the mandatory 2 wheelchair van policy plaintiffs helped defeat.

## OPERATIVE FACTS

11.)    The plaintiff has been an independent contract driver for the IU for over 15 years.

12.)    During that period of time, plaintiff has been a proficient, hard working business person,  providing excellent service to students, member school districts, and the IU. She has had, on average, over 400 miles per day of travel over the past 4-5 years; previous years miles (1999 -2000) averaged 530 miles. For the 2000-2001 year, (200 - 2001) plaintiff was cut to less than 190 miles. This was an act of retaliation. Downey gave her work to Sweger/

Graybill and also gave some to Morrison. This school year, 2002-2003, plaintiff has been cut further. This is more retaliation.

13.)    A number of years ago plaintiff, and many other small independent

contractors, supported Mr. Morrison with money in his efforts to defeat the attempts of Mr. Don Boyanowski to establish a transportation contracting business to compete with the IU.

14.)    At that time, Morrison promised, as did IU officials, including the defendant Bauer, that the IU intended to maximize state reimbursement and preserve the small independent contractor's relationships with the IU on into the future i.e. save the small IC's jobs.

15.)    Instead, upon information and belief, a small group of the larger independent contractors, including Morrison, Sweger and Graybill, along with IU officials, including Downey Bauer, and Zehner, decided to squeeze small independent contractors, like plaintiff, out of business to benefit the favored group of larger independent contractors, and particularly their favorite, Morrison.

16.)    The defendant Downey has openly made statements about his plans to force the small independent contractors (IC's) like plaintiff out of business.

5

17.)    The defendants Bauer, Zehner, IU, and Downey has provided unlawful, selective, and targeted support to the business plans and efforts of the defendants Morrison, Sweger and Graybill, by specifically giving them runs that would normally and presumably go to plaintiff in order to harm her and help the defendants.

18.)    Runs (regularly scheduled trips to pick children up, transport them to education sites and return them home) were taken from small independent contractors, including plaintiff, solely for the purpose of forcing them out of business and giving their runs to the larger IC's such as Morrison, Sweger/Graybill.

19.)    For example, Downey caused a run that had been served by the plaintiff through a steady employee for many many years, where she transported among others, a number of deaf children, to be taken from plaintiff and given to Sweger and Graybill for no reason other than to force plaintiff out of business and give Sweger and Graybill more business.

20.)    Plaintiff's employee (Jackie Shutt) could communicate effectively with the deaf children. She and Plaintiff were liked and respected by the family. The children were happy and secure.

21.)    But to merely add to Sweger and Graybill's coffers, and to injure plaintiff, the defendants Downey, Sweger and Graybill arbitrarily

took the runs from plaintiff and gave it to Graybill. Consequently, children were made to suffer without any concern or respect for their interest or safety. Graybill is not even from the area. Neither he nor his employees even knew the run. There was virtually no financial benefit to anyone except Sweger/Graybill who were part of the wheelchair conspiracy, affected by the change and it hurt plaintiff, her employee, the children and their family.

22.) The defendants reassigned work and forced exorbitant costs on small independent contractors like plaintiff, intending to provide more money to the group of favorites, especially Morrison.

23.) Downey unlawfully took "runs" (the routes where children are picked up at home and driven to schools, or other educational sites, and returned) from small IC's and redistributed them to a small group of favorites (Morrison is first among them) seeking to run the small IC's out of business. He did this with a run he gave to Morrison which Morrison personally drove at times, less than a mile from plaintiff's home.

24.) The defendants Downey, Bauer, Zehner, and the IU have intentionally adopted policies designed to force the cost of business for small IC's, like plaintiff, higher and higher, to the point of making it prohibitive.

25.) Plaintiff believes Downey has openly stated to other school officials that the IU intends to drive small IC's out of business and eliminate them as contractors.

26.) This is being done as part of a larger overall plan to also eliminate transportation services by IU employees and put all of the IU business into the hands of the small group of favored independent contractors such as Morrison, Sweger/Graybill, and others, but particularly Morrison.

27.) The unlawful actions by the defendants Zehner, Bauer, IU, Downey, Morrison, Sweger and Graybill included changing the plaintiffs' runs for the sole purpose of yielding to the wishes of Graybill and the larger independent contractors. This practice has caused plaintiff money, debt, and worked to the detriment of children and taxpayers.

28.) Bauer, Zehner, and Downey, and some of the large IC's, put together a plan to require each IC to acquire at least 2 wheel chair vans knowing they could not afford it, knowing the vans were not needed, and knowing the plaintiff and others small IC's never would, or could, use the vans but would be forced out of business in trying to acquire them..

29.) This false and pretexual policy was not only unnecessary, but was designed solely to force plaintiff and other small IC's out of business and

8

also to effectuate a plan by Morrison the defendants, and others to fraudulently divert state money into defendants hands.

30.) This wheel chair van policy required IC's with only one or two runs to acquire 2 wheel chair vans for which they had no use while those with 10 to 20 runs making hundreds of thousands or perhaps millions of dollars, also only had to acquire 2 vans.

31.) Many small IC's, such as plaintiff, have never had any use for a wheel chair van, but went ahead, and, like plaintiff, purchased a van for conversion purposes, at great financial loss.

32.) On or about the Winter of 2000 the defendants Zehner, Bauer, and Downey concocted a plan to require each IC to acquire 2 wheel chair vans knowing certain IC's, such as Morrison, already had such vans and was already billing them to the IU.

33.) Bauer and Downey conspired about this plan with certain larger IC's before notifying all IC's that they must acquire the wheel chair vans or abandon their contracting opportunities with the IC, contrary to his testimony under oath.

34.) Zehner was also aware of, and approved this plan.

35.) The small IC's complained and went to their member school districts to complain. This created intense political pressure on the defendants by and

through the IU's member school districts. The cost and obvious waste and outright stupidity of the requirement was an offense to common sense; and the district reacted accordingly.

36.) Shortly thereafter, on or about the Fall of 2000, the defendants Zehner, Bauer, and Downey were forced by the defendant IU which had to yield to pressure from its member districts to withdraw their 2 wheelchair, mandatory purchase by each IC, regardless of need, policy, because the Board realized it was a preposterous, unfair, unworkable, absurd idea with no reasonable basis related to the needs of students, taxpayers, or the IU.

37.) Yet the defendants, Graybill and Sweger, purchased 3 wheelchair vans on or about the Summer/Fall of 2000.

38.) The defendants Bauer, Zehner, and Downey and the large IC's were upset and angry that the small IC's had complained and had begun to speak out against and organize opposition to, and meet to oppose the wheelchair van policy, doing so in the Summer and Fall 2000, with plaintiffs eventually taking legal action and retaining counsel for which she has suffered retaliation.

39.) Beverly Beam, her husband Allen, and some friends were leaders in the opposition to the wheelchair policy which they described as "illegal" and

"unfair" and realized there was a conspiratorial effort to drive them out of business, in order to help defendants' friends and supporters.

40.) The plaintiff was one who was instrumental in causing a group of the small IU's to organize and consult with an attorney for the purpose of taking legal action against the defendants. This occurred in July and August 2000

41.) The defendants were aware of these meetings at the time, and through leaks and information gleaned from some participants at the meetings, they monitored the plaintiff's activities.

42.) On or about the late Summer/Fall of 2000 the IU defendants (hereinafter the IU, Zehner, Bauer, and Downey, where appropriate, will be referred to collectively as the "IU's defendants") openly exclaimed that they were going to help the IC's who helped them, never clearly describing what they meant by this to the small IC's.

43.) In November 2000 the defendants Bauer, Zehner, and Downey met secretly with Roger Morrison to discuss the IU wheelchair van policy so they could devise ways to help funnel money to Roger Morrison to the exclusion of the group of small IC's who did not have wheelchair vans.

44.) At the November meeting it was decided by the defendants Morrison, Bauer, Zehner and Downey to increase the per mile reimbursement to wheelchair vans only. This policy change was designed to

11

follow through on plans to assist the group of insiders who were planning to use the earlier wheelchair van policy, gone awray, to force the small IC's out of business.

45.) The IU then decided, as a body, to help Morrison and some other larger IC's by ratifying this change as a reward to the larger IC's for supporting the IU and as a way to punish plaintiff and others in the small group of IC's for resisting the defendants.

46.) The defendant Bauer, Zehner, Morrison, Downey and a group of larger IC's then met in early 2001 to put in place even more ambitious plans to channel public money to Morrison, Graybill and Sweger and some other large IC's at the expense of plaintiff and taxpayers.

47.) Plaintiff filed her original lawsuit on or about January 16, 2001.

48.) Shortly thereafter, the defendants, as an act of retaliation and support of Morrison, Graybill, and Sweger and others, and to punish the plaintiff, instituted an unlawful fraudulent policy whereby the large IC's could reimburse, on a one for one basis, a regular van for a wheelchair van at the much higher per mile wheelchair van basis, even if the wheelchair van sat idle. The defendants permitted Morrison and Graybill to pick their longest, largest regular run and bill it a wheelchair van rate which

12

was higher. This policy was meant to fatten the reimbursement for defendants and their friends and was done secretly.

49.) This policy was implemented, upon information and belief, by the defendants Bauer and Downey in unlawful agreement with Morrison, Graybill, Sweger, and others without informing Zehner or the IU who, however, later ratified this policy, and carry it on today.

50.) It is believed and alleged that this policy entails the unlawful manipulation and misrepresentation of vehicle use and mileage records to the state, and the payment of inflated reimbursement to the larger IC's. from state funds. It is a political award in the form of money and is a form of punishment to plaintiff and others who stood up to fight the pretexual wheelchair van policy. Plaintiff intends to file a Qui-Tam action on this matter.

51.) This policy is part of an overall master plan by defendants to provide money unlawfully to the participating larger IC's to repay them for supporting and participating in the IC plan to eliminate the small IC's like plaintiff.

52.) The defendants have continued to retaliate against the plaintiff and have now cut her runs and mileage almost in half for the current (2002-2003) school year.

53.) The aforementioned actions by the defendants violate plaintiff's rights to be treated on an equal basis similar to other IC's similarly situated where there is no rational basis for the unequal treatment exists.

54.) It is not rational and in fact is arbitrary and capricious for the defendants to reimburse their co-conspirators at a greater rate per mile than plaintiff for the use of an ordinary van, to support an unlawful conspiracy to retaliate against plaintiff for resisting, in accordance with her 1st Amendment rights, to speak out, and to associate and work on matters of public concern. Plaintiff opposes the defendant's plans to fraudulently pay inordinate amounts of public money to a group of favored contractors and to retaliate against plaintiff for hiring a lawyer to resist defendants' acts and intentions to engage in public corruption at plaintiffs expense.

55.) Plaintiff is being denied a fundamental liberty and property right by defendants, and that is the right to contract freely without being subject to unreasonable and arbitrary restraints which are fraudulent and deceptive.

56.) Plaintiff alleges the denial of an equal opportunity to bid, procure, and carry out her contracts due to arbitrary and capricious actions by the defendants to reimburse their co-conspirators at a greater rate per mile

14

then plaintiff for an ordinary van, is a violation of her 1st Amendment rights and her rights under the equal protection clause of the 14th Amendment and is an unlawful attempt to retaliate against plaintiff for resisting, in accordance with her 1st Amendment rights to speak out on matters of public concern, defendants conspiracy to pay inordinate amounts of public money through a fraudulent scheme victimizing the state, to a group of favorites in the same group of contractors to whom plaintiff belongs.

57.) It is also unlawful to retaliate against the plaintiff for voicing and organizing opposition to a public policy designed to discriminate against plaintiff and others like her, and to treat her differently because she sought legal help and filed a law suit.

**WHEREFORE** plaintiff demands judgment of the defendants jointly and severally for the deprivation of her federally guaranteed rights as pled above, and for conspiracy to deprive her of those rights as protected by the 1st and 14th Amendments to the U.S. Constitution pursuant to 42 U.S.C. 1983 and for such other relief as the Court may deem appropriate.

Respectfully Submitted,

BAILEY STRETTON & OSTROWSKI
Don Bailey PAID# 23786
4311 N. 6th Street
Harrisburg, Pa 17110
(717) 221-9500

FILED
HARRISBURG, PA

JAN 0 6 2003

MARY E. D'ANDREA, CLERK
Per _____
Deputy Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BEVERLY BEAM** | : | **NO. 1:CV-01-0083** |
| | : | |
| **Plaintiff** | : | **(Judge McClure)** |
| | : | |
| **vs.** | : | |
| | : | **CIVIL ACTION - LAW** |
| **SCOTT DOWNEY, ROGER** | : | |
| **MORRISON, DAVID GRAYBILL** | : | |
| **AND MICHAEL SWEGER** | : | |
| | : | |
| **Defendants** | : | |

## DEFENDANTS GRAYBILL AND SWEGER'S MOTION FOR
## ATTORNEYS' FEES AND ASSOCIATED EXPENSES

AND NOW, come the Defendants, David Graybill and Michael Sweger,

by and through their attorneys, STEVEN J. SCHIFFMAN, Esquire and the law

firm of SERRATELLI, SCHIFFMAN, BROWN, & CALHOON, P.C.,

respectfully requests an award of attorneys' fees and costs pursuant to 42

U.S.C. §1988(b). In support thereof, Defendants aver as follows:



1.     Plaintiff filed a Complaint on or about January 16, 2001, alleging both federal and state law claims.

2.     On or about March 19, 2001, Defendants Graybill and Sweger filed a Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6).

3.     By Order dated April 10, 2002, Graybill and Sweger's Motion to Dismiss was granted pursuant to Federal Rule of Civil Procedure 12(b)(6) by the Honorable James F. McClure, Jr.

4.     Appellant filed a Notice of Appeal April 16, 2002.

5.     On or about August 8, 2002, Appellant filed her Brief in support of her appeal.

6.     Appellees Graybill and Sweger filed their Brief in opposition to the appeal on September 6, 2002.

7.     By Order dated December 23, 2002, the Order of the District Court entered April 10, 2002 was affirmed.

8.     Defendants are the prevailing party in this litigation in that Plaintiff's action was frivolous, unreasonable, or without foundation.  See Hughes v. Rowe, 449 U.S. 5, 14, 101 S.Ct. 173, 178 (1980).  See also Lato v. Sieverman, 919 F.Supp. 336 (C.D. Cal. 1996) (prevailing defendant should be awarded attorneys' fees where the action is found to be meritless).

2

9. As the prevailing party, Defendants have incurred attorneys' fees and other costs.

10. Attached to this Motion as Exhibit 1 is an itemization of time and services provided by Defendants' counsel on this case, and costs incurred and advanced. The itemization represents reasonable time spent on the items so indicated. All of these times and services were reasonable, proper and necessary to Defendants' prevailing in this case. Verification of these time records is attached hereto as Exhibit 2, collectively.

11. In this case Steven J. Schiffman, Esquire, charges an hourly rate of $175.00 per hour.

12. In this case Melanie L. Erb, Esquire, charges an hourly rate of $125.00 per hour.

13. Based on counsels' experience, litigation careers, and knowledge of civil rights law and litigation, base hourly rates of $175.00 per hour and $125.00 per hour, respectively, are reasonable.

14. In support thereof, Defendants will submit affidavits of attorneys in the greater Harrisburg with knowledge and proficiency in the fields of civil litigation and civil rights litigation, and with knowledge of the abilities of Defendants' counsel.

15. Defendants expect to incur additional expenses and counsel fees in the litigation of this Motion and in the collection of the costs and fees awarded. Defendants expressly reserve the right to supplement the within petition at a later date in order to accommodate any such additional expenses, costs and fees.

WHEREFORE, Defendants respectfully request an award of attorneys' fees and costs against Plaintiff.

Respectfully submitted,

**SERRATELLI, SCHIFFMAN, BROWN & CALHOON, PC**

By: _____

Steven J. Schiffman, Esquire
I.D. No.: 25488
Melanie L. Erb, Esquire
I.D. No.: 84445
Suite 201, 2080 Linglestown Road
Harrisburg, PA 17101
(717) 540-9170
Attorneys for Defendants David Graybill
And Michael Sweger

Dated: 1/11/03

Jan 2/2005

Client Ledger
ALL DATES

| Date / Entry# Explanation | Che# Rcpt# | General Rcpts | Disbs | Fees | Bld Inv# | Acc | Rcpts | Trust Disbs | Balance |
|---|---|---|---|---|---|---|---|---|---|
| 5809  GRAYBILL, DAVID D., SR. | | | | | | | | | |
| 01-027      BEAM V. DOWNEY, ET AL | | | | | | | | | |
| Jan 26/2001 SWEGERS BUS LINES, INC. | | | | | 44922 | 1 | 2500.00 | | 2500.00 |
| 176606 SWEGER | | | | | 44922 | 1 | 2500.00 | | 5000.00 |
| Jan 26/2001 DAVID GRAYBILL | | | | | | | | | |
| 176608 RETAINER | | | | 52.50 | 41427 | | | | |
| Jan 29/2001 Lawyer: 2  0.30 Hrs X 175.00 | | | | | | | | | |
| 74472 PREPARE NOTICE OF APPEARANCE AND | | | | | | | | | |
| ACCEPTANCE OF SERVICE | | | | 175.00 | 41427 | | | | |
| Jan 29/2001 Lawyer: 2  1.00 Hrs X 175.00 | | | | | | | | | |
| 74473 REVIEW COMPLAINT | | | | 125.00 | 41878 | | | | |
| Jan 29/2001 Lawyer: 30  1.00 Hrs X 125.00 | | | | | | | | | |
| 74474 RESEARCH | | | | 62.50 | 41878 | | | | |
| Jan 29/2001 Lawyer: 30  0.50 Hrs X 125.00 | | | | | | | | | |
| 74475 DRAFT MOTION TO DISMISS | | | | 250.00 | 41878 | | | | |
| Jan 30/2001 Lawyer: 30  2.00 Hrs X 125.00 | | | | | | | | | |
| 74476 DRAFT MOTION; RESEARCH | | | | 62.50 | 41878 | | | | |
| Feb 1/2001 Lawyer: 30  0.50 Hrs X 125.00 | | | | | | | | | |
| 74477 RESEARCH | | | | 52.50 | 41878 | | | | |
| Feb 5/2001 Lawyer: 2  0.30 Hrs X 175.00 | | | | | | | | | |
| 74478 TELEPHONE CALL TO/FROMDAN ALTLAND | | | | 70.00 | 41878 | | | -.. | |
| Feb 5/2001 Lawyer: 2  0.40 Hrs X 175.00 | | | | | | | | | |
| 74479 TELEPHONE CALL TO/FROMDAN ALTLAND | | | 0.00 | | 41427 | | | | |
| Feb 6/2001 Billing on Invoice 41427 | | | | | | | | | |
| 41095 FEES    227.50 | | | | | | | | | |
| Feb 6/2001 SERRATELLI, SCHIFFMAN,  BROWN & CALHOON 14084 | | | | | 44922 | 1 | | 227.50 | 4772.50 |
| 176796 PAYMENT FROM TRUST | | | | | | | | | |
| Feb 7/2001 TRUST | | 227.50 | | | | | | | |
| 245782 PMT - Client Paying BillGRAYBILL/SWEGER | | | | | | | | | |
| Feb 8/2001 Lawyer: 30  0.70 Hrs X 125.00 | | | | 87.50 | 41878 | | | | |
| 74480 RESEARCH FOR PREPARATION OF BRIEF IN | | | | | | | | | |
| SUPPORT OF MOTION TO DISMISS | | | | 35.00 | 41878 | | | | |
| Feb 12/2001 Lawyer: 2  0.20 Hrs X 175.00 | | | | | | | | | |
| 74481 TELEPHONE CALL TO/FROMDAN ALTLAND | | | | 0.00 | 41878 | | | | |
| Feb 12/2001 Lawyer: 2  0.00 Hrs X 175.00 | | | | | | | | | |
| 74482 TELEPHONE CALL TO/FROM | | | | 175.00 | 41878 | | | | |
| Feb 14/2001 Lawyer: 2  1.00 Hrs X 175.00 | | | | | | | | | |
| 74483 REVIEWBOYANOWSKI CASE FROM THE THIRD | | | | | | | | | |
| CIRCUIT | | | | 280.00 | 41878 | | | | |
| Feb 26/2001 Lawyer: 2  1.60 Hrs X 175.00 | | | | | | | | | |
| 74484 CONFERENCE WITHDAN ALTLAND | | | | 312.50 | 42354 | | | | |
| Mar 3/2001 Lawyer: 30  2.50 Hrs X 125.00 | | | | | | | | | |
| 74485 RESEARCH | | | | 0.00 | 42354 | | | | |
| Mar 4/2001 Lawyer: 30  2.00 Hrs X 0.00 | | | | | | | | | |
| 74486 RESEARCH AND DRAFT OUTLINE | | | | 0.00 | 42354 | | | | |
| Mar 5/2001 Lawyer: 30  3.50 Hrs X 0.00 | | | | | | | | | |
| 74487 DRAFT OUTLINE OF BRIEF | | | 0.00 | | 41878 | | | | |
| Mar 12/2001 Billing on Invoice 41878 | | | | | | | | | |
| 41545 FEES    1200.00 | | | | 50.00 | 42354 | | | | |
| Mar 12/2001 Lawyer: 30  0.40 Hrs X 125.00 | | | | | | | | | |
| 74488 REVIEW DEFENDANT'S ANSWER AND MOTION | | | | | 44922 | 1 | | 1200.00 | 3572.50 |
| Mar 12/2001 SERRATELLI, SCHIFFMAN,  BROWN & CALHOON 14209 | | | | | | | | | |
| 177174 PAYMENT FROM TRUST/MARCH | | | | | | | | | |
| Mar 12/2001 TRUST | | 1200.00 | | | | | | | |
| 245785 PMT - Client Paying BillGRAYBILL | | | | | | | | | |
| Mar 14/2001 Lawyer: 2  1.00 Hrs X 175.00 | | | | 175.00 | 42354 | | | | |
| 74489 REVIEWAND REVISE MOTION TO DISMISS | | | | | | | | | |
| Mar 14/2001 Lawyer: 30  0.30 Hrs X 125.00 | | | | 37.50 | 42354 | | | | |
| 74490 DRAFT PROCEDURAL BACKGROUND | | | | | | | | | |
| Mar 16/2001 Lawyer: 30  0.70 Hrs X 0.00 | | | | 0.00 | 42354 | | | | |
| 74491 RESEARCH | | | | | | | | | |
| Mar 19/2001 Lawyer: 30  2.50 Hrs X 125.00 | | | | 312.50 | 42354 | | | | |
| 74492 DRAFT BRIEF | | | | | | | | | |
| Mar 20/2001 Lawyer: 30  2.50 Hrs X 125.00 | | | | 312.50 | 42354 | | | | |
| 74493 DRAFT AND EDIT BRIEF | | | | | | | | | |
| Mar 22/2001 Lawyer: 2  1.00 Hrs X 175.00 | | | | 175.00 | 42354 | | | | |
| 74494 REVIEW AND REVISE BRIEF | | | | | | | | | |
| Mar 22/2001 Lawyer: 30  3.00 Hrs X 0.00 | | | | 0.00 | 42354 | | | | |
| 74495 EDIT AND REVISE BRIEF | | | | | | | | | |
| Mar 23/2001 Lawyer: 30  1.00 Hrs X 125.00 | | | | 125.00 | 42354 | | | | |
| 74496 REVISE STATEMENT OF FACTS | | | | | | | | | |

Jan 2/2003

Client Ledger
ALL DATES

| Date | Entry# / Explanation (Received From/Paid To) | Che#/Rcpt# | Rcpts | General Disbs | Fees | Bld Inv# | Acc | Rcpts | Trust Disbs | Balance |
|---|---|---|---|---|---|---|---|---|---|---|
| Mar 26/2001 | Lawyer: 30  0.50 Hrs X 125.00 | | | | 62.50 | 42354 | | | | |
| | 74497 EDIT BRIEF | | | | | | | | | |
| Mar 29/2001 | INV# 0000F138V1121/ UNITED PARCEL SERVICE | 28405 | | 10.25 | | 42354 | | | | |
| | 187725 INV# 0000F138V1121/ UNITED PARCEL SERVICE | | | | | | | | | |
| Apr 3/2001 | Lawyer: 30  0.30 Hrs X 125.00 | | | | 37.50 | 42756 | | | | |
| | 74498 TELEPHONE CALL TO/FROM ATTY ALTLAND | | | | | | | | | |
| Apr 4/2001 | Lawyer: 30  0.30 Hrs X 125.00 | | | | 37.50 | 42756 | | | | |
| | 74499 TELEPHONE CALL TO/FROM ATTY KAUFFMAN | | | | | | | | | |
| Apr 4/2001 | Lawyer: 30  0.30 Hrs X 125.00 | | | | 37.50 | 42756 | | | | |
| | 74500 TELEPHONE CALL TO/FROM ATTY ALTLAND | | | | | | | | | |
| Apr 5/2001 | Lawyer: 2  0.20 Hrs X 175.00 | | | | 35.00 | 42756 | | | | |
| | 74501 TELEPHONE CALL TO/FROMCHRIS AT BAILY OFFICE RE: JT MANAGMENT AGREEMENT | | | | | | | | | |
| Apr 9/2001 | Lawyer: 30  0.50 Hrs X 125.00 | | | | 62.50 | 42756 | | | | |
| | 74502 DRAFT CASE MANAGEMENT PLAN | | | | | | | | | |
| Apr 11/2001 | Billing on Invoice 42354 | | | 0.00 | | 42354 | | | | |
| | 42021 FEES 1562.50 DISBS 10.25 | | | | | | | | | |
| Apr 11/2001 | SERRATELLI, SCHIFFMAN, BROWN & CALHOON | 14291 | | | | 44922 | 1 | | 1572.75 | 1999.75 |
| | 177484 PAYMENT FROM TRUST/MARCH CHARGES | | | | | | | | | |
| Apr 12/2001 | UNITED PARCEL SERVICE | 28498 | | 10.25 | | 42756 | | | | |
| | 187726 INV# 0000F138V1131/ UNITED PARCEL SERVICE | | | | | | | | | |
| Apr 12/2001 | TRUST | | 1572.75 | | | | | | -. | |
| | 245788 PMT - Client Paying BillGRAYBILL | | | | | | | | | |
| Apr 18/2001 | Lawyer: 30  0.30 Hrs X 125.00 | | | | 37.50 | 42756 | | | | |
| | 74503 TELEPHONE CALL TO/FROM ATTY ALTLAND | | | | | | | | | |
| Apr 18/2001 | Lawyer: 30  0.30 Hrs X 125.00 | | | | 37.50 | 42756 | | | | |
| | 74504 REVIEW FAX FROM ATTY ALTLAND | | | | | | | | | |
| Apr 23/2001 | Lawyer: 2  0.50 Hrs X 175.00 | | | | 87.50 | 42756 | | | | |
| | 74505 REVIEWBRIEF | | | | | | | | | |
| Apr 23/2001 | Lawyer: 30  0.40 Hrs X 125.00 | | | | 50.00 | 42756 | | | | |
| | 74506 REVIEW PLAINTIFF'S REPLY BRIEF | | | | | | | | | |
| Apr 23/2001 | Lawyer: 30  0.70 Hrs X 125.00 | | | | 87.50 | 42756 | | | | |
| | 74507 OUTLINE REPLY BRIEF | | | | | | | | | |
| Apr 24/2001 | Lawyer: 2  0.50 Hrs X 175.00 | | | | 87.50 | 42756 | | | | |
| | 74508 PREPARATION OF NOTICE OF DEPOSITION | | | | | | | | | |
| Apr 24/2001 | Lawyer: 2  0.20 Hrs X 175.00 | | | | 35.00 | 42756 | | | | |
| | 74509 CORRESPONDENCE TO DON BAILEY | | | | | | | | | |
| Apr 25/2001 | Lawyer: 2  0.50 Hrs X 175.00 | | | | 87.50 | 42756 | | | | |
| | 74510 REVIEWJOINT CASE MANAGEMENT | | | | | | | | | |
| Apr 25/2001 | Lawyer: 2  0.50 Hrs X 175.00 | | | | 87.50 | 42756 | | | | |
| | 74511 REVIEWBRIEF OF DOWNY | | | | | | | | | |
| Apr 26/2001 | Lawyer: 30  0.30 Hrs X 125.00 | | | | 37.50 | 42756 | | | | |
| | 74512 LETTER TO ATTY BAILEY | | | | | | | | | |
| Apr 27/2001 | Lawyer: 30  1.50 Hrs X 125.00 | | | | 187.50 | 42756 | | | | |
| | 74513 DRAFT REPLY BRIEF | | | | | | | | | |
| Apr 30/2001 | Lawyer: 2  0.80 Hrs X 175.00 | | | | 140.00 | 42756 | | | | |
| | 74514 CONFERENCE WITHJUDGE RE: SCHEDULING | | | | | | | | | |
| Apr 30/2001 | Lawyer: 30  1.00 Hrs X 125.00 | | | | 125.00 | 43088 | | | | |
| | 74515 REVISE REPLY BRIEF | | | | | | | | | |
| Apr 30/2001 | Lawyer: 30  0.30 Hrs X 125.00 | | | | 37.50 | 43088 | | | | |
| | 74516 CONFERENCE CALL (CASE MANAGEMENT) | | | | | | | | | |
| May 4/2001 | Billing on Invoice 42756 | | | 0.00 | | 42756 | | | | |
| | 42423 FEES 1172.50 DISBS 10.25 | | | | | | | | | |
| May 4/2001 | SERRATELLI, SCHIFFMAN, BROWN & CALHOON | 14377 | | | | 44922 | 1 | | 1182.75 | 817.00 |
| | 177756 PAYMENT FROM TRUST/APRIL CHARGES | | | | | | | | | |
| May 7/2001 | TRUST | | 1182.75 | | | | | | | |
| | 245791 PMT - Client Paying BillGRAYBILL | | | | | | | | | |
| May 10/2001 | UNITED PARCEL SERVICE | 28689 | | 10.38 | | 43088 | | | | |
| | 187727 INV# 0000F138V1181 / UPS CHARGES | | | | | | | | | |
| Jun 4/2001 | Billing on Invoice 43088 | | | 0.00 | | 43088 | | | | |
| | 42755 FEES 162.50 DISBS 10.38 | | | | | | | | | |
| Jun 5/2001 | SERRATELLI, SCHIFFMAN, BROWN & CALHOON | 14464 | | | | 44922 | 1 | | 172.88 | 644.12 |
| | 178038 PAYMENT FROM TRUST/MAY CHARGES/43088 | | | | | | | | | |
| Jun 6/2001 | TRUST/GRAYBILL | | 172.88 | | | | | | | |
| | 245794 PMT - Client Paying BillGRAYBILL | | | | | | | | | |
| Jun 25/2001 | Lawyer: 30  0.50 Hrs X 125.00 | | | | 62.50 | 43593 | | | | |
| | 74517 DRAFT DISCOVERY REQUESTS | | | | | | | | | |
| Jun 26/2001 | Lawyer: 30  0.30 Hrs X 125.00 | | | | 37.50 | 43954 | | | | |
| | 74518 REVISE DISCOVERY REQUESTS | | | | | | | | | |
| Jun 29/2001 | Lawyer: 30  0.10 Hrs X 125.00 | | | | 12.50 | 43954 | | | | |
| | TELEPHONE CALL TO/FROM CLIENTS | | | | | | | | | |

SERRATELLI, SCHIFFMAN, BROWN & CALHOUN, PA

Client Ledger
ALL DATES

| Date | Received From/Paid To / Entry# Explanation | Che# Rcpt# | Rcpts | General Disbs | Fees | Bld Inv# | Acc | Rcpts | Trust Disbs | Balance |
|---|---|---|---|---|---|---|---|---|---|---|
| Jul 2/2001 | Billing on Invoice 43593 | | | 0.00 | | 43593 | | | | |
| | 43260 FEES 62.50 | | | | | | | | | |
| Jul 2/2001 | SERRATELLI, SCHIFFMAN, BROWN & CALHOON | 14546 | | | | 44922 | 1 | | 62.50 | 581.62 |
| | 178322 PAYMENT FROM TRUST/JUNE CHARGES/43593 | | | | | | | | | |
| Jul 3/2001 | TRUST/GRAYBILL | | 62.50 | | | | | | | |
| | 245797 PMT - Client Paying BillGRAYBILL/INV 43593 | | | | | | | | | |
| Jul 5/2001 | Lawyer: 2  0.60 Hrs X 175.00 | | | | 105.00 | 43954 | | | | |
| | 74520 meeting with clients prep for dep | | | | | | | | | |
| Jul 8/2001 | Lawyer: 2  2.00 Hrs X 175.00 | | | | 350.00 | 43954 | | | | |
| | 74521 PREPARE FOR DEPOSITION | | | | | | | | | |
| Jul 9/2001 | Lawyer: 2  6.00 Hrs X 175.00 | | | | 1050.00 | 43954 | | | | |
| | 74522 ATTEND DEPOSITION OF BEAM | | | | | | | | | |
| Jul 11/2001 | Lawyer: 2  6.00 Hrs X 175.00 | | | | 1050.00 | 43954 | | | | |
| | 74523 attend dep of clients | | | | | | | | | |
| Jul 19/2001 | Lawyer: 2  0.30 Hrs X 175.00 | | | | 52.50 | 43954 | | | | |
| | 74524 DRAFT LETTERBAILEY RE: DEPOSITIONS | | | | | | | | | |
| Jul 20/2001 | Lawyer: 2  0.50 Hrs X 125.00 | | | | 62.50 | 43954 | | | | |
| | 74525 REVIEW DEPOSITION TRANSCRIPTS | | | | | | | | | |
| Jul 26/2001 | Lawyer: 2  0.30 Hrs X 175.00 | | | | 52.50 | 43954 | | | | |
| | 74526 DRAFT LETTERDON BAILEY RE: DEPS SCHEDULE | | | | | | | | | |
| Jul 26/2001 | HUGHES, ALBRIGHT, FOLTZ & NATALE | 29141 | | 297.20 | | 43954 | | | -.- | |
| | 187728 INV# 15251/FEE FOR DEPOSITION TRANSCRIPT/BEVERLY BEAM ON 7/9/01 | | | | | | | | | |
| Aug 2/2001 | HUGHES, ALBRIGHT, FOLTZ & NATALE | 29197 | | 635.55 | | 44453 | | | | |
| | 187729 INV# 15325/FEE FOR DEPO TRANSCRIPTS/SWEGER & GRAYBILL ON 7/11/01 | | | | | | | | | |
| Aug 3/2001 | Billing on Invoice 43954 | | | 0.00 | | 43954 | | | | |
| | 43621 FEES 2772.50 DISBS 297.20 | | | | | | | | | |
| Aug 3/2001 | SERRATELLI, SCHIFFMAN, BROWN & CALHOON | 14626 | | | | 44922 | 1 | | 581.62 | 0.00 |
| | 176638 PAYMENT FROM TRUST/JULY CHARGES/INV 43954 | | | | | | | | | |
| Aug 3/2001 | TRUST/GRAYBILL | | 581.62 | | | | | | | |
| | 245800 PMT - Client Paying BillGRAYBILL | | | | | | | | | |
| Aug 14/2001 | DAVID GRAYBILL | | | | | 44922 | 1 | 2000.00 | | 2000.00 |
| | 178782 ON ACCOUNT | | | | | | | | | |
| Aug 20/2001 | Lawyer: 30  0.40 Hrs X 125.00 | | | | 50.00 | 44453 | | | | |
| | 74527 REVIEW RESPONSES TO INTERROGATORIES | | | | | | | | | |
| Aug 20/2001 | SWEGERS BUS LINES | | | | | 44922 | 1 | 2000.00 | | 4000.00 |
| | 178834 ON ACCOUNT | | | | | | | | | |
| Aug 24/2001 | Lawyer: 2  0.20 Hrs X 175.00 | | | | 35.00 | 44453 | | | | |
| | 74528 TELEPHONE CALL TO/FROMDAN ALTLAND | | | | | | | | | |
| Aug 24/2001 | Lawyer: 2  0.20 Hrs X 175.00 | | | | 35.00 | 44453 | | | | |
| | 74529 DRAFT LETTERDON BAILY | | | | | | | | | |
| Sep 5/2001 | Billing on Invoice 44453 | | | 0.00 | | 44453 | | | | |
| | 44120 FEES 120.00 DISBS 635.55 | | | | | | | | | |
| Sep 5/2001 | Lawyer: 2  0.20 Hrs X 175.00 | | | | 35.00 | 44922 | | | | |
| | 74530 REVIEWMOTION FOR EXTENSION OF TIME | | | | | | | | | |
| Sep 5/2001 | Lawyer: 2  0.10 Hrs X 175.00 | | | | 17.50 | 44922 | | | | |
| | 74531 DRAFT LETTERCLIENTS RE: EXTENSION OF DISCOVERY | | | | | | | | | |
| Sep 5/2001 | SERRATELLI, SCHIFFMAN, BROWN & CALHOON | 14721 | | | | 44922 | 1 | | 3243.63 | 756.37 |
| | 178936 PAYMENT FROM TRUST/AUG CHARGES/INV 44453 | | | | | | | | | |
| Sep 5/2001 | TRUST/GRAYBILL | | 3243.63 | | | | | | | |
| | 245803 PMT - Client Paying BillGRAYBILL | | | | | | | | | |
| Sep 25/2001 | Lawyer: 2  1.00 Hrs X 175.00 | | | | 175.00 | 44922 | | | | |
| | 341221 REVIEW document production | | | | | | | | | |
| Sep 26/2001 | Lawyer: 30  0.40 Hrs X 125.00 | | | | 50.00 | 44922 | | | | |
| | 342030 REVIEW PRODUCTION OF DOCUMENTS BY PLAINTIFF | | | | | | | | | |
| Oct 9/2001 | Billing on Invoice 44922 | | | 0.00 | | 44922 | | | | |
| | 342552 FEES 277.50 | | | | | | | | | |
| Oct 8/2001 | SERRATELLI, SCHIFFMAN, BROWN & CALHOON | 14839 | | | | 45370 | 1 | | 277.50 | 478.87 |
| | 342601 PAYMENT FROM TRUST/INV 44922/SEPT CHARGES | | | | | | | | | |
| Oct 9/2001 | TRUST/GRAYBILL | 00410 | 227.50 | | | | | | | |
| | 342763 PMT - PAYMENT FROM TRUST | | | | | | | | | |
| Oct 9/2001 | TRUST/GRAYBILL | 00410 | 50.00 | | | | | | | |
| | 342764 PMT - PAYMENT FROM TRUST | | | | | | | | | |
| Oct 15/2001 | Lawyer: 2  5.00 Hrs X 175.00 | | | | 875.00 | 45370 | | | | |
| | 343565 ATTEND DEPOSITION OF ROGER MORRISON | | | | | | | | | |
| Nov 5/2001 | HUGHES, ALBRIGHT, FOLTZ & NATALE | 29802 | | 476.00 | | 45894 | | | | |
| | INV# 15425/FEE FOR TRANSCRIPTS/ROGER | | | | | | | | | |

Client Ledger
ALL DATES

| Date | Received From/Paid To / Entry# Explanation | Che# Rcpt# | Rcpts | General Disbs | Fees | Bld Inv# | Acc | Rcpts | Trust Disbs | Balance |
|---|---|---|---|---|---|---|---|---|---|---|
| | MORRISON ON 10/15/01 | | | | | | | | | |
| Nov 6/2001 | Billing on Invoice 45370 | | | 0.00 | | 45370 | | | | |
| | 346269 FEES    875.00 | | | | | | | | | |
| Nov 9/2001 | SERRATELLI, SCHIFFMAN, BROWN & CALHOON | 14978 | | | | 45894 | 1 | | 478.87 | 0.00 |
| | 346860 PAYMENT FROM TRUST/OCTOBER CHARGES/INV 45370 | | | | | | | | | |
| Nov 13/2001 | TRUST | 00896 | 478.87 | | | | | | | |
| | 347116 PMT - PAYMENT FROM TRUST/OCTOBER/INV 45370 | | | | | | | | | |
| Nov 16/2001 | Lawyer: 2  5.00 Hrs X 175.00 | | | | 875.00 | 45894 | | | | |
| | 347684 Graybill dep - | | | | | | | | | |
| Nov 27/2001 | DAVID GRAYBILL | 00199 | | | | 45894 | 1 | 500.00 | | 500.00 |
| | 348537 CHECK NUMBER 1735 / ON ACCOUNT | | | | | | | | | |
| Dec 5/2001 | SWEGERS BUS LINES, INC. | 00230 | | | | 46285 | 1 | 500.00 | | 1000.00 |
| | 349649 CHECK NUMBER 4001 / ON ACCOUNT | | | | | | | | | |
| Dec 5/2001 | STOCK & LEADER | 00237 | | | | 46285 | 1 | 370.52 | | 1370.52 |
| | 349709 1/3 OF DEPOSITION COSTS | | | | | | | | | |
| Dec 10/2001 | Billing on Invoice 45894 | | | 0.00 | | 45894 | | | | |
| | 350135 FEES    875.00 DISBS    476.00 | | | | 875.00 | 46285 | | | | |
| Dec 19/2001 | Lawyer: 30  7.00 Hrs X 125.00 | | | | | | | | | |
| | 352316 ATTENDANCE AT DEPOSITIONS OF MARC BAUER, DR. GLENN ZEHNER AND MICHAEL MAUSNER | | | | | | | | | |
| Dec 20/2001 | HUGHES, ALBRIGHT, FOLTZ & NATALE | 30139 | | 533.95 | | 46285 | | | -. | |
| | 351567 INV 16510/FEE FOR DEP TRANCRIPT/SCOTT DOWNEY ON 11/16/01 | | | | | | | | | |
| Dec 29/2001 | Lawyer: 30  0.30 Hrs X 125.00 | | | | 37.50 | 46285 | | | | |
| | 352345 DRAFT MOTION TO STAY PROCEEDINGS | | | | | | | | | |
| Jan 3/2002 | Billing on Invoice 46285 | | | 0.00 | | 46285 | | | | |
| | 352908 FEES    912.50 DISBS    533.95 | | | | | | | | | |
| Jan 3/2002 | Lawyer: 30  0.30 Hrs X 125.00 | | | | 37.50 | 46829 | | | | |
| | 354014 TELEPHONE CALL FROM DAN ALTLAND, ESQ. | | | | | | | | | |
| Jan 3/2002 | Lawyer: 30  0.30 Hrs X 125.00 | | | | 37.50 | 46829 | | | | |
| | 354015 TELEPHONE CALL FROM STEVE RUSSELL, ESQ. | | | | | | | | | |
| Jan 3/2002 | Lawyer: 30  0.50 Hrs X 125.00 | | | | 62.50 | 46829 | | | | |
| | 354016 TELEPHONE CONFERENCE CALL WITH DON BAILEY AND JUDGE MCCLURE'S OFFICE | | | | | | | | | |
| Jan 4/2002 | SERRATELLI, SCHIFFMAN, BROWN & CALHOON | 15181 | | | | 46829 | 1 | | 1370.52 | 0.00 |
| | 353112 DEC CHARGES/INV 46385 | | | | | | | | | |
| Jan 7/2002 | Lawyer: 30  0.30 Hrs X 125.00 | | | | 37.50 | 46829 | | | | |
| | 354440 TELEPHONE CALL FROM MELINDA KAUFMAN, ESQ. | | | | | | | | | |
| Jan 8/2002 | TRUST | 01678 | 396.13 | | | | | | | |
| | 353283 PMT - DEC CHARGES/INV 46385 | | | | | | | | | |
| Jan 8/2002 | TRUST | 01678 | 476.00 | | | | | | | |
| | 353284 PMT - DEC CHARGES/INV 46385 | | | | | | | | | |
| Jan 8/2002 | TRUST | 01678 | 498.39 | | | | | | | |
| | 353285 PMT - DEC CHARGES/INV 46385 | | | | | | | | | |
| Jan 14/2002 | Lawyer: 30  0.30 Hrs X 125.00 | | | | 37.50 | 46829 | | | | |
| | 354990 TELEPHONE CALL TO MELINDA KAUFFMAN, ESQ. | | | | | | | | | |
| Jan 15/2002 | DAVID GRAYBILL | 01810 | 376.61 | | | | | | | |
| | 354200 PMT - CHECK NUMBER 1780 | | | | | | | | | |
| Jan 15/2002 | DAVID GRAYBILL | 01810 | 533.95 | | | | | | | |
| | 354201 PMT - CHECK NUMBER 1780 | | | | | | | | | |
| Jan 15/2002 | DAVID GRAYBILL | 01810 | 89.44 | | | | | | | |
| | 354202 PMT - CHECK NUMBER 1780 | | | | | | | | | |
| Jan 17/2002 | HUGHES, ALBRIGHT, FOLTZ & NATALE | 30310 | | 640.68 | | 46829 | | | | |
| | 354646 INV 16692/FEE FOR DEP TRANCRIPT/BAUER, ZEHNER & MAUSNER ON 12/19/01 | | | | | | | | | |
| Jan 28/2002 | Lawyer: 30  2.00 Hrs X 125.00 | | | | 250.00 | 46829 | | | | |
| | 356188 REVIEW DEPOSITION TRANSCRIPT OF BEV BEAM | | | | | | | | | |
| Jan 29/2002 | Lawyer: 30  0.30 Hrs X 125.00 | | | | 37.50 | 46829 | | | | |
| | 356199 REVISE MOTION TO STAY PROCEEDINGS | | | | | | | | | |
| Jan 30/2002 | SWEGER BUS LINES, INC. | 00379 | | | | 46829 | 1 | 1000.00 | | 1000.00 |
| | 355886 CHECK NUMBER 4056 / ON ACCOUNT | | | | | | | | | |
| Jan 31/2002 | Lawyer: 30  3.00 Hrs X 125.00 | | | | 375.00 | 46829 | | | | |
| | 356204 ATTENDANCE AT DEPOSITIONS OF MR. WAGONHURST AND MR. EBERLY | | | | | | | | | |
| Feb 5/2002 | Billing on Invoice 46829 | | | 0.00 | | 46829 | | | | |
| | 356622 FEES    875.00 DISBS    640.68 | | | | | | | | | |
| Feb 5/2002 | SERRATELLI, SCHIFFMAN, BROWN & CALHOON | 15289 | | | | 47313 | 1 | | 1000.00 | 0.00 |
| | 356841 PAYMENT FROM TRUST/JAN/INV 46829 | | | | | | | | | |
| Feb 6/2002 | TRUST | 02189 | 640.68 | | | | | | | |

Client Ledger

ALL DATES

| Date | Received From/Paid To / Entry# Explanation | Chk# Rcpt# | Rcpts | General Disbs | Fees | Bld Inv# | Acc | Trust Rcpts | Trust Disbs | Balance |
|------|---------|------|------|------|------|------|------|------|------|------|
| | 357028 PMT - JAN CHARGES/INV 46829 | | | | | | | | | |
| Feb 6/2002 | TRUST | 02189 | 359.32 | | | | | | | |
| | 357029 PMT - JAN CHARGES/INV 46829 | | | | | | | | | |
| Feb 11/2002 | Lawyer: 30  0.30 Hrs X 125.00 | | | | 37.50 | 47313 | | | | |
| | 359291 TELEPHONE CALL TO JUDGE MCCLURE'S CHAMBERS | | | | | | | | | |
| Feb 13/2002 | Lawyer: 30  0.30 Hrs X 125.00 | | | | 37.50 | 47313 | | | | |
| | 359500 TELEPHONE CALL TO MELINDA KAUFFMAN, ESQ. | | | | | | | | | |
| Feb 28/2002 | HUGHES, ALBRIGHT, FOLTZ & NATALE | 30594 | | 356.95 | | 47313 | | | | |
| | 359216 INV 17046/FEE FOR DEP TRANCRIPTS/EBERLY & WAGONHURST ON 1/31/02 | | | | | | | | | |
| Mar 4/2002 | Billing on Invoice 47313 | | | | 0.00 | 47313 | | | | |
| | 359848 FEES      75.00 DISBS      356.95 | | | | | | | | | |
| Mar 15/2002 | DAVID GRAYBILL | 02817 | 823.06 | | | | | | | |
| | 361303 PMT - CHECK NUMBER 1829 | | | | | | | | | |
| Mar 15/2002 | DAVID GRAYBILL | 02817 | 176.94 | | | | | | | |
| | 361304 PMT - CHECK NUMBER 1829 | | | | | | | | | |
| Mar 20/2002 | SWEGER BUS LINES | 00537 | | | | 48311 | 1 | 1000.00 | | 1000.00 |
| | 361841 CHECK NUMBER 5068 / ON ACCOUNT | | | | | | | | | |
| Mar 20/2002 | SERRATELLI, SCHIFFMAN, BROWN & CALHOON | 15474 | | | | 48311 | 1 | | 770.69 | 229.31 |
| | 361845 PAYMENT FROM TRUST | | | | | | | | | |
| Mar 20/2002 | TRUST | 02904 | 338.74 | | | | | | | |
| | 361876 PMT - PAYMENT FROM TRUST | | | | | | | | | |
| Mar 20/2002 | TRUST | 02904 | 356.95 | | | | | | -. | |
| | 361877 PMT - PAYMENT FROM TRUST | | | | | | | | | |
| Mar 20/2002 | TRUST | 02904 | 75.00 | | | | | | | |
| | 361878 PMT - PAYMENT FROM TRUST | | | | | | | | | |
| Apr 19/2002 | Lawyer: 30  0.30 Hrs X 125.00 | | | | 37.50 | 48311 | | | | |
| | 366114 TELEPHONE CALL TO DAN ALTLAND, ESQ. | | | | | | | | | |
| Apr 24/2002 | Lawyer: 30  0.30 Hrs X 125.00 | | | | 37.50 | 48311 | | | | |
| | 366144 TELEPHONE CALL TO MELINDA KAUFFMAN, ESQ. | | | | | | | | | |
| Apr 24/2002 | Lawyer: 30  0.60 Hrs X 125.00 | | | | 75.00 | 48311 | | | | |
| | 366145 DRAFT & REVISE MOTION TO ENLARGE TIME AND PROPOSED ORDER | | | | | | | | | |
| Apr 24/2002 | Lawyer: 30  0.30 Hrs X 125.00 | | | | 37.50 | 48311 | | | | |
| | 366150 TELEPHONE CALL FROM JENNIFER YANKANICH, ESQ. | | | | | | | | | |

TOTAL ATTORNEY FEES    $11,357.50

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

BEVERLY BEAM                              :        NO. 1:CV-01-0083
                                          :
            Plaintiff                     :        (Judge McClure)
                                          :
                                          :
      vs.                                 :
                                          :        CIVIL ACTION - LAW
SCOTT DOWNEY, ROGER                       :
MORRISON, DAVID GRAYBILL                  :
AND MICHAEL SWEGER                        :
                                          :
            Defendants                    :

## VERIFICATION OF TIME RECORDS

Under penalty of perjury and pursuant to 28 U.S.C. §17461, I Steven J.

Schiffman, Esquire, swear that the time records attached to this Motion as Exhibit

1 are true and correct and reflect the time that was spent on this matter.

Respectfully submitted,

By: _____
    STEVEN J. SCHIFFMAN, Esquire

Dated: _1/0/03_____

## CERTIFICATE OF SERVICE

I, Melanie L. Erb, Esquire, hereby certify that I have served a true and correct copy of the foregoing document by depositing such in the regular U.S. Mail, addressed as follows:

Don Bailey, Esquire
4311 N. Sixth Street
Harrisburg, PA 17110

P. Daniel Altland, Esquire
Mette, Evans & Woodside
3401 N. Front Street
Harrisburg, PA 17110

Stephen S. Russell, Esquire
Stock and Leader
Susquehanna Commerce Center East
6th Floor
221 W. Philadelphia Street
York, PA 17404

Melanie L. Erb, Esquire
Suite 201, 2080 Linglestown Road
Harrisburg, PA 17110
(717) 540-9170

Dated: January 6, 2003

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

BEVERLY BEAM,                          :    CIVIL NO. 1:CV-02-1797

         Plaintiff              :

      v.                           :

MARC BAUER; GLENN ZEHNER;              :
CAPITAL AREA INTERMEDIATE
UNIT; SCOTT DOWNEY;                    :
ROGER MORRISON;
DAVID GRAYBILL; and                    :
MICHAEL SWEGER,
                           :

         Defendants             :

## O R D E R

In accordance with the accompanying memorandum and the court's March 25, 2003 memorandum and order, **IT IS HEREBY ORDERED THAT:**

    1) Defendants Bauer Zehner, Downey, and Capital Area Intermediate Unit's motion for sanctions is **GRANTED**. The Clerk of Court shall enter judgment in the amount of $3,749.17 in favor of Defendants Bauer, Zehner, Downey and Capital Area Intermediate Unit through the law firm of Stock and Leader and against attorney Don Bailey and the law firm of Bailey, Stretton and Ostrowski, jointly and severally.



2) Defendants Graybill and Sweger's motion for sanctions is **GRANTED**. The Clerk of Court shall enter judgment in the amount of $4,755.00 in favor of Defendants Graybill and Sweger through the law firm of Serratelli, Schiffman, Brown and Calhoon, PC and against attorney Don Bailey and the law firm of Bailey, Stretton and Ostrowski, jointly and severally.

3) The Clerk of Court shall close the case file.[1]

s/Sylvia H. Rambo
SYLVIA H. RAMBO
United States District Judge

Dated:  April 21, 2003.

---

[1]Closure of this case does not preclude Defendant Morrison from filing a motion for attorney's fees and costs within fourteen days of the mandate from the Third Circuit Court of Appeals pursuant to the court's order dated March 13, 2003 (Doc. 37).

2

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

BEVERLY BEAM,          :     **CIVIL NO. 1:CV-02-1797**

      **Plaintiff**        :

          **v.**           :

**MARC BAUER; GLENN ZEHNER;** :
**CAPITAL AREA INTERMEDIATE** :
**UNIT; SCOTT DOWNEY;**      :
**ROGER MORRISON;**        :
**DAVID GRAYBILL; and**      :
**MICHAEL SWEGER,**        :

      **Defendants**       :

# M E M O R A N D U M

## I.      Background

Before the court is Defendants Bauer, Zehner, Downey and Capital Area Intermediate Unit's ("CAIU") motion for sanctions pursuant to Federal Rule of Civil Procedure 11. By memorandum and order dated March 25, 2003, the court granted the Defendants' motion.[1] The court deferred ruling on the sanctions to be imposed upon Plaintiff's attorney, Mr. Don Bailey, as to these Defendants. Mr. Bailey claimed not to have received the hourly records from Defendants' counsel at the law firm of Stock and Leader. The court permitted Mr. Bailey an opportunity to respond with objections to the hours and rates of Stock and Leader by no later than April 11, 2003. Mr. Bailey, however, did not file his objections until April 14, 2003. Despite

---

[1] In the same order, the court granted Defendants Graybill and Sweger's motion for sanctions and awarded $4,755.00 in attorneys fees to these Defendants.

being untimely, the court will consider the objections. The sole issue before the court is the appropriate amount of attorney's fees to be awarded to Defendants Bauer, Zehner, Downey and the CAIU as a sanction against Mr. Bailey. *See Beam v. Bauer,* No. 1:CV-02-1797, slip op. at 3 (M.D. Pa. March 25, 2003).

II.        **Discussion**

Plaintiff objects to the hourly rate billed by Ms. Kaufman. Plaintiff states that attorneys with equivalent experience as sole practitioners generally charge between $85.00 and $100.00 per hour rather that the $115.00 to $125.00 per hour charged by Ms. Kaufman. The court does not find Ms. Kaufman's rate to be excessive. "Generally, a reasonable hourly rate is calculated according to the prevailing market rates in the relevant community." *Maldonado v. Houston,* 256 F.3d 181, 184 (3d Cir. 2001). A fee of $115.00 for 2002 and $125.00 for 2003 is reasonable given Ms. Kaufman's experience and skills.[2] The court will not adjust this rate.

Plaintiff also objects to the $65.00 per hour billed by Mary C. Galiardi on October 18, 2002. The court notes that the Defendants did not submit an affidavit from Ms. Galiardi. Therefore, the court has no way of determining Ms. Galiardi's experience, skill, or training. Moreover, there is no evidence of her usual billing rate. A party seeking attorney fees has the burden of proving that the request is reasonable. To meet this burden, evidence must be submitted supporting the hours worked and the rates claimed. *Rode v. Dellarciprette,* 892 F.3d 1177, 1183 (3d Cir.

---

[2]Ms. Kaufman has been practicing law since 1998. Ms. Kaufman has handled several civil rights claim in federal court, and specializes in the defense of school districts and other school entities engaged in civil rights litigation. (*See* Defs. Ex. B, Kaufman Affidavit.)

1990). Because Defendants have not submitted an affidavit from Ms. Galiardi, the $400 that she billed will be deducted.

Plaintiff objects to billings for reviewing co-defendants' motions and submissions to the court. The court disagrees with Plaintiff's assessment. Defendants' review of co-defendants' submissions is a routine practice. A client would surely expect his or her attorney to review all of the relevant material relating to his or her case. Seeing how another similarly situated party addresses an issue would certainly be helpful in preparing one's own response. In the instant case, Defendants spent 2.8 hours reviewing documents filed by co-defendants or by Plaintiff in response to co-defendants' filings. This is not an excessive amount of time and the court will not make any deductions for time spent reviewing these documents.

Plaintiff contests the hours spent on the Rule 11 research and briefing as well as the Rule 12 research and briefing. The total hours spent on the Rule 11 issue was approximately sixteen hours. This is not an inordinate amount of time. The total number of hours on the Rule 12 issue was approximately twenty-four hours. Plaintiff objects to the time spent on the Rule 12 motion on the grounds that the sequence of Defendants' billing is confusing. The court agrees. Defendants have billed for both Ms. Kaufman and Mr. Russell's time in revising and drafting their Rule 12 motion. This seems repetitive and may be the reason Stock and Leader has listed twenty-four hours spent on the Rule 12 motion as opposed to the eight hours spent by attorneys for the co-defendants. Attorneys are not entitled to hours unreasonably expended on the litigation. *See Maldonado,* 256 F.3d at 185; *see also Rode,* 892 F.2d at 1183 ("The district court should exclude hours that are not reasonably expended."). Thus, the court will exclude six hours, from the preparation of the Rule 12 motion.

3

Specifically, the court is excluding the following listings: (1) 2 hours by Ms. Kaufman on 11/25/02 spent drafting the brief on the Rule 12 motion before any research was performed on this motion; (2) 1.8 hours by Mr. Russell on 12/4/02 spent drafting what is titled "12(A)(6) motion;" (3) 1.2 hours by Mr. Russell on 12/5/02 spent preparing the final draft of the Rule 12 motion; (4) .5 hours spent by Ms. Kaufman on 1/8/03 spent revising a reply brief on the Rule 12 motion; and (5) .5 hours spent by Mr. Russell on 1/10/03 preparing a reply brief on the Rule 12 motion. Thus, $747.50 will be deducted from Defendants' total.

Plaintiff also objects to the costs that Defendants have billed. The court notes that many of these costs are undocumented. For example, Defendants indicate a charge of $385.65 for photocopies. Defendants, however, did not submit any documentation indicating the price per copy, the number of copies that they made, or the documents they were copying. Defendants have the obligation to prove that their costs are reasonable. The court has no way of knowing whether $385.65 for photocopies is reasonable in this case. Accordingly, the court will exclude this amount. Defendants also list $66.71 for the Federal Express shipping of documents to the court. However, Defendants provide no explanation why they needed to use Federal Express rather than the United States mail. Accordingly, this amount will also be excluded.

4

**III.**        <u>Conclusion</u>

In accordance with the foregoing, the sum of $3,749.17 will be awarded to Defendants Bauer, Zehner, Downey and Capital Area Intermediate Unit through the law firm of Stock and Leader and against attorney Don Bailey and the law firm of Bailey, Stretton and Ostrowski, jointly and severally. An appropriate order shall issue.

_____s/Sylvia H. Rambo_____
SYLVIA H. RAMBO
United States District Judge

Dated:  April 21, 2003.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

BEVERLY BEAM,                              :    CIVIL NO. 1:CV-02-1797
                                           :
            Plaintiff                      :
                                           :
      v.                                   :
                                           :
MARC BAUER, GLENN ZEHNER,                  :
CAPITAL AREA INTERMEDIATE                  :
UNIT, SCOTT DOWNEY, ROGER                  :
MORRISON, DAVID L. GRAYBILL,               :
and MICHAEL SWEGER,                        :
                                           :
            Defendants                     :

## O R D E R

        Before the court is Defendant Morrison's motion for attorney's fees and
associated expenses. This court dismissed Plaintiff's case pursuant to Federal Rule
of Civil Procedure 12(b)(6) and the doctrines of *res judicata*. The third Circuit
Court of Appeals affirmed this court's dismissal.

        Plaintiff's response to Defendant's entitlement to attorney's fees and
costs contains acrimonious and disparaging remarks about some judges of this court
and to the court in general, in violation of Rules 2 and 5 of the Pennsylvania Code of
Civility. Consequently, the response is deemed stricken.

**IT IS THEREFORE ORDERED THAT:**

        1) Plaintiff's brief in opposition to Defendant Morrison's motion for
attorney's fees and costs is **STRICKEN**.

        2) Defendant Morrison's motion for attorney's fees and costs is
**GRANTED**.



3) The sum of $3,712.26 is awarded to Defendant Morrison through his counsel, Kathryn L. Simpson, Esquire, and against Plaintiff's attorney, Don Bailey, and the law form of Bailey, Stretton and Ostrowski, jointly and severally.


                                        s/Sylvia H. Rambo
                                        Sylvia H. Rambo
                                        United States District Judge

Dated:  May 26, 2004.

# THE UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT



Nos. 03-1874, 03-2194

BEVERLY BEAM,
Appellant,

v.

MARC BAUER; GLENN W. ZEHNER; CAPITAL AREA
INTERMEDIATE UNIT; SCOTT DOWNEY; ROGER MORRISON;
DAVID L. GRAYBILL; MICHAEL SWEGER

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

(D.C. Civil No. 02-cv-01797)
District Judge:  The Honorable Sylvia H. Rambo

Submitted Under Third Circuit LAR 34.1(a)
January 30, 2004

BEFORE: NYGAARD and FUENTES, Circuit Judges, and O'NEILL,* District Judge.

Received and Filed

9/9/04  cmd

Marcia M. Waldron,
Clerk

_____

*Honorable Thomas N. O'Neill, Jr., Senior District Judge for the United States
District Court for the Eastern District of Pennsylvania, sitting by designation.

## ORDER

1)  The motions for leave to file motions for attorney's fees nunc pro tunc are **GRANTED**.

2)  Appellees Bauer, Zehner, Downey and CAIU's Motion for attorney's fees and costs is **GRANTED** in full, amounting to $2122.34. This Motion is granted without prejudice to Appellees returning to this Court to recover costs and fees expended in litigating this motion.

3)  Appellees Graybill and Sweger's Motion for attorney fees and costs is **GRANTED** in full, amounting to $2487.50. This Motion is granted without prejudice to Appellees returning to this Court to recover costs and fees expended in litigating this motion.

4)  Appellee Morrison's Motion for attorney fees and costs is **GRANTED** in full, amounting to $2569.70. This Motion is granted without prejudice to Appellees returning to this Court to recover costs and fees expended in litigating this motion.

5)  The above damages are to be paid by Beam's counsel, Don Bailey.

6)  Appellant Beam's Motions to strike Appellees' motions for attorney fees are **DENIED**.

All of the above in accordance with the opinion of this Court.

/s/ Richard L. Nygaard

Date: September 9, 2004
CMD/cc: Donald A. Bailey, Esq.
        Melinda B. Kaufmann, Esq.
        Kathryn L. Simpson, Esq.
        Spero T. Lappas, Esq.
        Melanie L. Erb, Esq.

A TRUE COPY:

Kathleen Brouwer,
Chief Deputy Clerk

## CERTIFICATE OF SERVICE

I, Spero T. Lappas, Esquire, hereby certify that I have served a true and correct copy of the foregoing document by depositing such in the regular U.S. Mail, addressed as follows:

Don Bailey, Esquire
4311 N. Sixth Street
Harrisburg, PA 17110

P. Daniel Altland, Esquire
Mette, Evans & Woodside
3401 N. Front Street
Harrisburg, PA 17110

Stephen S. Russell, Esquire
Stock and Leader
Susquehanna Commerce Center East
6th Floor
221 W. Philadelphia Street
York, PA 17404

Spero T. Lappas, Esquire
Suite 201, 2080 Linglestown Road
Harrisburg, PA 17110
(717) 540-9170

Dated: 12/17/04

1

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

No. <u>04-3424</u>

Beam v. Downey

To: Clerk

1) Motion by Appellees, David L. Graybill and Michael Sweger, to Stay Briefing
Schedule, to Dismiss Appeal, for Assessment of Double Fees and Costs
Pursuant to F.R.A.P. 38 and to Refer this Litigation and Appellant's Brief to
Proper Disciplinary Authorities for Review

---

The foregoing Motion is granted insofar as it seeks to stay the briefing schedule.
With respect to all other relief sought, the motion is referred to a motions panel. In the
event the request for dismissal is denied or referred to the merits panel, appellees' briefs
shall be filed and served within 30 days of the date of the order denying or referring the
request.

For the Court,

<u>/s/Marcia M. Waldron</u>
Clerk

Dated: December 27, 2004

CH/cc: Spero T. Lappas, Esq.
     Steven J. Schiffman, Esq.
     Donald A. Bailey, Esq.
     Stephen S. Russell, Esq.
     Kathryn L. Simpson, Esq.



<u>In the United States Court of appeals for the Third Circuit</u>

Beam
V.
Bauer et al

No.04-3424

Counsel's Brief in Opposition to the Motion of Graybill and Swagger for
" Relief under Role of Appellate Procedure 38"

<u>Introductory Statement</u>

The movants sought two types of relief. The first was for a stay of the briefing schedule on the underlying appeal. This court has already granted that stay. The movants also asked for sanctions against counsel for filing his brief in opposition to Judge McClure's grant of fees against Beverly Beam.

Movants secondly complain of comments and statements made by counsel in Bev Beams Brief in Opposition which opposing counsel describes as " scandalous, disparaging, unprofessional, and improper" (Motion in Opposition, pages 4-6 paragraph 20(A-L).

This brief is in opposition to that motion.

I. <u>Background</u>.

This case began with a complaint filed against the movants, Graybill and Sweger, among others. The case was assigned to the Honorable James J. McClure initially. The defendants refused to engage in


EXHIBIT
D

discovery, and when this was mentioned during the case management

conference, Judge McClure expressly directed that discovery was to begin.

When the dispositive motion deadline arrived the defendants asked to stay

the need for summary judgment specifically asking that the Judge make a

ruling on the outstanding motions to dismiss. The judge granted the stay

without briefing and dismissed the underlying case on the merits of the

motions. All of the discovery work, and the many violations of Ms. Beam's

rights, which that effort revealed, were set aside without any opportunity for

the plaintiff to respond. At that time, well within the applicable statute of

limitations, counsel had discovered that Beam suffered a violation of First

Amendment rights when it was learned that she and many small contractors

like her, had been victimized in a

scheme where each contractor, regardless of the number of runs each

had(which vary from one to 20 or more if memory serves) would be required

to purchase one wheelchair van and buy a second one for backup to just sit

there. The small contractors( Beam was one) vociferously and actively

lobbied the Intermediate Unit to stop this policy. The IU stopped this

senseless policy because it made no sense in any way, shape, or form. Beam

alleges she suffered mistreatment in many ways including injuries from an

illegal secret plan where profits to the large contractors, who supported the

IU defendants in the battle before the IU Board, were given a wheelchair van rate as a substitute for a regular van run as an award to these contractors and as punishment to the smaller contractors who successfully blocked the policy at the Board. Beam had also procured an attorney threatening to sue the IU and the bigger contractors. All of the aforementioned was first uncovered during discovery. Beam had appealed Judge McClure's decision to the Third Circuit. But that was pending and if Beam didn't win that appeal, then there was a potential problem that a statute of limitations might apply. Meanwhile no court had seen the product of the discovery, nor did any court know that factual information learned during that process indicated a violation of Beam's rights in the eyes of her attorney. Consequently, Beam's counsel(Don Bailey) filed the second suit. The second suit added totally different causes of action and it also brought suit against some additional different defendants. Motions to dismiss were filed and the Honorable Sylvia H. Rambo was assigned the case. Judge Rambo stayed any discovery immediately and shortly thereafter held that the second case was res judicata as to the first. Honesty compels counsel to emphasize that he disagrees with Judge Rambo's opinion. Meanwhile the Third Circuit upheld Judge McClure's dismissal of the first case, including his procedural decisions. The dissenting judge on the panel, Judge Nygard disagreed that

counsel fees should not be assessed against counsel Don Bailey.  Bailey had

argued that defendants were not prevailing parties.  Meanwhile, Judge

Rambo entertained attorney fee petitions filed against Don Bailey, the law

firm of Bailey Stretton & Ostrowski, and his partners jointly and severally.

At this point Mr. Bailey must respectfully point out that the original case

was filed before any partnership was entered into and that neither Mr.

Stretton nor Mr. Ostrowski had any knowledge of, or any input into, any of

the two cases, or any appeals associated with them.  They are totally

innocent of any of the decisions in any of these matters, as is Bev Beam.

Mr. Bailey is totally responsible individually for any, and all of the decisions

regarding the Beam cases or appeals.

It would serve no purpose to repeat counsel's issues raised on appeal.

In a nutshell Mr. Bailey felt that the res judicata decisions in both the district

and appellate courts were not only in error but could not be

sustained(counsel has been unable to find an attorney with whom the fact

and legal situation has been reviewed who can see the issue preclusion both

as a matter of fact and as a matter of law) because he believed there was no

factual basis upon which issue preclusion rationales could be maintained.

The subsequent appeals where referred to Judge Nygard.  Counsel had felt

that if anyone took a look at the difference in the complaints and the fact that

4

they were based upon information gleaned from discovery that was unique and new, the error would be uncovered. Counsel was wrong. Instead, his persistent efforts were seen as an effort to be intentionally vexatious and frivolous. Counsel's worst fears were realized when Judge Nygard opined that the wheelchair van's were needed. Most respectfully, that is not consistent with the facts that were developed during discovery. However, counsel's inability to see, that regardless of his views, that this was water over the dam, has, in part, led to this brief. As some of these matters were on appeal Judge McClure granted attorneys fees(approximately a year after the decision on the original case came down from him) against Beverly Beam. She is an innocent person, and finding against her can hopefully be avoided. Since these matters have been appealed to this court a number of other significant facts have come to light. Although opposing counsel claims otherwise there does appear to be clear evidence of an FBI investigation into matters at the IU pertaining to transportation. See exhibit A hereto. Further, opposing counsel has not only entered judgment on Judge Rambo's grant of attorney's fees(some of which were granted nunc pro tunc) but counsel has been subjected to contempt proceedings before Judge Rambo. In addition opposing counsel has filed contempt proceedings before Judge McClure against the Ms. Beam although it is believed that judgments

have been filed in state court against her also. This is probative only in so

far as it relates to the explanation counsel will give as to some of his reasons

for making the statements he did in the brief referred to by opposing

counsel. In this regard please see attached hereto exhibit B which is a copy

of a recent contempt proceeding before Judge Rambo in which she makes

specific reference to Attorney Bailey's conduct over the years. It is true that

Attorney Bailey has made many injudicious and disparaging comments

about the nature of racism in particular in the Central Pennsylvania area.

Attorney Bailey has also made many disparaging remarks everything from

the jury selection process in federal and state court houses to a "good ole

boy network". But counsel has never been asked for an explanation by any

federal, or state Judge, nor has he been counseled in this regard. This is not

to say that as Mr. Stretton puts it, "there is a way to say things and counsel

hasn't chosen the right way". It is also important to note that counsel has

complained about certain matters in the Middle District to the administrative

Judge in charge, to the administrative offices of the court, and numerous

times in briefs to the Third Circuit complaining about the improper

application of an appropriate standard of review on a regular basis in certain

district courts, the use of the classification " non precedential" etc., and

specifically about the misconduct of certain judges. At no time as counsel



ever received a response. It is extremely difficult to address many of these issues because there is no where to turn, nor any procedure that can be followed.

Opposing counsel listed a litany of complaints about comments and expressions in counsel's underlying brief. Therefore paragraph 20 opposing counsel's motion is incorporated herein by reference.

II. Issue: Should This Court Sanction Counsel?

III. Argument.

Counsel should began this argument by acknowledging his errors in how he said what he said. It is abundantly clear that the choice of words and phraseology were not wise. Mr. Stretton and Mr. Ostrowski have pointed that out. Mr. Stretton has disavowed the subject brief and ended the partnership over this matter. Counsel's use of words and phraseology demands an apology and it is respectfully offered not just to this court but to the trial court is well and for that matter to opposing counsel. When you are wrong you are wrong and one should have the courage to admit it. Counsel does. But an apology is not enough. Regardless of how something is said, there is a duty and obligation to back it up, to at least attempt to justify what is said, and why. It is morally incumbent on counsel to explain, no matter how poorly he expresses himself, the reasons underlying his actions.

7

During the trial of a former client, during a sidebar, Judge McClure said he didn't want to hear Mr. Bailey's views of government and politics, for this reason limiting his testimony on behalf of the defendant. Government and politics had nothing to do with the case at hand. The federal public defender passed the judges reactions on to Mr. Bailey. Mr. Bailey's testimony was limited. Counsel saw a transcription of the sidebar later. Counsel believes that ethnicity played a role in this decision.

This same defendant(an Italian-American) was counsel's client in an earlier section 1983 action. Judge McClure reasoned when dismissing the case that since the state investigators were of the same ethnicity(Italian) that they would hardly have told citizens to avoid Mr. M because he was associated with the Mafia and organized crime. Counsel vociferously objected on the inherent racial and ethnic bias in this opinion and Judge McClure on his own reversed himself. The case settled. In clients view Judge McClure was noticeably unhappy with counsel.

During a case against a Williamsport police officer Judge McClure took, in camera, was it was a discovery request counsel made for records and information from the municipal employer which would clearly have made them a defendant also and told counsel they were not relevant to the applicable case. Counsel later learned that this information was not only



properly requested but would have been devastating to the defendants' cases. The case was dismissed. The information was directly relevant since the officer had been counseled and treated for similar misconduct. Counsel inadvertently learned of it in a deposition some years later. This was a gross injustice and could have subjected Judge McClure to sanctions.

counsel was fined $300 for not attending a personal meeting with opposing counsel at opposing counsel's request. That opposing attorney received no sanctions.

In a case counsel had which contained blatant abuses of the rights of a bar owner in Williamsport the matter was dismissed out of and by Judge McClure. This woman was white and her boyfriend was black. This bar was in the black section of Williamsport. The client became extremely discourage and afraid and no appeal was taken. Counsel believes that race played a role in this decision.

Counsel had a black client who wrote a letter of complaint to the Judge about racism in Williamsport and his case. This matter could have been, and should have been, handled in chambers or perhaps discreetly, but instead, a hearing was set and it became a public affair having been leaked to the press. During the hearing the client made it clear that his attorney was fine and working for him. Based upon recollection counsel wrote to Judge

9

McClure complaining. Counsel believes race was involved in this situation because he was attracting many clients in Williamsport where racism(the influx) was rampant in counsel is not bashful about making statements in that regard.

In cases where counsel had a white client he appeared to fare much better. In one case the matter went to trial where the officer had conducted an illegal search and taken a baseball bat belonged to the client. Although counsel certainly does not complain about the favorable result it seemed that where race, color or minority ethnicity was involved, it was an extremely difficult case in unfriendly waters.

The most egregious case involved in attractive young black woman who was outrageously abused by a white male supervisor. Counsel was refused an opportunity to tape-record a deposition in clear violation of federal rules. Efforts to complain and for sanctions in the form of a copy of a transcript were denied by Judge McClure. The summary judgment could not be properly opposed without that deposition. When this matter was appealed to the Third Circuit, months later, counsel was told that he had been sent a letter(he has never be able been able to find the letter) to submit a transcript order form. The case was then discharged on this basis. This

was a summary judgment case. The client became extremely discouraged and frightened, and left the state.

Judge McClure's reaction to counsel a case after case where race was involved simply seemed to be hostile and unfriendly. In one case where counsel requested an opportunity to voire dire the jury on any knowledge of the KKK, Judge McClure indicated surprise that such an organization would even be in the area of Williamsport "Gees I hope we don't have anything like that around here" where they are well-known(and admittedly have a very poor reputation at least to local police) it was extremely difficult to understand how the Judge, a lifelong resident of the area would not be aware of their common knowledge activities or at least presence).

The aforementioned experiences and information, gained first-hand, has led counsel to the inescapable conclusion after years and years that there is a pattern in these cases. In the case at bar, there was a race-based claim. Although it's underpinnings were proven to counsel's satisfaction they could not be carried on behalf of Beverly Beam and thus were dropped.

It is true that counsel has indicated a desire for an objective investigation of some of these matters. Counsel has experienced situations where he has had telephone calls go into offices of court staff in the federal building in Harrisburg(calls placed from out-of-state to counsel's number

which rang into the federal courthouse). Counsel has no explanation for these occurrences. So too does he not have an explanation for how conversations were recorded on his home telephone answering machine of conversations that took place between third parties traveling outside of his office. These were people conducting activities on behalf of Mr. Ostrowski. Counsel has a recording which he took off of his answering machine and which he reported to a local District Court Judge. Last, counsel just became aware last week(of the names) of 3 federal district court judges in the Middle District who decided in an improper agreement together, sometime ago, to try to "get" counsel as best they could i.e. do what they could to harm and injure him. There could be no judicial immunity in such a case and the source of this information is simply impeccable. Tragically and with great sadness counsel has had to advise Beverly Beam( and counsel) that she in fact may have a First Amendment claim against at least two of those judges.

Additionally, as exhibit A demonstrates, opposing counsel is not correct when he seeks sanctions against counsel based on counsel's professed belief that the FBI is looking at matters at the I U. Perhaps that's not the case, but other parties attorney's in this matter were copied on the enclosed statements and counsel merely made this representation in good-faith because he believes there's good reason to believe it. For example any

12

cost reimbursement sought by the IU where a vehicle was misrepresented as to its miliage type, cost, or class, would lead to abuse of the public trust and the public treasury. Counsel doesn't know exactly what the problem is technically, but has complained to state agencies before on behalf of his clients about this misconduct particularly since there was profuse evidence "padded" miles.

This court should not come to believe that counsel does not genuinely apologize for his choice of words and his manner of presentation. In that regard, counsel intends to submit to the clerk in camera a more detailed explanation of information that he has and concerns that he carries. This should in no way detract from counsel's honest, genuine, sincere, and humbly felt sense of remorse for how he presented these matters to this court. Counsel feels embattled, isolated, and is deeply concerned by this welter of activity which he cannot understand. But he knows this is no excuse for not respecting the system. He does respect the system. There is a great deal more to add to this which goes beyond this brief, but counsel has obviously already done enough harm with trying to vent his frustrations. Counsel does intend to follow up with a more detailed and complete response to the clerk in camera.

Respectfully submitted

13

Subj:     **Re: Fw: What's up?**
Date:     8/26/2004 2.42:00 PM Eastern Standard Time
From:     thebeams@pa.net
To:       AdrienneMamma6@aol.com
*Sent from the Internet (Details)*

Adrienne

Thanks, I'll pull out my records and compare it with the information you sent   I don't know what day I'll make a trip down, school starts on Monday and I'm busy setting up my three runs

I have some letters Gloria Lytle sent to the CAIU Board members and one that she gave all of the contractors at our meeting last week   The letter stared that the transportation department is indeed under an ongoing federal investigation   I will try to fax the letters to you   Let me know if you get them if not I'll bring them along next week, either Tuesday or Friday

Tell Don we said hi   Have a nice week-end

Thanks
Bev


> ----- Original Message -----
> **From:** AdrienneMamma6@aol.com
> **To:** thebeams@pa.net
> **Sent:** Thursday, August 26, 2004 12:55 PM
> **Subject:** Re: Fw. What's up?
>
> Bev, please see attached list that I have regarding payments we can go over them when you get here   Thanks
> A



Thursday, August 26, 2004 America Online: AdrienneMamma6

8/19/04

To All Contractors

I am writing this letter in hopes of making you all aware of some very important issues. It is imperative that we all try to work together today. We need to set up the runs as cost effectively as possible. My expectations for this school year are not to have more runs than last year but to have them set up in the most cost effective way for the districts but also to make a profit. After all that is why I am in business.

I am enclosing a letter that I wrote to the board. The reason I feel you should have a copy is to make you aware that the rumors are true. The transportation department is indeed under an ongoing federal investigation. I know this because I have spoken with an FBI agent on three occasions.

We as a group need to stop being intimidated and start voicing our concerns. I would like to prove to the transportation department that we can all work together. I am no longer afraid to speak up and stand my ground. A very wise man from a federal agency ask me a question that has really made me think differently. He ask me if I were instructed by the transportation supervisor to jump off a bridge, would I? We have all heard that saying many times growing up. I think we have all been under the illusion that we are not independent contractors with the ability to use our own judgement. The transportation office will not take the fall if you do something illegal or unethical!

We know all to well what happened to Martha Steward for lying to the FBI. I certainly wouldn't want to be in a position of having to answer questions concerning illegal or unethical matters. Illegal - well we all know what that means. Unethical is sometimes harder to clarify.

With the cost of running a small business, fuel costs and the increased cost of living. I find it interesting that a few contractors thanked the board and praised the transportation department. WHAT would prompt someone to be thankful for a decrease in income? I would be afraid that would insult the intelligence of the board! I am certainly not an investigator, but if I were that would certainly spark my interest. Think about it.

Sincerely,

Gloria Lytle

cc: CAIU Board Members

6/22/04

Dear CAIU Board Member.

I am writing to inform members of the board of a meeting held by Dr Zehner and Dr Bauer June 16, 2004. Roger Morrison and myself, Gloria Lytle were in attendance, as well as Mr. Morrison's legal representative Jeff Ernico of Mette, Evans & Woodside.

This meeting was to inform Mr. Morrison and myself that we could not contact Dr Zehner directly or bring our concerns to the board. We were told by Dr. Zehner that he believes the board wants these problems handled before they get to that level. I believe that would mean our concerns with transportation supervisor Mr. Scott Downey and his supervisor Mr. Marc Bauer would then have to be addressed to Dr. Zehner. We have followed the proper channels with concerns and have turned to the board out of frustration.

As Dr Zehner stated in our meeting, some of our earlier concerns we were asked to take to IU solicitor. They were then handed over to proper authorities. He also stated an F.B.I. investigation is now being conducted.

Mr. Morrison and I have a combined 50 years of transportation experience. Ideally, transportation problems are handled by the transportation supervisor or his supervisor. The concern is having provided information concerning transportation to warrant a federal investigation and now being forced to deal directly with transportation supervisor Scott Downey and his supervisor Dr. Marc Bauer. Due to the nature of the information we provided to the authorities -- we feel uncomfortable trusting the transportation office to fairly address our needs. During our meeting Mr. Morrison said he felt the new contract was biased, this was not disputed by Dr Bauer or Dr Zehner.

There have been times when I question why we put ourselves in this situation. Dr Zehner says it was our choice; however I believe it was our duty.

I know that overseeing transportation issues causes much more work for Dr Zehner but I think that at this time an open line between contractors – administration and the board is a must.

Thank you

Sincerely,

Gloria J Lytle

Gloria Lytle
Transportation Contractor

cc: Jeff Ernico

16

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
HARRISBURG DIVISION


BEVERLY BEAM,                          :
    Plaintiff                     :
                                  :
                                  :   CASE NO.
            v.             :   1:02-CV-01797
                                  :
MARC BAUER, DR. GLENN W.               :
ZEHNER, CAPITAL AREA                   :
INTERMEDIATE UNIT, SCOTT               :
DOWNEY, ROGER MORRISON,                :
DAVID L. GRAYBILL, AND                 :
MICHAEL SWEGER,                        :
    Defendants                    :



TRANSCRIPT OF PROCEEDINGS
CONTEMPT HEARING


BEFORE:  HON. SYLVIA H. RAMBO

DATE  :  January 5, 2005
         10:00 a.m.

PLACE :  Courtroom No. 3, 8th Floor
         Federal Building
         Harrisburg, Pennsylvania

BY    :  Wendy C. Yinger
         U.S. Official Court Reporter


APPEARANCES:

SAMUEL C. STRETTON, ESQUIRE
    For Donald Bailey, Esquire, and
    Bailey, Stretton & Ostrowski

SPERO T. LAPPAS, ESQUIRE
    For Defendants Graybill and Sweger

AMBROSE W. HEINZ, ESQUIRE
KATHRYN LEASE SIMPSON, ESQUIRE
    For Defendant Morrison

COPY

1          THE COURT:  Good morning, everyone.  It's my

2    understanding that there is a judgment in the Graybill

3    matter only and that there's no judgment in Morrison,

4    but that there is an appeal on Morrison.

5          MR. STRETTON:  That's correct, Your Honor.

6    That's the order of May 26th in the amount of $3712.26.

7          THE COURT:  Thank you.  Okay.  My first

8    request is, I need some argument in response to Mr.

9    Stretton's memo concerning the proper method of going

10   about executing on the judgment in the, I guess it would

11   be, the Graybill matter.

12         MR. LAPPAS:  I represent Graybill, Your

13   Honor.

14         THE COURT:  Yes, sir.

15         MR. LAPPAS:  Your Honor, by way of -- is it

16   okay if I speak from here?

17         THE COURT:  Yes, it's fine.  Hold on a

18   minute.  Go ahead.

19         MR. LAPPAS:  Your Honor, by way of brief

20   summary of the somewhat complicated procedural history

21   of this case, you entered an order dismissing the

22   lawsuit.  That was appealed to Third Circuit No.

23   03-1874.  Then you later entered an order granting fees

24   to all of the Defendants other than Morrison.  Morrison

25   was a special case.  Bauer, Zehner, the Capital Area

```
 1   Intermediate Unit, Graybill and Swager received

 2   attorney's fees by an order which you entered, which was

 3   then appealed to the Third Circuit at No. 03-2194.

 4          The Third Circuit granted relief on both

 5   numbers, consolidated the order on November 9, 2004,

 6   granting attorney's fees under Rule 38, Appellate Rule

 7   38, granting appellate attorney's fees.  That case was

 8   reported at 383 F.3d 1000 -- I'm sorry, 383 F.3d 106.

 9          Now the order that you entered in favor of

10   my clients was entered under Rule 11.  And Rule 11,

11   unlike Rule 38 in the appellate court -- the courts have

12   been clear that motions under Appellate Rule 38 are

13   damages issues.  Rule 11 is a sanctions motion.  And in

14   looking at the most recent United States Supreme Court

15   case that I can find that discusses Rule 11, which is

16   President Clinton's case, Clinton versus Jones.

17          THE COURT:  Do you have a cite, please?

18          MR. LAPPAS:  Yes, ma'am, reported at 520

19   United States 681, 117 Supreme Court 1636.  And I'm

20   reading from the Supreme Court page number 1652,

21   footnote 43.  It says that, the Court has inherent power

22   to impose sanctions at a level sufficient to deter

23   repetition of the conduct or comparable conduct by other

24   similarly situated.

25          So it is a fact that we can enter judgment,
```

```
 1   and if there are other judgments, wait in line, possibly
 2   forever, to obtain the relief that this Court ordered.
 3                THE COURT:  Wasn't there judgment entered in
 4   this?
 5                MR. LAPPAS:  There was judgment entered by
 6   this court, and then we took that judgment and recorded
 7   it in the county court where it's available to us to
 8   execute.  Now Mr. Stretton's brief says that, there are
 9   numerous other judgments ahead of us.  We have not -- we
10   don't have that information.
11                Although, in the research that I did in
12   preparation of today's hearing, I could find two other
13   cases in which Mr. Bailey was imposed with sanctions by
14   the eastern district.  Now I only have the district
15   court cites.  I don't know if these have been appealed
16   or not.  But in both of these cases, his conduct was
17   found to be in bad faith, vexatious, and resulted in
18   substantial sanctions awards.
19                The point of all this argument is simply
20   this:  If Rule 11 is a sanctions motion, and if it's
21   designed to deter comparable conduct by this respondent,
22   as well as others, then the order must be enforced.  It
23   would create no sanctions.  It would create no
24   deterrence if the Court were simply to say to us, well,
25   file your judgment, wait in line.
```

1              Mr. Stretton has indicated, you know, it

2    would be unfair to everybody else if you jump to the

3    head of the line.  The fact of the matter is that, if we

4    wait in line and never get anything, or if we're just in

5    the posture of a standard judgment holder, there's no

6    deterrent effect on this court's order whatsoever.

7              And because deterrence is part and parcel of

8    a Rule 11 sanction, I think it's important to know some

9    of the things that have happened since you entered your

10   order.  Since you entered your order, the Third Circuit,

11   in ruling on Mr. Bailey's appeal in this case --

12             THE COURT:  In which case now, the Graybill

13   case?

14             MR. LAPPAS:  In the case -- right.

15             MR. STRETTON:  In the damage -- we appealed

16   the damages from the Morrison matter and Beam.

17             MR. LAPPAS:  But more than that, it is also

18   an appeal from your initial order dismissing the lawsuit

19   against everybody.  There's a consolidated order.  I can

20   hand it up.  It's in Third Circuit No. 03-1874 and

21   03-2194.  It is dated September 9, 2004.

22             The first of those numbers was Mr. Bailey's

23   appeal from the 12B6 motion, which dismissed this

24   lawsuit in this court.  The second number is Mr.

25   Bailey's appeal from the order by which you granted

1    attorney's fees to my clients and to the Capital Area

2    Intermediate people, everybody other than Morrison.

3            Morrison's grant of attorney's fees is still

4    on appeal.  It's not yet been decided.  So with respect

5    to my clients, the Third Circuit said about the appeal,

6    reading from page 109 of the Circuit Court Reporter

7    Decision, 383 F.3d 109, here, despite many queues from

8    us and the district court that her cause was wholly

9    meritless, Beam and her counsel have persisted before

10   the district court and again before us.

11           Additionally, as we noted in our opinion in

12   Beam v. Bauer, in her haste to file this lawsuit, Beam

13   disregarded the pending appeal before this court.  Beam

14   would have been well-advised to await our opinion, which

15   ultimately affirmed a result in the first case.  Our

16   affirmation of the district court's first dismissal was

17   lost on counsel, who had already filed the second suit.

18   When they speak of the second suit, they're referring to

19   the suit that you handled.  The first suit was in Judge

20   McClure.

21           Had counsel been paying attention, our

22   result would have given him notice of the fact that he

23   had failed to discern on his own, that his client's

24   claims were wholly without legal or factual substance.

25   We will thus award damages to the appellees.

1          So even after Judge McClure and this court

2    rejected and granted attorney's fees, an appeal was

3    taken.  It was denied.  The Third Circuit used very

4    strong language to indicate that it was meritless and

5    warranted damages.  So we have a situation there.

6          There have been other grants of attorney's

7    fees against Mr. Bailey for conduct which, I think, is

8    somewhat comparable to what we have here.

9          MR. STRETTON:  We object to those, Your

10   Honor.  They have no relevancy today.

11         MR. LAPPAS:  Well, I offer them as support

12   of the need for the deterrence that Rule 11 provides.

13         THE COURT:  What about the federal rules

14   that talk about execution on a judgment?

15         MR. LAPPAS:  I think the court has inherent

16   power to order Mr. Bailey and his firm to pay the

17   judgment that you entered under Rule 11.  This was a

18   Rule 11 order, and I think you have the power to order

19   him to pay it.

20         THE COURT:  You wish to respond to that?

21         MR. STRETTON:  Yes, Your Honor, briefly.

22   Obviously, I'm not going to repeat.  Obviously, I will

23   not repeat what is in my brief, but one of the themes

24   that runs throughout the decisions is that, unless the

25   federal statute or rule for which the sanctions are

23

1   being imposed through specifically has an enforcement

2   provision, that the Rule 69, 70, and 64 of the Rules of

3   Civil Procedure are the appropriate way in which to

4   enforce it.

5          Yes, there is a deterrent effect to Rule 11

6   sanctions, no question about that. But the rule itself

7   does not have a way to enforce that. If the persons who

8   made this rule wanted to create a separate vehicle for

9   you to enforce it through a contempt proceeding or some

10  other way, it would have had to have been written in

11  that rule, as I read the case law.

12         And Rule 11 does not contain such a sanction

13  nor do the other statutory provisions. The sanction and

14  deterrent is, one, the finding of bad conduct, and, two,

15  the entering of a monetary sanction, which has now been

16  entered into judgment. That has a deterrent effect.

17         And the rule -- Federal Rules of Civil

18  Procedure are very clear as to the procedure to be used

19  in this particular matter. As I told you in my brief, I

20  went through some case law to see if there was utter

21  examples of contempt being used to enforce a sanction

22  order that had not been paid as opposed to the other

23  one.

24         The only case I could find was the one I

25  cited, but that did not appear to be on point and did

24

1    not appear to have the issues I raised or put before the

2    court back in the early '70's when that -- with when

3    those issues arose.

4              So it's our position that the procedure they

5    are utilizing is the correct procedure, that is, going

6    for judgment in a Court of Common Pleas of Dauphin

7    County.

8              THE COURT:  What about the Morrison case

9    though?  That has not been reduced to judgment.

10              MR. STRETTON:  And that is still on appeal.

11              THE COURT:  Well, that doesn't mean we can't

12    still enforce it.  There's been no request to stay.

13              MR. STRETTON:  Except that, again, it's my

14    position -- I agree, there's been no request to stay,

15    but it's my position that, again, the way to enforce it

16    is, when it's ripe for judgment, is to go that way.

17    Otherwise, you could circumvent.  Everyone would -- an

18    appeal would be taken, and everyone would sprint to a

19    court to have a contempt hearing to avoid the judgment

20    process, the priority of liens, and other issues.

21              THE COURT:  Well, look at the local rule

22    83.3.1(b).

23              MR. STRETTON:  I'm sorry, Your Honor.  What

24    does that say?  I don't have it before me.

25              THE COURT:  I'll read it.  If counsel acts

25

1   in a dilatory manner or files motions for purpose of

2   delay or fails to comply with any rule or order of court

3   and the judge finds that the sanctions in subsection

4   83.3.1(a) above are inadequate or unjust to the parties

5   in light of the facts or circumstances, the judge may,

6   in addition to, or in lieu of, such sanctions, assess

7   reasonable costs directly against counsel whose action

8   has obstructed the effect of administration of the

9   court's business or suspend counsel from practicing in

10  this court for a specified period of time not to exceed

11  six months.

12          MR. STRETTON:  Okay.  Let's deal with that

13  rule.  Now that you've said it, I am familiar with that

14  particular rule.  First, it says, impose sanctions.  You

15  have imposed sanctions.  Second, that rule cannot

16  overrule the Federal Rules of Civil Procedure.  It can't

17  be an inconsistency.  I would argue, it does.  Third --

18          THE COURT:  How is it inconsistent?

19          MR. STRETTON:  Because the Federal Rules of

20  Civil Procedure provide for a way in which monetary

21  awards, sanctions, deterrent effect of others are to be

22  enforced and recovered through 69, 64, and 70, the Rules

23  of Civil Procedure.  That rule perhaps seems to suggest

24  something else.  Now there's one component to that

25  though that I would disagree with.  It suggests, well,

1    you have the right to suspend Mr. Bailey or the firm

2    from the practice in the middle district as part of this

3    sanction process.

4              But as you're aware, there is a separate set

5    of rules under the federal rules for disciplinary

6    enforcement.  And it would be my position that, that

7    would be the procedure that would be used.  If, for

8    instance, this court thought that the sanctions were

9    such that would warrant violations of the rules of

10   professional conduct, either through filing a motion

11   over at the Lemoyne office or this court empaneling

12   three judge panel to hear evidence on it pursuant to

13   your own rules, that would be the procedure used.

14             THE COURT:  It says, any such suspension

15   shall not be subject to Chapter 17, attorney

16   disciplinary enforcement.

17             MR. STRETTON:  Except, I think, that would

18   run into a serious due process issue in terms of taking

19   away a license, which is a property and liberty interest

20   in doing it pursuant to a rule and not using the normal

21   procedure.  And to my knowledge, there's no case law,

22   even in the disciplinary system, where a lawyer is

23   unable to pay a fine and costs, that his license or her

24   license would be taken away.

25             There is a procedure coming the opposite way

27

1    where one is suspended or disbarred, misused funds, and

2    doesn't repay the funds, then they cannot apply for

3    reinstatement unless they repay the fines.  But that's a

4    different approach.  So I think there's serious

5    constitutional problems.

6            THE COURT:  Aren't we faced here with the

7    court's total inability to control the court, the

8    procedures in this court, and seeing that counsel act in

9    the appropriate manner, and not being able, according to

10   you, to do any enforcement, no control whatsoever over

11   the administration of the court?

12           MR. STRETTON:  But you do have control.

13           THE COURT:  I don't have control.

14           MR. STRETTON:  There's a couple things you

15   can do.  One, the sanctions deterrence you entered.

16   Even if they cannot collect immediately, they certainly

17   have an adverse effect against Mr. Bailey and the firm

18   in terms of borrowing money, things of that nature, and

19   also potentially having to pay it.

20           Second, you have the right for specific

21   misconduct in your courtroom.  In other words, if Mr.

22   Bailey would do something or I would do something --

23           THE COURT:  I'm aware of that type of

24   contempt.

25           MR. STRETTON:  The third, you have a right

2A

1    to refer matters to the office of disciplinary counsel

2    and/or to your own three judge panel to bring

3    disciplinary action, if you feel it rises to that level.

4    So you have many adequate sanctions, if you choose to do

5    so.

6              Now let me just go a little further because

7    we're here today on a contempt hearing.  I'm not sure if

8    it's civil contempt or criminal contempt that we're

9    moving on.  Obviously, there are different standards.

10   It would seem to me that you are moving on civil

11   contempt not criminal contempt, but I may be wrong, but

12   you don't specify it in your order.  There's two

13   different procedures, as you well know.  I don't need to

14   tell the Court.

15             But for civil contempt, one aspect is

16   ability to pay.  And at least as to Mr. Bailey, I am

17   prepared to present ample evidence of an IRS lien of

18   60,000, $70,000.00, credit card liens, prior judgments,

19   some out of the eastern district, of substantial sums of

20   money, liens and judgments from persons who have

21   borrowed money from -- he's borrowed money from in the

22   100 to $130,000.00 range, all of whom feel very strongly

23   that these liens or these judgments should not jump to

24   the head of the class, so to speak.

25             So there's a serious issue as to Mr.

1    Bailey's ability to pay based on that, and if you need

2    testimony, we're willing to do that.  That would be one

3    of the prongs.  If you decide it's criminal contempt, of

4    course, then it's a very different standard, different

5    burden of proof, obviously, and it's a willful sort of

6    situation.

7         Again, I think that would be negated in this

8    particular matter.  But I'm not suggesting in any way

9    that lawyers can come in with impunity and act badly

10   before a court.  That goes against everything I've ever

11   thought of as a lawyer and what you do and, I'm sure,

12   what these gentlemen do.  Mr. Bailey's heart is in the

13   right place.  I believe that sometimes his language is a

14   little rough, and that's a problem.

15        THE COURT:  We're not talking about the

16   conduct that led to the imposition.

17        MR. STRETTON:  I understand.  But I believe

18   there are ample remedies in this particular matter

19   before the court.

20        THE COURT:  What?  Other than to go and --

21   the judgment has been entered, and you've admitted that

22   the likelihood of converting the judgment into recovery

23   of a monetary sum is almost nil.

24        MR. STRETTON:  Well, people -- wonderful

25   thing about the practice of law, the next day is a new

1  case, and sometimes people make money, and sometimes

2  they get out of debt.  It's there, and Mr. Bailey will

3  pay it, if he's ever able to.

4          Plus it's a judgment against me also in the

5  partnership in this particular matter.  And I'm not

6  quite in the same position as he's in in that particular

7  matter, though I have a different argument as to my

8  involvement in this matter in terms of lack of some

9  notice of these actions.

10          THE COURT:  You had notice.

11          MR. STRETTON:  Well --

12          THE COURT:  The very order itself setting

13  forth the hearing is notice.

14          MR. STRETTON:  I'm talking -- I don't mean

15  notice for today.  I mean, notice for the original

16  judgments and the conduct.  I wasn't involved.  At least

17  one of the cases arose before I was even a partner, and

18  my partnership, which ended last week, is a very limited

19  partnership, a partnership that was for trying cases,

20  and only the cases I entered my appearance on.  That was

21  it.  I will present testimony as to that.

22          THE COURT:  But on the masthead, that

23  doesn't give notice to the public, does it, or to the

24  court?

25          MR. STRETTON:  Nope.  That's why I ended it,

1    and I suggested to Mr. Bailey to go back to an of

2    counsel arrangement of sorts in that particular matter.

3    I agree. I never had actual notice of these matters

4    until after the fact.

5          But I did make a suggestion to everyone.

6    Now we're here, and we're talking. I told Mr. Lappas, I

7    won an award of $28,000.00 in counsel fees with Judge

8    Caputo in a case of Fisher -- McLaughlin, et al versus

9    Fisher. That's still in post-trial motions. It's been

10   there about a year and a half now in post-trial motions.

11         I'm convinced that -- I don't know if the

12   full amount of damages will remain or not, I don't know,

13   but I'm convinced that the award, that the finding of

14   liability will remain, would still give substantial

15   damages. I don't know if 1.5 million will remain. I

16   hope it does. But if it doesn't, there will be enough

17   for counsel fees, in any event. It's not going to go

18   back to a nominal damage.

19         I have monies that are due the firm, and by

20   Mr. Bailey, I've offered to assign that $26,000.00 to

21   them so this matter can be resolved in this particular

22   matter, but I haven't gotten any response on that

23   particular issue.

24         THE COURT: We're talking about all total,

25   how much in fees from both of you?

32

1          MR. LAPPAS:  Your Honor, the order in favor

2    of my clients is between 4 and $5000.00.  I don't have a

3    dollar amount for you.

4          MR. STRETTON:  It's $3749.17.

5          THE COURT:  Hold on.  Three thousand --

6          MR. STRETTON:  -- 749.17 for Bauer, Zehner,

7    Downey, for the Stock & Leader firm.  And then, it's

8    $4755.00 for Mr. Lappas's client, and that's per your

9    order of April 21st.  There is also, though it's on

10   appeal, the Morrison amount of $3712.26, which is on

11   appeal now, which goes also against my client, Mr.

12   Bailey and the firm.

13          I have those copies of those orders, which I

14   might as well just hand up and mark as, I guess,

15   Respondent's 1.  In fact, if you go through those

16   orders, you'll see the first one, Your Honor, is the

17   April order that has the two amounts that are currently

18   at issue; Mr. Lappas's amount on the second page, and

19   the Bauer firm amount on the first page.  I'm not sure

20   the Bauer firm has even filed a motion.  I don't know if

21   they're properly before you.

22          The next order is the Morrison amount, which

23   is on appeal, the $3712.00.  And then the third page is

24   the Third Circuit's order against Mr. Bailey only for

25   various appellate court costs.  And then the fourth

**33**

1    order is against, which is not before you, is Judge

2    McClure's order against Beam for a substantial amount of

3    money.

4              But the first two orders are here, and then

5    Mr. Bailey's order is here. Although Mr. Bailey asked

6    me to point out to the Court that he disagrees with my

7    suggestion to resolve this matter, I'm willing to do it

8    because I'd like to see it resolved in this matter.

9              THE COURT: Let me hear from the Morrison

10   group. Mr. Heinz.

11             MR. HEINZ: Yes, Your Honor. Just first,

12   I'd like to join in Mr. Lappas's argument and point out

13   that we have not entered a judgment on this award in

14   state court as of yet. We were waiting for Your Honor's

15   decision on how to proceed, whether the court would be

16   willing to enforce this order through its contempt

17   powers.

18             I would like to add that, subsequent to the

19   Third Circuit's decision affirming your original order

20   to dismiss the case and affirming the award of

21   attorney's fees to Mr. Lappas and to the other

22   Defendants, we were given permission to file an award or

23   a motion for attorney's fees, and we did so, and you

24   issued this order on May 26th, 2004.

25             And subsequent to that, Mr. Bailey filed an

34

1   appeal to that order, even after having notice from the

2   Third Circuit that an appeal is not simply the next step

3   in the process.

4           If this continues, Mr. Bailey is just going

5   to continue to appeal every award, and, as Mr. Stretton

6   has pointed out, he seems to be completely judgment

7   proof in the state system.  I think that it would be,

8   you know, unjust for Mr. Morrison to continue to incur

9   fees and costs in defending this action and defending an

10  appeal to an order that Your Honor issued.

11          And we just feel that either this court

12  agrees to issue a contempt order and proceed with

13  contempt powers or we'll have to go through the state

14  process.  But in the long run, our clients just continue

15  to incur more fees.

16          THE COURT:  Mr. Lappas, do you have any case

17  law that would take your case where there's a judgment

18  outside of the Rule 69 and some of the others on

19  enforcement of judgments and that Rule 11 is an

20  exception to it?

21          MR. LAPPAS:  I don't have any cases that say

22  that Rule 11 is an exception to the method of enforcing

23  judgments other than what I have said already.  And

24  frankly, part of what I -- I think part of what Mr.

25  Stretton has said, and certainly the Court's comments

1    bolster my argument, that you have inherent power to

2    impose sanctions.  Now the sanction you imposed was a

3    judgment and dismissal.  But if that judgment is

4    worthless, as I'm hearing, then I think you have

5    inherent power to order payment.

6              And Mr. Heinz is quite correct.  There have

7    been, by my count, five appeals filed in the Third

8    Circuit from either your orders or Judge McClure's.

9    There was one brief filed about two -- well, about a

10   month ago, Mr. Bailey's brief, that was really so

11   outrageous, we filed a motion in the Third Circuit to

12   stay the briefing schedule and for sanctions in the

13   appellate court.

14             That motion was granted in part.  The

15   briefing schedule has been stayed, has been referred to

16   an appeals court motions panel, I believe, is the

17   correct terminology, to see what happens.  In that

18   brief, Mr. Bailey made representations that Judge

19   McClure was personally prejudiced against him, that the

20   courts, I don't know if he specified what court, but the

21   courts were --

22             MR. STRETTON:  We object to this.

23             MR. LAPPAS:  -- were trying to engineer the

24   outcome of various cases, that the FBI needed to

25   investigate this situation, that the Supreme Court

1    should investigate it.  And again, going back to Mr.

2    Heinz's argument, there's another brief due or yet

3    another appeal that Mr. Bailey filed.  That's due on

4    January the 10th.  And Heaven only knows what that one

5    is going to say.

6              You know, every time a brief is filed, we

7    can't just ignore it.  We've got to brief it.  We've got

8    to usually supplement, or often supplement, the

9    appendix.  Then, you know, there was substantial work

10   necessary to prepare for today's proceedings.  You know,

11   I think that, you know, you sort of put your finger on

12   it a moment ago when you said, if all you do is enter a

13   judgment that is worthless to us -- our clients got to

14   keep spending money.

15             And we can't advise them, you know, these

16   lawsuits are frivolous, just ignore them.  We've got to

17   defend them.  We've got to file the Rule 12B6 motions.

18   We've got to file the briefs in the Third Circuit.  The

19   language of the order you entered for us was different

20   than the language you entered against Morrison.  You

21   entered judgment for us.  And in the Morrison, you said

22   they're directed to pay.

23             I don't think that should be what

24   distinguishes our positions here.  You know, we have a

25   very valid complaint that this particular attorney, and

1    his firm filed one lawsuit after another, filed five

2    appeals, the briefs -- well, you struck one of the

3    briefs in this court.

4             It's just really reached a point where

5    something has got to be done.  I have never been in this

6    position before in my life asking for this kind of

7    relief, but something has got to be done.  That's what

8    we're seeking here.

9             MR. STRETTON:  But the problem is, the same

10   issue of why they can't collect on the state judgment is

11   an issue or an element in the contempt.  If you don't

12   have the ability to pay, that would defeat criminal

13   contempt because there wouldn't be willfulness.

14            THE COURT:  Then we'll never have the

15   ability to control conduct.

16            MR. LAPPAS:  Your Honor, may I say one

17   thing, please?  I'm very sorry to interrupt.  But one

18   thing I think we have to concentrate on is that this

19   order is not just against Mr. Bailey, it's against the

20   firm.  Now the order against Bailey, Stretton &

21   Ostrowski law firm was entered by this court.  It was

22   appealed, and it was affirmed on appeal.

23            Now I understand -- I respect and admire Mr.

24   Stretton.  I understand he's in a difficult spot.  But

25   he's held himself out to be a partner of the firm.  He

38

1    is, I believe, on the hook for that judgment just as

2    much as Mr. Ostrowski and the firm itself, if the

3    partnership itself has any assets.

4            So I really think that, just to keep

5    concentrating on Mr. Bailey's personal financial

6    situation is a little bit perhaps beside the point.  We

7    don't know what Mr. Stretton's situation is.  We don't

8    know what Mr. Ostrowski's situation is.  We don't know

9    what the firm does or does not have.

10           But we think that all four of those entities

11   are on the hook for this order and judgment and any of

12   them and all of them must be ordered to pay it.  I'm

13   sorry to interrupt.

14           MR. STRETTON:  And that, because of the way

15   the partnership's letterhead was styled, and I agree

16   with you, I should have put in some magic words, a

17   limited partnership, that's why I'm making the offer to

18   assign that 28,000, or up to the amount, to take away

19   these attorney's fees for the firm and Mr. Bailey.

20           Of course, the money is not here yet, but I

21   believe -- and/or hold us in abeyance for some reason if

22   Judge Caputo should reverse the civil verdict totally

23   and order a retrial.  I don't think that will happen,

24   but I don't know.  I have no idea what he's going to do.

25           But the record, I thought, was fairly strong

1  to maintain the verdict, the liability. To maintain the

2  $1.5 million verdict, I don't know. That will be -- I

3  believe there's a basis, but I don't know what Judge

4  Caputo is going to do. That might be a reasonable way

5  to resolve it.

6          Because I certainly don't want to --

7  certainly, if I don't win before you today, and you say,

8  you don't have the power, I don't feel like spending the

9  rest of my life going through depositions in aid of

10  execution and other things, if I can avoid it. What I

11  would like to do is, make that offer and see if everyone

12  is willing to do it.

13          And I believe that, that would resolve this

14  matter. And as soon as the money is available, it will

15  be theirs, whatever interest it accrues during the time

16  period. That would cover all three orders. I think the

17  amount is enough for the Third Circuit order against

18  Bailey, the Morrison order that's on appeal, and then

19  the order of Your Honor.

20          And assuming that -- Judge Caputo has

21  already approved my counsel fee award for the 27 or

22  $28,000.00 figure, as I recall. So that should be

23  sufficient to cover all these -- all that. And I'm

24  willing to put that on the table to resolve these

25  matters without any way compromising all my earlier

1   argument though.

2           But see, I see this differently than you in

3   terms of the Court's power. I really -- I always get

4   very nervous about taking away the ability of the court

5   to control the courtroom. Because if the rules don't

6   apply, the system becomes chaos. I am a firm believer

7   on that.

8           THE COURT: That's exactly what we have

9   here.

10          MR. STRETTON: But I believe that you have

11  ample -- and you've done things that have gotten the

12  message across.

13          THE COURT: I don't think so.

14          MR. STRETTON: Well, I can tell you, it has,

15  for this reason.

16          THE COURT: It can't if he is still filing

17  briefs that has the same type of approach that I have

18  seen for years.

19          MR. STRETTON: I talked to Mr. Bailey about

20  that. There is a possibility he may withdraw that. I

21  have, of course, filed a motion to disassociate myself

22  from that brief when I became aware of it. I filed that

23  with the Third Circuit yesterday.

24          THE COURT: But it's obvious, you don't have

25  any control over it either.

1          MR. STRETTON:  But I think I do now.  And I
2    think the message -- I've had some discussions with Mr.
3    Bailey in terms of how to present issues and that
4    sometimes one can go too far.  On the other hand, you
5    have -- what this Court always trys to do is get
6    advocates to help the poor, the downtrodden, the
7    prisoner, the civil rights people.  It's so hard to get
8    plaintiff lawyers to do this.
9          THE COURT:  Then we get bitten in the
10   process.
11         MR. STRETTON:  It shouldn't happen.  And Mr.
12   Bailey has to learn that, and he's learned it.  I've
13   broken up the partnership over this.  I'm still here to
14   help Mr. Bailey and try some of his cases, if he wishes
15   me to do so.  I don't know what his intentions are in
16   the future in that regard.  He's gotten the message now.
17         I am willing to put that 28,000, if it ever
18   comes to reality, to resolve this or sign any document
19   or assignment over to put this to bed, because I feel
20   bad about it, too, in some ways.  But Mr. Bailey's
21   errors are not evil based.  He gets so doggone
22   passionate on his cases.
23         THE COURT:  It does not excuse a person from
24   acting professionally.
25         MR. STRETTON:  I agree.  You know that I

42

1    agree.  But it's far different than someone who is just

2    vicious and out to make money and doing things.  I mean,

3    there's another approach.

4              THE COURT:  Hasn't Mr. Bailey, and sometimes

5    Mr. Ostrowski, become vicious in their writings and

6    their submissions?

7              MR. STREITON:  They have -- I don't know

8    about Mr. Ostrowski.  I haven't seen his.  But I would

9    agree with you, on certain things that Mr. Bailey has

10   written, he has become too personal in his approach and

11   drawn -- he's had good -- some interesting facts, but

12   he's taking conclusions that go beyond the connecting of

13   the dots of the facts.  I would agree with that.

14             And I talked to Mr. Bailey about that.

15   That's why I try most of his cases for him, because he

16   doesn't have the trial temperament.  But sometimes --

17   but he is a good appellate arguer.  You know, last year,

18   he had a case which he prevailed in the U.S. Supreme

19   Court and did a fine job on oral argument.  So he has

20   the abilities, and he's a good lawyer, and his

21   background is someone who warrants respect in terms of

22   service in Congress, Attorney General, I mean, bona fide

23   war hero, silver stars, bronze stars.

24             THE COURT:  That does not balance out what

25   he's been doing in the last few years.

43

1          MR. STRETTON:  I agree.  And he's going to

2     stop it.  And he has told me that.  And he and I have

3     had a number of discussions.  Coming back from the

4     Hoover settlement conference when you and I had a

5     discussion, I have had several discussions with Mr.

6     Bailey and Mr. Ostrowski on those issues and made some

7     very strong points to both of them, and I believe both

8     of them are starting to change.

9          Now I'm a little sore at Mr. Bailey for the

10    most recent brief.  That's why I disassociated myself

11    from it.  But that may be withdrawn in the future in any

12    event.  That will be Mr. Bailey's decision on that

13    particular matter.  But I still think, just having him

14    here today and have to sit in court in front of a lot of

15    people, it's almost like a public censure.  It is a

16    public censure in many ways, having to hear his former

17    partner and friend sort of condemn him.  I think he's

18    gotten the message.

19          THE COURT:  I don't think so.

20          MR. STRETTON:  But in any event, for you

21    to -- let's go back to the law now and not, you know,

22    not my wish list here.  I truly suggest to this court

23    that you do not have the power and jurisdiction here for

24    the reasons in my brief.

25          I also suggest, if you think you do, that

44

1    there are -- at least as to Mr. Bailey, there's no

2    ability to pay at this particular point in time.

3            THE COURT:  What was your response to the

4    Morrison claim where there's no judgment?

5            MR. STRETTON:  Well, my response had been

6    the same as before, that would circumvent the procedure.

7    If one did not enter a judgment, had a sanction, did not

8    enter a judgment, and then was able to collect it, using

9    the contempt power, and bypass the whole procedural 69,

10   70, and 64 Rules of Civil Procedure for collecting

11   monetary judgments, it would create a glaring exception

12   in that particular matter.

13           THE COURT:  Your proposal that you've made,

14   all the other judgments that you say are against Mr.

15   Bailey, are they against him individually or are they

16   against the firm?

17           MR. STRETTON:  On the judgments that I

18   handed up to Your Honor, I didn't mark it, but on the

19   first one, the $3749.17 is against the firm and Mr.

20   Bailey.

21           THE COURT:  No, no, I'm not talking about

22   these.  You say that there are other judgments already

23   ahead.

24           MR. STRETTON:  They're against Mr. Bailey.

25           THE COURT:  Just individually?

45

```
 1              MR. STRETTON: Yes.  They are his own

 2    personal IRS judgments, liens.  He had sanctions before

 3    Judge Joyner in '95.

 4              THE COURT:  But you're not involved in that?

 5              MR. STRETTON:  I represent him, but I was

 6    not a partner with him.  I represented him trying to

 7    overturn those before Judge Joyner.  To my knowledge,

 8    there's no Bailey judgments against me.

 9              THE COURT:  My concern is whether your offer

10    might be in jeopardy if you make an offer of payment on

11    one judgment.  I know we're not in bankruptcy or

12    anything, so there wouldn't be a preference, but I was

13    just concerned.

14              MR. STRETTON:  It would not.  My own

15    personal situation -- I mean, everyone has debt, but I

16    am on a major lien.  My wife is president in Gateway

17    Medical, and I had to co-sign a $3 million or $2 million

18    lien, which is still Gateway Medical, which is a major

19    medical practice in Chester County where about 20

20    doctors and others.  But I mean --

21              THE COURT:  You don't need to go into

22    details.  I just want to make sure that an offer that

23    you have would work.

24              MR. STRETTON:  Well, the offer I made would

25    cover the first -- would cover your order of April 21st,
```

46

1  would cover the order of May 16th, and it would also

2  cover the Third Circuit's order against Mr. Bailey of

3  September 9th.

4           THE COURT:  I don't think I have any

5  jurisdiction over that.

6           MR. STRETTON:  I understand that.  But I

7  want to put -- even though that's just against Mr.

8  Bailey, I'm his friend, and I'm trying to get these

9  behind him.  Now whatever the Third Circuit does in the

10 future on this brief, if they do impose sanctions,

11 unless they do it against the firm, that's Mr. Bailey

12 that is going to have to rise or fall on that on his

13 own.

14          But I want to put this aside because I'm a

15 little -- I feel a little embarrassed about this, and I

16 feel that I was somewhat unethical by not properly

17 having the partnership reflect the limited nature of it,

18 and I know better under Rule 7.5 of the rules of

19 professional conduct in terms of how a partnership is

20 supposed to be styled.

21          Based on that, I'm willing to offer these

22 monies.  Again, they're not here yet, but I believe that

23 they're going to be there at some point, to resolve

24 these issues, if that can be done so we don't have to

25 have a contempt hearing.

```
 1              THE COURT:  Mr. Lappas.

 2              MR. LAPPAS:  Your Honor, Mr. Stretton did

 3    talk to me about that either yesterday or the day

 4    before, sometime in the last few days.  And as I told

 5    him then, and again equally before court today, the way

 6    I understand it is, he has a verdict, and as part of

 7    that verdict, he has an order awarding him attorney's

 8    fees.

 9              That case is now before the district court

10    on post-trial motions.  He says he thinks he's going to

11    hold onto the verdict in some part.  And maybe he will.

12    I don't know.  I'm not familiar with the case.  After

13    that, of course, there's going to be appeals to the

14    Third Circuit.  I believe the case that we're talking

15    about now is against the Commonwealth.

16              You know, it's sort of pie in the sky.  And

17    he's really asking us to wait for a pretty long time for

18    an uncertain result, one that he can't guarantee.  So I

19    don't think that's -- I mean, I respect the offer.  I

20    think it's made in good faith.  But I don't think it's a

21    realistic disposition of these issues.

22              THE COURT:  Mr. Heinz.

23              MR. HEINZ:  If I could, I would just like to

24    respond to Mr. Stretton's comment about how this, an

25    enforcement of this order would cause a run and people
```

48

1    to appeal to the Court for a contempt proceeding.  I

2    would just like to point out that this proceeding would

3    not be at all warranted or even necessary if Mr. Bailey

4    hadn't filed an appeal and failed to file a bond, which

5    is the proper procedure for insuring that, you know,

6    there is a security for payment if we are successful on

7    the appeal.

8              If he couldn't afford the bond at the time

9    when the court issued the order, he certainly could have

10   appealed to the court for reconsideration at that time.

11   He didn't do that.  He filed an appeal knowing that we

12   could not collect on a judgment in state court.  Thank

13   you.

14             MR. STRETTON:  My only response to Mr.

15   Lappas, and I understand, maybe it's a little pie in the

16   sky, my offer, but it would seem to me that, whatever

17   procedure happens, whether he continues to try to

18   execute judgment or you have a contempt hearing,

19   assuming that I lose the contempt hearing and there is

20   orders entered, we still have to look at the ability to

21   pay.

22             And it may be a substantial delay just on

23   that particular issue.  And for other -- I'm not saying

24   that there would be an appeal, but certainly I would

25   look at this strongly because I think there is some

1  interesting issues here in terms of the Court's power to

2  enforce these monetary sanctions, supposedly going

3  through the Rules of Civil Procedure.

4       It would seem to me that my offer is made in

5  good faith, and we can revisit it if I should lose with

6  Judge Caputo.  And I'm going to know real soon, at least

7  I would suspect, with a year and a half now gone by in

8  post-trial motions, two years from the trial is

9  February.

10       I suspect Judge Caputo is going to be

11  issuing an order very shortly in this particular matter

12  one way or the other, so everyone will know.  So maybe

13  the other thing could be that we just hold this in

14  abeyance, but in the interim, you enter an order locking

15  in my counsel fees for this purpose.  And I'll sign

16  anything they give, present to me, so I can assign it

17  over to them so these matters can be resolved.

18       THE COURT:  What's the name of the case

19  before Judge Caputo?

20       MR. STRETTON:  It is John McLaughlin and

21  Micewski versus Judge Fisher, then Attorney General

22  Fisher, Pappert, and various people who were heads of

23  the various divisions.  It was a $1 million punitive

24  damage against them collectively.

25       THE COURT:  Well, I don't want to know the

1   facts.  What's the number?  What's the case number?

2           MR. STRETTON:  I don't have that with me.  I

3   could have that faxed to you this afternoon and to

4   everyone via fax.  I'm sorry.

5           THE COURT:  I'm going to take the matter

6   under advisement.  I may need some more briefing.  I

7   don't know.  But I need more time.  I've heard

8   everything that's been said.  Is there anything further?

9           MR. STRETTON:  Unless you want testimony in

10  support of our position that Mr. Bailey is essentially

11  judgment proof and doesn't have the ability to pay

12  except maybe some limited payout schedule for a month,

13  and then on that particular issue.  I don't know if you

14  want to -- then we go to the issue of contempt with one

15  prong in the civil contempt of the ability to comply or

16  pay, if you need testimony on that.

17          I prefer not getting into that at this

18  particular point in time if we could avoid it.  And I

19  prefer and would ask that you enter an order attaching

20  my 27 or $28,000.00 award pending at least your decision

21  this or resolving this.  What I can assure you that I

22  will do during, even though I'm no longer a parter in

23  the firm, so that this doesn't occur in the future, and

24  after our conversation about a month ago, perhaps I

25  should have taken a more aggressive role.

```
 1              I have one other suggestion.  What often

 2   times we do in the state system when there's issues over

 3   lawyers, we appoint a practice monitor who sort of

 4   reviews the documents and pleadings.  I'm willing to

 5   play that role.

 6              See, I didn't look at the material before.

 7   I only looked at what I was trying for Mr. Bailey.  But

 8   if this court has a way to resolve this, and also to

 9   insure in the future, I'd be willing to sit as a

10   practice monitor, review what he's doing, submit a

11   report to the Court on a monthly basis, even though I'm

12   no longer a partner, and to make sure that Mr. Bailey is

13   still the vigorous advocate but he doesn't --

14              THE COURT:  With your schedule, how are you

15   going to do that?

16              MR. STRETTON:  I can make time.  I don't

17   need a lot of sleep.  But if I could help my friend --

18   he's my friend.

19              THE COURT:  Mr. Lappas.

20              MR. LAPPAS:  I just wanted to say two

21   things.  Number 1, I don't need testimony today on the

22   question -- I'm not requesting testimony today on the

23   question of whether or not Mr. Bailey is judgment proof

24   or not.  But the brief that was filed by Mr. Stretton on

25   behalf of Donald Bailey and the law firm makes a number
```

1    of arguments why he individually, Mr. Stretton, and why

2    the firm should not be held to the judgment that was

3    entered by this court, and he's repeated some of those

4    arguments today.

5            I just want to -- I guess, if the Court is

6    going to entertain that argument now, then I think there

7    should be some testimony on record.  But I would repeat

8    what I said earlier.  The order against Bailey, Stretton

9    & Ostrowski, the firm, was entered.  It was appealed.

10   It was affirmed on appeal.  I don't think it's subject

11   to any arguments now about due process or otherwise.

12   That's number 1.

13           Number two.  If the Court is going to order

14   a briefing, or even if you're not going to order

15   briefing, I would request a reasonable period of time to

16   file a supplemental request for additional attorney's

17   fees relative to the litigation of the motion and the

18   preparation for today's proceedings.

19           And although I don't want to speak for Mr.

20   Heinz, I'm sure he makes the same request.

21           MR. HEINZ:  Yeah, I would make the same

22   request.  Thank you.

23           MR. STRETTON:  I feel like we're spinning

24   the wheel.  I would hope that they might reconsider

15   counsel fees for this because I think that there's some

1    valid arguments.  This is not a frivolous defense to the

2    motion for contempt.  But that's their call.  I'd like

3    to stop it now.  That's why I'm trying to offer this.

4    I'll agree to be a practice monitor or I'll find someone

5    else.  I can ask Bob Davis, my friend, or someone else

6    to do this or review what Mr. Bailey is doing, if you

7    think I'm too busy.

8              I just want to stop this and start and let

9    Mr. Bailey continue with his practice in the right way

10   and stop the clock running for them on these matters so

11   they can go back to making real money and help their

12   clients on other matters.

13             THE COURT:  I'm going to defer, and I'll be

14   back in touch with you.

15             MR. STRETTON:  Thank you.

16             THE COURT:  Court's adjourned.

17             COURTROOM DEPUTY:  Court's adjourned.

18             (Whereupon, the proceeding adjourned at

19              10:51 a.m.)

20

21

22

23

24

25



1

2

3                                CERTIFICATION

4

5

6            I hereby certify that the proceedings and

7    evidence are contained fully and accurately in the notes

8    taken by me on the within proceedings, and that this

9    copy is a correct transcript of the same.

10

11

12
                              _____
13                            Wendy C. Yinger, RPR
                              U.S. Official Court Reporter
14                            (717) 440-1535

15

16

17

18

19

20           The foregoing certification of this

21    transcript does not apply to any reproduction by any

22    means unless under the direct control and/or supervision

23    of the certifying reporter.

24

25

## CERTIFICATE OF SERVICE

I, Don Bailey do hereby certify that on January 10, 2005 I served a

true and correct copy of the following Document to the attorney listed below

by First Class Postage Prepaid Mail:

Kathryn Simpson, Esquire
Mette Evans & Woodside
P.O. Box 5950
Harrisburg, PA  17110

Stephen Russell, Esquire
Stock & Leader
Susquehanna Commerce Center East
221 W. Philadelphia Street
York, PA 17404

Spero Lappas
Serratelli Schiffman
Suite 201
2080 Linglestown Road
Harrisburg, PA 17110


                    RESPECTFULLY SUBMITTED,

                    **BAILEY & OSTROWSKI**

        By:         s/Don Bailey, Esquire
                    4311 N. 6th Street
                    Harrisburg, PA  17110
                    (717) 221-9500