## IN THE UNITED STATES DISTRICT COURT FOR
## THE MIDDLE DISTRICT OF PENNSYLVANIA

BEVERLY BEAM                      )          NO.  1:01-CV-0083
                                  )
    Plaintiff                 )
                                  )
vs.                               )          (Judge McClure
                                  )
SCOTT DOWNEY et al.               )
                                  )
    Defendants                )


## PLAINTIFF' EXHIBITS


1.)  Transcript of Proceedings held on January 5, 2005

2.)  Brief of Respondent in *Beam vs. Bauer et al.* docketed at No.

1:CV-02-1797

                    RESPECTFULLY SUBMITTED,

                    **BAILEY STRETTON & OSTROWSKI**

By:          s/Don Bailey, Esquire
             4311 N. 6th Street
             Harrisburg, PA  17110
             (717) 221-9500

## <u>CERTIFICATE OF SERVICE</u>

I, Don Bailey do hereby certify that on February 1, 2005 I served a true and correct copy of the following Document to the attorney listed below by First Class Postage Prepaid Mail and Electronic Means:

Kathryn Simpson, Esquire
Mette Evans & Woodside
P.O. Box 5950
Harrisburg, PA 17110

Spero T. Lappas Esquire
2080 Linglestown Road
Harrisburg, PA 17110

Stephen Russell, Esquire
Susquehanna Commerce Center East
221 W. Philadelphia Street
York, PA 17404


RESPECTFULLY SUBMITTED,

**BAILEY STRETTON & OSTROWSKI**

By:          s/Don Bailey, Esquire
             4311 N. 6th Street
             Harrisburg, PA 17110
             (717) 221-9500


6

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
HARRISBURG DIVISION

BEVERLY BEAM,
    Plaintiff            :
                       :
                       :
          v.         :  CASE NO.
                       :  1:02-CV-01797
MARC BAUER, DR. GLENN W.  :
ZEHNER, CAPITAL AREA     :
INTERMEDIATE UNIT, SCOTT  :
DOWNEY, ROGER MORRISON,   :
DAVID L. GRAYBILL, AND    :
MICHAEL SWEGER,          :
    Defendants         :

TRANSCRIPT OF PROCEEDINGS
CONTEMPT HEARING

BEFORE:  HON. SYLVIA H. RAMBO

DATE  :  January 5, 2005
          10:00 a.m.

PLACE :  Courtroom No. 3, 8th Floor
          Federal Building
          Harrisburg, Pennsylvania

BY   :  Wendy C. Yinger
          U.S. Official Court Reporter

APPEARANCES:

SAMUEL C. STRETTON, ESQUIRE
    For Donald Bailey, Esquire, and
    Bailey, Stretton & Ostrowski

SPERO T. LAPPAS, ESQUIRE
    For Defendants Graybill and Sweger

AMBROSE W. HEINZ, ESQUIRE
KATHRYN LEASE SIMPSON, ESQUIRE
    For Defendant Morrison

COPY



1          THE COURT:  Good morning, everyone.  It's my

2     understanding that there is a judgment in the Graybill

3     matter only and that there's no judgment in Morrison,

4     but that there is an appeal on Morrison.

5          MR. STRETTON:  That's correct, Your Honor.

6     That's the order of May 26th in the amount of $3712.26.

7          THE COURT:  Thank you.  Okay.  My first

8     request is, I need some argument in response to Mr.

9     Stretton's memo concerning the proper method of going

10    about executing on the judgment in the, I guess it would

11    be, the Graybill matter.

12         MR. LAPPAS:  I represent Graybill, Your

13    Honor.

14         THE COURT:  Yes, sir.

15         MR. LAPPAS:  Your Honor, by way of -- is it

16    okay if I speak from here?

17         THE COURT:  Yes, it's fine.  Hold on a

18    minute.  Go ahead.

19         MR. LAPPAS:  Your Honor, by way of brief

20    summary of the somewhat complicated procedural history

21    of this case, you entered an order dismissing the

22    lawsuit.  That was appealed to Third Circuit No.

23    03-1874.  Then you later entered an order granting fees

24    to all of the Defendants other than Morrison.  Morrison

25    was a special case.  Bauer, Zehner, the Capital Area

```
 1   Intermediate Unit, Graybill and Sweger received
 2   attorney's fees by an order which you entered, which was
 3   then appealed to the Third Circuit at No. 03-2194.
 4          The Third Circuit granted relief on both
 5   numbers, consolidated the order on November 9, 2004,
 6   granting attorney's fees under Rule 38, Appellate Rule
 7   38, granting appellate attorney's fees.  That case was
 8   reported at 383 F.3d 1000 -- I'm sorry, 383 F.3d 106.
 9          Now the order that you entered in favor of
10   my clients was entered under Rule 11.  And Rule 11,
11   unlike Rule 38 in the appellate court -- the courts have
12   been clear that motions under Appellate Rule 38 are
13   damages issues.  Rule 11 is a sanctions motion.  And in
14   looking at the most recent United States Supreme Court
15   case that I can find that discusses Rule 11, which is
16   President Clinton's case, Clinton versus Jones.
17          THE COURT:  Do you have a cite, please?
18          MR. LAPPAS:  Yes, ma'am, reported at 520
19   United States 681, 117 Supreme Court 1636.  And I'm
20   reading from the Supreme Court page number 1652,
21   footnote 43.  It says that, the Court has inherent power
22   to impose sanctions at a level sufficient to deter
23   repetition of the conduct or comparable conduct by other
24   similarly situated.
25          So it is a fact that we can enter judgment,
```

1  and if there are other judgments, wait in line, possibly

2  forever, to obtain the relief that this Court ordered.

3          THE COURT:  Wasn't there judgment entered in

4  this?

5          MR. LAPPAS:  There was judgment entered by

6  this court, and then we took that judgment and recorded

7  it in the county court where it's available to us to

8  execute.  Now Mr. Stretton's brief says that, there are

9  numerous other judgments ahead of us.  We have not -- we

10  don't have that information.

11         Although, in the research that I did in

12  preparation of today's hearing, I could find two other

13  cases in which Mr. Bailey was imposed with sanctions by

14  the eastern district.  Now I only have the district

15  court cites.  I don't know if these have been appealed

16  or not.  But in both of these cases, his conduct was

17  found to be in bad faith, vexatious, and resulted in

18  substantial sanctions awards.

19         The point of all this argument is simply

20  this:  If Rule 11 is a sanctions motion, and if it's

21  designed to deter comparable conduct by this respondent,

22  as well as others, then the order must be enforced.  It

23  would create no sanctions.  It would create no

24  deterrence if the Court were simply to say to us, well,

25  file your judgment, wait in line.

1          Mr. Stretton has indicated, you know, it

2    would be unfair to everybody else if you jump to the

3    head of the line.  The fact of the matter is that, if we

4    wait in line and never get anything, or if we're just in

5    the posture of a standard judgment holder, there's no

6    deterrent effect on this court's order whatsoever.

7          And because deterrence is part and parcel of

8    a Rule 11 sanction, I think it's important to know some

9    of the things that have happened since you entered your

10    order.  Since you entered your order, the Third Circuit,

11    in ruling on Mr. Bailey's appeal in this case --

12          THE COURT:  In which case now, the Graybill

13    case?

14          MR. LAPPAS:  In the case -- right.

15          MR. STRETTON:  In the damage -- we appealed

16    the damages from the Morrison matter and Beam.

17          MR. LAPPAS:  But more than that, it is also

18    an appeal from your initial order dismissing the lawsuit

19    against everybody.  There's a consolidated order.  I can

20    hand it up.  It's in Third Circuit No. 03-1874 and

21    03-2194.  It is dated September 9, 2004.

22          The first of those numbers was Mr. Bailey's

23    appeal from the 12B6 motion, which dismissed this

24    lawsuit in this court.  The second number is Mr.

25    Bailey's appeal from the order by which you granted

1    attorney's fees to my clients and to the Capital Area

2    Intermediate people, everybody other than Morrison.

3             Morrison's grant of attorney's fees is still

4    on appeal.  It's not yet been decided.  So with respect

5    to my clients, the Third Circuit said about the appeal,

6    reading from page 109 of the Circuit Court Reporter

7    Decision, 383 F.3d 109, here, despite many queues from

8    us and the district court that her cause was wholly

9    meritless, Beam and her counsel have persisted before

10   the district court and again before us.

11            Additionally, as we noted in our opinion in

12   Beam v. Bauer, in her haste to file this lawsuit, Beam

13   disregarded the pending appeal before this court.  Beam

14   would have been well-advised to await our opinion, which

15   ultimately affirmed a result in the first case.  Our

16   affirmation of the district court's first dismissal was

17   lost on counsel, who had already filed the second suit.

18   When they speak of the second suit, they're referring to

19   the suit that you handled.  The first suit was in Judge

20   McClure.

21            Had counsel been paying attention, our

22   result would have given him notice of the fact that he

23   had failed to discern on his own, that his client's

24   claims were wholly without legal or factual substance.

25   We will thus award damages to the appellees.

1          So even after Judge McClure and this court

2    rejected and granted attorney's fees, an appeal was

3    taken.  It was denied.  The Third Circuit used very

4    strong language to indicate that it was meritless and

5    warranted damages.  So we have a situation there.

6          There have been other grants of attorney's

7    fees against Mr. Bailey for conduct which, I think, is

8    somewhat comparable to what we have here.

9          MR. STRETTON:  We object to those, Your

10   Honor.  They have no relevancy today.

11         MR. LAPPAS:  Well, I offer them as support

12   of the need for the deterrence that Rule 11 provides.

13         THE COURT:  What about the federal rules

14   that talk about execution on a judgment?

15         MR. LAPPAS:  I think the court has inherent

16   power to order Mr. Bailey and his firm to pay the

17   judgment that you entered under Rule 11.  This was a

18   Rule 11 order, and I think you have the power to order

19   him to pay it.

20         THE COURT:  You wish to respond to that?

21         MR. STRETTON:  Yes, Your Honor, briefly.

22   Obviously, I'm not going to repeat.  Obviously, I will

23   not repeat what is in my brief, but one of the themes

24   that runs throughout the decisions is that, unless the

25   federal statute or rule for which the sanctions are

being imposed through specifically has an enforcement

provision, that the Rule 69, 70, and 64 of the Rules of

Civil Procedure are the appropriate way in which to

enforce it.

          Yes, there is a deterrent effect to Rule 11

sanctions, no question about that.  But the rule itself

does not have a way to enforce that.  If the persons who

made this rule wanted to create a separate vehicle for

you to enforce it through a contempt proceeding or some

other way, it would have had to have been written in

that rule, as I read the case law.

          And Rule 11 does not contain such a sanction

nor do the other statutory provisions.  The sanction and

deterrent is, one, the finding of bad conduct, and, two,

the entering of a monetary sanction, which has now been

entered into judgment.  That has a deterrent effect.

          And the rule -- Federal Rules of Civil

Procedure are very clear as to the procedure to be used

in this particular matter.  As I told you in my brief, I

went through some case law to see if there was utter

examples of contempt being used to enforce a sanction

order that had not been paid as opposed to the other

one.

          The only case I could find was the one I

cited, but that did not appear to be on point and did

1    not appear to have the issues I raised or put before the

2    court back in the early '70's when that -- with when

3    those issues arose.

4            So it's our position that the procedure they

5    are utilizing is the correct procedure, that is, going

6    for judgment in a Court of Common Pleas of Dauphin

7    County.

8            THE COURT:  What about the Morrison case

9    though?  That has not been reduced to judgment.

10           MR. STRETTON:  And that is still on appeal.

11           THE COURT:  Well, that doesn't mean we can't

12    still enforce it.  There's been no request to stay.

13           MR. STRETTON:  Except that, again, it's my

14    position -- I agree, there's been no request to stay,

15    but it's my position that, again, the way to enforce it

16    is, when it's ripe for judgment, is to go that way.

17    Otherwise, you could circumvent.  Everyone would -- an

18    appeal would be taken, and everyone would sprint to a

19    court to have a contempt hearing to avoid the judgment

20    process, the priority of liens, and other issues.

21           THE COURT:  Well, look at the local rule

22    83.3.1(b).

23           MR. STRETTON:  I'm sorry, Your Honor.  What

24    does that say?  I don't have it before me.

25           THE COURT:  I'll read it.  If counsel acts

1  in a dilatory manner or files motions for purpose of

2  delay or fails to comply with any rule or order of court

3  and the judge finds that the sanctions in subsection

4  83.3.1(a) above are inadequate or unjust to the parties

5  in light of the facts or circumstances, the judge may,

6  in addition to, or in lieu of, such sanctions, assess

7  reasonable costs directly against counsel whose action

8  has obstructed the effect of administration of the

9  court's business or suspend counsel from practicing in

10  this court for a specified period of time not to exceed

11  six months.

12        MR. STRETTON:  Okay.  Let's deal with that

13  rule.  Now that you've said it, I am familiar with that

14  particular rule.  First, it says, impose sanctions.  You

15  have imposed sanctions.  Second, that rule cannot

16  overrule the Federal Rules of Civil Procedure.  It can't

17  be an inconsistency.  I would argue, it does.  Third --

18        THE COURT:  How is it inconsistent?

19        MR. STRETTON:  Because the Federal Rules of

20  Civil Procedure provide for a way in which monetary

21  awards, sanctions, deterrent effect of others are to be

22  enforced and recovered through 69, 64, and 70, the Rules

23  of Civil Procedure.  That rule perhaps seems to suggest

24  something else.  Now there's one component to that

25  though that I would disagree with.  It suggests, well,

1    you have the right to suspend Mr. Bailey or the firm

2    from the practice in the middle district as part of this

3    sanction process.

4             But as you're aware, there is a separate set

5    of rules under the federal rules for disciplinary

6    enforcement.  And it would be my position that, that

7    would be the procedure that would be used.  If, for

8    instance, this court thought that the sanctions were

9    such that would warrant violations of the rules of

10   professional conduct, either through filing a motion

11   over at the Lemoyne office or this court empaneling

12   three judge panel to hear evidence on it pursuant to

13   your own rules, that would be the procedure used.

14            THE COURT:  It says, any such suspension

15   shall not be subject to Chapter 17, attorney

16   disciplinary enforcement.

17            MR. STRETTON:  Except, I think, that would

18   run into a serious due process issue in terms of taking

19   away a license, which is a property and liberty interest

20   in doing it pursuant to a rule and not using the normal

21   procedure.  And to my knowledge, there's no case law,

22   even in the disciplinary system, where a lawyer is

23   unable to pay a fine and costs, that his license or her

24   license would be taken away.

25            There is a procedure coming the opposite way

1    where one is suspended or disbarred, misused funds, and

2    doesn't repay the funds, then they cannot apply for

3    reinstatement unless they repay the fines.  But that's a

4    different approach.  So I think there's serious

5    constitutional problems.

6              THE COURT:  Aren't we faced here with the

7    court's total inability to control the court, the

8    procedures in this court, and seeing that counsel act in

9    the appropriate manner, and not being able, according to

10   you, to do any enforcement, no control whatsoever over

11   the administration of the court?

12             MR. STRETTON:  But you do have control.

13             THE COURT:  I don't have control.

14             MR. STRETTON:  There's a couple things you

15   can do.  One, the sanctions deterrence you entered.

16   Even if they cannot collect immediately, they certainly

17   have an adverse effect against Mr. Bailey and the firm

18   in terms of borrowing money, things of that nature, and

19   also potentially having to pay it.

20             Second, you have the right for specific

21   misconduct in your courtroom.  In other words, if Mr.

22   Bailey would do something or I would do something --

23             THE COURT:  I'm aware of that type of

24   contempt.

25             MR. STRETTON:  The third, you have a right

1    to refer matters to the office of disciplinary counsel

2    and/or to your own three judge panel to bring

3    disciplinary action, if you feel it rises to that level.

4    So you have many adequate sanctions, if you choose to do

5    so.

6              Now let me just go a little further because

7    we're here today on a contempt hearing.  I'm not sure if

8    it's civil contempt or criminal contempt that we're

9    moving on.  Obviously, there are different standards.

10   It would seem to me that you are moving on civil

11   contempt not criminal contempt, but I may be wrong, but

12   you don't specify it in your order.  There's two

13   different procedures, as you well know.  I don't need to

14   tell the Court.

15             But for civil contempt, one aspect is

16   ability to pay.  And at least as to Mr. Bailey, I am

17   prepared to present ample evidence of an IRS lien of

18   60,000, $70,000.00, credit card liens, prior judgments,

19   some out of the eastern district, of substantial sums of

20   money, liens and judgments from persons who have

21   borrowed money from -- he's borrowed money from in the

22   100 to $130,000.00 range, all of whom feel very strongly

23   that these liens or these judgments should not jump to

24   the head of the class, so to speak.

25             So there's a serious issue as to Mr.

1    Bailey's ability to pay based on that, and if you need

2    testimony, we're willing to do that. That would be one

3    of the prongs. If you decide it's criminal contempt, of

4    course, then it's a very different standard, different

5    burden of proof, obviously, and it's a willful sort of

6    situation.

7            Again, I think that would be negated in this

8    particular matter. But I'm not suggesting in any way

9    that lawyers can come in with impunity and act badly

10   before a court. That goes against everything I've ever

11   thought of as a lawyer and what you do and, I'm sure,

12   what these gentlemen do. Mr. Bailey's heart is in the

13   right place. I believe that sometimes his language is a

14   little rough, and that's a problem.

15           THE COURT: We're not talking about the

16   conduct that led to the imposition.

17           MR. STRETTON: I understand. But I believe

18   there are ample remedies in this particular matter

19   before the court.

20           THE COURT: What? Other than to go and --

21   the judgment has been entered, and you've admitted that

22   the likelihood of converting the judgment into recovery

23   of a monetary sum is almost nil.

24           MR. STRETTON: Well, people -- wonderful

25   thing about the practice of law, the next day is a new

1    case, and sometimes people make money, and sometimes

2    they get out of debt.  It's there, and Mr. Bailey will

3    pay it, if he's ever able to.

4              Plus it's a judgment against me also in the

5    partnership in this particular matter.  And I'm not

6    quite in the same position as he's in in that particular

7    matter, though I have a different argument as to my

8    involvement in this matter in terms of lack of some

9    notice of these actions.

10             THE COURT:  You had notice.

11             MR. STRETTON:  Well --

12             THE COURT:  The very order itself setting

13   forth the hearing is notice.

14             MR. STRETTON:  I'm talking -- I don't mean

15   notice for today.  I mean, notice for the original

16   judgments and the conduct.  I wasn't involved.  At least

17   one of the cases arose before I was even a partner, and

18   my partnership, which ended last week, is a very limited

19   partnership, a partnership that was for trying cases,

20   and only the cases I entered my appearance on.  That was

21   it.  I will present testimony as to that.

22             THE COURT:  But on the masthead, that

23   doesn't give notice to the public, does it, or to the

24   court?

25             MR. STRETTON:  Nope.  That's why I ended it,

1   and I suggested to Mr. Bailey to go back to an of

2   counsel arrangement of sorts in that particular matter.

3   I agree.  I never had actual notice of these matters

4   until after the fact.

5          But I did make a suggestion to everyone.

6   Now we're here, and we're talking.  I told Mr. Lappas, I

7   won an award of $28,000.00 in counsel fees with Judge

8   Caputo in a case of Fisher -- McLaughlin, et al versus

9   Fisher.  That's still in post-trial motions.  It's been

10  there about a year and a half now in post-trial motions.

11         I'm convinced that -- I don't know if the

12  full amount of damages will remain or not, I don't know,

13  but I'm convinced that the award, that the finding of

14  liability will remain, would still give substantial

15  damages.  I don't know if 1.5 million will remain.  I

16  hope it does.  But if it doesn't, there will be enough

17  for counsel fees, in any event.  It's not going to go

18  back to a nominal damage.

19         I have monies that are due the firm, and by

20  Mr. Bailey, I've offered to assign that $28,000.00 to

21  them so this matter can be resolved in this particular

22  matter, but I haven't gotten any response on that

23  particular issue.

24         THE COURT:  We're talking about all total,

25  how much in fees from both of you?

1    MR. LAPPAS:  Your Honor, the order in favor
2    of my clients is between 4 and $5000.00.  I don't have a
3    dollar amount for you.
4    MR. STRETTON:  It's $3749.17.
5    THE COURT:  Hold on.  Three thousand --
6    MR. STRETTON:  -- 749.17 for Bauer, Zehner,
7    Downey, for the Stock & Leader firm.  And then, it's
8    $4755.00 for Mr. Lappas's client, and that's per your
9    order of April 21st.  There is also, though it's on
10   appeal, the Morrison amount of $3712.26, which is on
11   appeal now, which goes also against my client, Mr.
12   Bailey and the firm.
13          I have those copies of those orders, which I
14   might as well just hand up and mark as, I guess,
15   Respondent's 1.  In fact, if you go through those
16   orders, you'll see the first one, Your Honor, is the
17   April order that has the two amounts that are currently
18   at issue; Mr. Lappas's amount on the second page, and
19   the Bauer firm amount on the first page.  I'm not sure
20   the Bauer firm has even filed a motion.  I don't know if
21   they're properly before you.
22          The next order is the Morrison amount, which
23   is on appeal, the $3712.00.  And then the third page is
24   the Third Circuit's order against Mr. Bailey only for
25   various appellate court costs.  And then the fourth

1    order is against, which is not before you, is Judge

2    McClure's order against Beam for a substantial amount of

3    money.

4              But the first two orders are here, and then

5    Mr. Bailey's order is here.  Although Mr. Bailey asked

6    me to point out to the Court that he disagrees with my

7    suggestion to resolve this matter, I'm willing to do it

8    because I'd like to see it resolved in this matter.

9              THE COURT:  Let me hear from the Morrison

10   group.  Mr. Heinz.

11             MR. HEINZ:  Yes, Your Honor.  Just first,

12   I'd like to join in Mr. Lappas's argument and point out

13   that we have not entered a judgment on this award in

14   state court as of yet.  We were waiting for Your Honor's

15   decision on how to proceed, whether the court would be

16   willing to enforce this order through its contempt

17   powers.

18             I would like to add that, subsequent to the

19   Third Circuit's decision affirming your original order

20   to dismiss the case and affirming the award of

21   attorney's fees to Mr. Lappas and to the other

22   Defendants, we were given permission to file an award or

23   a motion for attorney's fees, and we did so, and you

24   issued this order on May 26th, 2004.

25             And subsequent to that, Mr. Bailey filed an

1    appeal to that order, even after having notice from the

2    Third Circuit that an appeal is not simply the next step

3    in the process.

4         If this continues, Mr. Bailey is just going

5    to continue to appeal every award, and, as Mr. Stretton

6    has pointed out, he seems to be completely judgment

7    proof in the state system.  I think that it would be,

8    you know, unjust for Mr. Morrison to continue to incur

9    fees and costs in defending this action and defending an

10   appeal to an order that Your Honor issued.

11        And we just feel that either this court

12   agrees to issue a contempt order and proceed with

13   contempt powers or we'll have to go through the state

14   process.  But in the long run, our clients just continue

15   to incur more fees.

16        THE COURT:  Mr. Lappas, do you have any case

17   law that would take your case where there's a judgment

18   outside of the Rule 69 and some of the others on

19   enforcement of judgments and that Rule 11 is an

20   exception to it?

21        MR. LAPPAS:  I don't have any cases that say

22   that Rule 11 is an exception to the method of enforcing

23   judgments other than what I have said already.  And

24   frankly, part of what I -- I think part of what Mr.

25   Stretton has said, and certainly the Court's comments

1    bolster my argument, that you have inherent power to

2    impose sanctions.  Now the sanction you imposed was a

3    judgment and dismissal.  But if that judgment is

4    worthless, as I'm hearing, then I think you have

5    inherent power to order payment.

6              And Mr. Heinz is quite correct.  There have

7    been, by my count, five appeals filed in the Third

8    Circuit from either your orders or Judge McClure's.

9    There was one brief filed about two -- well, about a

10   month ago, Mr. Bailey's brief, that was really so

11   outrageous, we filed a motion in the Third Circuit to

12   stay the briefing schedule and for sanctions in the

13   appellate court.

14             That motion was granted in part.  The

15   briefing schedule has been stayed, has been referred to

16   an appeals court motions panel, I believe, is the

17   correct terminology, to see what happens.  In that

18   brief, Mr. Bailey made representations that Judge

19   McClure was personally prejudiced against him, that the

20   courts, I don't know if he specified what court, but the

21   courts were --

22             MR. STRETTON:  We object to this.

23             MR. LAPPAS:  -- were trying to engineer the

24   outcome of various cases, that the FBI needed to

25   investigate this situation, that the Supreme Court

1   should investigate it.  And again, going back to Mr.

2   Heinz's argument, there's another brief due on yet

3   another appeal that Mr. Bailey filed.  That's due on

4   January the 10th.  And Heaven only knows what that one

5   is going to say.

6          You know, every time a brief is filed, we

7   can't just ignore it.  We've got to brief it.  We've got

8   to usually supplement, or often supplement, the

9   appendix.  Then, you know, there was substantial work

10  necessary to prepare for today's proceedings.  You know,

11  I think that, you know, you sort of put your finger on

12  it a moment ago when you said, if all you do is enter a

13  judgment that is worthless to us -- our clients got to

14  keep spending money.

15         And we can't advise them, you know, these

16  lawsuits are frivolous, just ignore them.  We've got to

17  defend them.  We've got to file the Rule 12B6 motions.

18  We've got to file the briefs in the Third Circuit.  The

19  language of the order you entered for us was different

20  than the language you entered against Morrison.  You

21  entered judgment for us.  And in the Morrison, you said

22  they're directed to pay.

23         I don't think that should be what

24  distinguishes our positions here.  You know, we have a

25  very valid complaint that this particular attorney and

1   his firm filed one lawsuit after another, filed five

2   appeals, the briefs -- well, you struck one of the

3   briefs in this court.

4           It's just really reached a point where

5   something has got to be done. I have never been in this

6   position before in my life asking for this kind of

7   relief, but something has got to be done. That's what

8   we're seeking here.

9           MR. STRETTON: But the problem is, the same

10  issue of why they can't collect on the state judgment is

11  an issue or an element in the contempt. If you don't

12  have the ability to pay, that would defeat criminal

13  contempt because there wouldn't be willfulness.

14          THE COURT: Then we'll never have the

15  ability to control conduct.

16          MR. LAPPAS: Your Honor, may I say one

17  thing, please? I'm very sorry to interrupt. But one

18  thing I think we have to concentrate on is that this

19  order is not just against Mr. Bailey, it's against the

20  firm. Now the order against Bailey, Stretton &

21  Ostrowski law firm was entered by this court. It was

22  appealed, and it was affirmed on appeal.

23          Now I understand -- I respect and admire Mr.

24  Stretton. I understand he's in a difficult spot. But

25  he's held himself out to be a partner of the firm. He

1   is, I believe, on the hook for that judgment just as

2   much as Mr. Ostrowski and the firm itself, if the

3   partnership itself has any assets.

4           So I really think that, just to keep

5   concentrating on Mr. Bailey's personal financial

6   situation is a little bit perhaps beside the point.  We

7   don't know what Mr. Stretton's situation is.  We don't

8   know what Mr. Ostrowski's situation is.  We don't know

9   what the firm does or does not have.

10          But we think that all four of those entities

11  are on the hook for this order and judgment and any of

12  them and all of them must be ordered to pay it.  I'm

13  sorry to interrupt.

14          MR. STRETTON:  And that, because of the way

15  the partnership's letterhead was styled, and I agree

16  with you, I should have put in some magic words, a

17  limited partnership, that's why I'm making the offer to

18  assign that 28,000, or up to the amount, to take away

19  these attorney's fees for the firm and Mr. Bailey.

20          Of course, the money is not here yet, but I

21  believe -- and/or hold us in abeyance for some reason if

22  Judge Caputo should reverse the civil verdict totally

23  and order a retrial.  I don't think that will happen,

24  but I don't know.  I have no idea what he's going to do.

25          But the record, I thought, was fairly strong

1  to maintain the verdict, the liability.  To maintian the

2  $1.5 million verdict, I don't know.  That will be -- I

3  believe there's a basis, but I don't know what Judge

4  Caputo is going to do.  That might be a reasonable way

5  to resolve it.

6       Because I certainly don't want to --

7  certainly, if I don't win before you today, and you say,

8  you don't have the power, I don't feel like spending the

9  rest of my life going through depositions in aid of

10 execution and other things, if I can avoid it.  What I

11 would like to do is, make that offer and see if everyone

12 is willing to do it.

13      And I believe that, that would resolve this

14 matter.  And as soon as the money is available, it will

15 be theirs, whatever interest it accrues during the time

16 period.  That would cover all three orders.  I think the

17 amount is enough for the Third Circuit order against

18 Bailey, the Morrison order that's on appeal, and then

19 the order of Your Honor.

20      And assuming that -- Judge Caputo has

21 already approved my counsel fee award for the 27 or

22 $28,000.00 figure, as I recall.  So that should be

23 sufficient to cover all these -- all that.  And I'm

24 willing to put that on the table to resolve these

25 matters without any way compromising all my earlier

```
 1   argument though.
 2              But see, I see this differently than you in
 3   terms of the Court's power.  I really -- I always get
 4   very nervous about taking away the ability of the court
 5   to control the courtroom.  Because if the rules don't
 6   apply, the system becomes chaos.  I am a firm believer
 7   on that.
 8              THE COURT:  That's exactly what we have
 9   here.
10              MR. STRETTON:  But I believe that you have
11   ample -- and you've done things that have gotten the
12   message across.
13              THE COURT:  I don't think so.
14              MR. STRETTON:  Well, I can tell you, it has,
15   for this reason.
16              THE COURT:  It can't if he is still filing
17   briefs that has the same type of approach that I have
18   seen for years.
19              MR. STRETTON:  I talked to Mr. Bailey about
20   that.  There is a possibility he may withdraw that.  I
21   have, of course, filed a motion to disassociate myself
22   from that brief when I became aware of it.  I filed that
23   with the Third Circuit yesterday.
24              THE COURT:  But it's obvious, you don't have
25   any control over it either.
```

1          MR. STRETTON:  But I think I do now.  And I

2    think the message -- I've had some discussions with Mr.

3    Bailey in terms of how to present issues and that

4    sometimes one can go too far.  On the other hand, you

5    have -- what this Court always trys to do is get

6    advocates to help the poor, the downtrodden, the

7    prisoner, the civil rights people.  It's so hard to get

8    plaintiff lawyers to do this.

9          THE COURT:  Then we get bitten in the

10   process.

11         MR. STRETTON:  It shouldn't happen.  And Mr.

12   Bailey has to learn that, and he's learned it.  I've

13   broken up the partnership over this.  I'm still here to

14   help Mr. Bailey and try some of his cases, if he wishes

15   me to do so.  I don't know what his intentions are in

16   the future in that regard.  He's gotten the message now.

17         I am willing to put that 28,000, if it ever

18   comes to reality, to resolve this or sign any document

19   or assignment over to put this to bed, because I feel

20   bad about it, too, in some ways.  But Mr. Bailey's

21   errors are not evil based.  He gets so doggone

22   passionate on his cases.

23         THE COURT:  It does not excuse a person from

24   acting professionally.

25         MR. STRETTON:  I agree.  You know that I

1  agree.  But it's far different than someone who is just

2  vicious and out to make money and doing things.  I mean,

3  there's another approach.

4         THE COURT:  Hasn't Mr. Bailey, and sometimes

5  Mr. Ostrowski, become vicious in their writings and

6  their submissions?

7         MR. STRETTON:  They have -- I don't know

8  about Mr. Ostrowski.  I haven't seen his.  But I would

9  agree with you, on certain things that Mr. Bailey has

10 written, he has become too personal in his approach and

11 drawn -- he's had good -- some interesting facts, but

12 he's taking conclusions that go beyond the connecting of

13 the dots of the facts.  I would agree with that.

14         And I talked to Mr. Bailey about that.

15 That's why I try most of his cases for him, because he

16 doesn't have the trial temperament.  But sometimes --

17 but he is a good appellate arguer.  You know, last year,

18 he had a case which he prevailed in the U.S. Supreme

19 Court and did a fine job on oral argument.  So he has

20 the abilities, and he's a good lawyer, and his

21 background is someone who warrants respect in terms of

22 service in Congress, Attorney General, I mean, bona fide

23 war hero, silver stars, bronze stars.

24         THE COURT:  That does not balance out what

25 he's been doing in the last few years.

1          MR. STRETTON:  I agree.  And he's going to

2    stop it.  And he has told me that.  And he and I have

3    had a number of discussions.  Coming back from the

4    Hoover settlement conference when you and I had a

5    discussion, I have had several discussions with Mr.

6    Bailey and Mr. Ostrowski on those issues and made some

7    very strong points to both of them, and I believe both

8    of them are starting to change.

9          Now I'm a little sore at Mr. Bailey for the

10   most recent brief.  That's why I disassociated myself

11   from it.  But that may be withdrawn in the future in any

12   event.  That will be Mr. Bailey's decision on that

13   particular matter.  But I still think, just having him

14   here today and have to sit in court in front of a lot of

15   people, it's almost like a public censure.  It is a

16   public censure in many ways, having to hear his former

17   partner and friend sort of condemn him.  I think he's

18   gotten the message.

19          THE COURT:  I don't think so.

20          MR. STRETTON:  But in any event, for you

21   to -- let's go back to the law now and not, you know,

22   not my wish list here.  I truly suggest to this court

23   that you do not have the power and jurisdiction here for

24   the reasons in my brief.

25          I also suggest, if you think you do, that

1   there are -- at least as to Mr. Bailey, there's no

2   ability to pay at this particular point in time.

3            THE COURT:  What was your response to the

4   Morrison claim where there's no judgment?

5            MR. STRETTON:  Well, my response had been

6   the same as before, that would circumvent the procedure.

7   If one did not enter a judgment, had a sanction, did not

8   enter a judgment, and then was able to collect it, using

9   the contempt power, and bypass the whole procedural 69,

10  70, and 64 Rules of Civil Procedure for collecting

11  monetary judgments, it would create a glaring exception

12  in that particular matter.

13           THE COURT:  Your proposal that you've made,

14  all the other judgments that you say are against Mr.

15  Bailey, are they against him individually or are they

16  against the firm?

17           MR. STRETTON:  On the judgments that I

18  handed up to Your Honor, I didn't mark it, but on the

19  first one, the $3749.17 is against the firm and Mr.

20  Bailey.

21           THE COURT:  No, no, I'm not talking about

22  these.  You say that there are other judgments already

23  ahead.

24           MR. STRETTON:  They're against Mr. Bailey.

25           THE COURT:  Just individually?

1    MR. STRETTON: Yes. They are his own

2  personal IRS judgments, liens. He had sanctions before

3  Judge Joyner in '95.

4    THE COURT: But you're not involved in that?

5    MR. STRETTON: I represent him, but I was

6  not a partner with him. I represented him trying to

7  overturn those before Judge Joyner. To my knowledge,

8  there's no Bailey judgments against me.

9    THE COURT: My concern is whether your offer

10 might be in jeopardy if you make an offer of payment on

11 one judgment. I know we're not in bankruptcy or

12 anything, so there wouldn't be a preference, but I was

13 just concerned.

14    MR. STRETTON: It would not. My own

15 personal situation -- I mean, everyone has debt, but I

16 am on a major lien. My wife is president in Gateway

17 Medical, and I had to co-sign a $3 million or $2 million

18 lien, which is still Gateway Medical, which is a major

19 medical practice in Chester County where about 20

20 doctors and others. But I mean --

21    THE COURT: You don't need to go into

22 details. I just want to make sure that an offer that

23 you have would work.

24    MR. STRETTON: Well, the offer I made would

25 cover the first -- would cover your order of April 21st,

1  would cover the order of May 26th, and it would also

2  cover the Third Circuit's order against Mr. Bailey of

3  September 9th.

4          THE COURT:  I don't think I have any

5  jurisdiction over that.

6          MR. STRETTON:  I understand that.  But I

7  want to put -- even though that's just against Mr.

8  Bailey, I'm his friend, and I'm trying to get these

9  behind him.  Now whatever the Third Circuit does in the

10  future on this brief, if they do impose sanctions,

11  unless they do it against the firm, that's Mr. Bailey

12  that is going to have to rise or fall on that on his

13  own.

14          But I want to put this aside because I'm a

15  little -- I feel a little embarrassed about this, and I

16  feel that I was somewhat unethical by not properly

17  having the partnership reflect the limited nature of it,

18  and I know better under Rule 7.5 of the rules of

19  professional conduct in terms of how a partnership is

20  supposed to be styled.

21          Based on that, I'm willing to offer these

22  monies.  Again, they're not here yet, but I believe that

23  they're going to be there at some point, to resolve

24  these issues, if that can be done so we don't have to

25  have a contempt hearing.

1              THE COURT:  Mr. Lappas.

2              MR. LAPPAS:  Your Honor, Mr. Stretton did

3    talk to me about that either yesterday or the day

4    before, sometime in the last few days.  And as I told

5    him then, and again equally before court today, the way

6    I understand it is, he has a verdict, and as part of

7    that verdict, he has an order awarding him attorney's

8    fees.

9              That case is now before the district court

10   on post-trial motions.  He says he thinks he's going to

11   hold onto the verdict in some part.  And maybe he will.

12   I don't know.  I'm not familiar with the case.  After

13   that, of course, there's going to be appeals to the

14   Third Circuit.  I believe the case that we're talking

15   about now is against the Commonwealth.

16             You know, it's sort of pie in the sky.  And

17   he's really asking us to wait for a pretty long time for

18   an uncertain result, one that he can't guarantee.  So I

19   don't think that's -- I mean, I respect the offer.  I

20   think it's made in good faith.  But I don't think it's a

21   realistic disposition of these issues.

22             THE COURT:  Mr. Heinz.

23             MR. HEINZ:  If I could, I would just like to

24   respond to Mr. Stretton's comment about how this, an

25   enforcement of this order would cause a run and people

to appeal to the Court for a contempt proceeding.  I

would just like to point out that this proceeding would

not be at all warranted or even necessary if Mr. Bailey

hadn't filed an appeal and failed to file a bond, which

is the proper procedure for insuring that, you know,

there is a security for payment if we are successful on

the appeal.

          If he couldn't afford the bond at the time

when the court issued the order, he certainly could have

appealed to the court for reconsideration at that time.

He didn't do that.  He filed an appeal knowing that we

could not collect on a judgment in state court.  Thank

you.

          MR. STRETTON:  My only response to Mr.

Lappas, and I understand, maybe it's a little pie in the

sky, my offer, but it would seem to me that, whatever

procedure happens, whether he continues to try to

execute judgment or you have a contempt hearing,

assuming that I lose the contempt hearing and there is

orders entered, we still have to look at the ability to

pay.

          And it may be a substantial delay just on

that particular issue.  And for other -- I'm not saying

that there would be an appeal, but certainly I would

look at this strongly because I think there is some

```
 1   interesting issues here in terms of the Court's power to
 2   enforce these monetary sanctions, supposedly going
 3   through the Rules of Civil Procedure.
 4            It would seem to me that my offer is made in
 5   good faith, and we can revisit it if I should lose with
 6   Judge Caputo.  And I'm going to know real soon, at least
 7   I would suspect, with a year and a half now gone by in
 8   post-trial motions, two years from the trial is
 9   February.
10            I suspect Judge Caputo is going to be
11   issuing an order very shortly in this particular matter
12   one way or the other, so everyone will know.  So maybe
13   the other thing could be that we just hold this in
14   abeyance, but in the interim, you enter an order locking
15   in my counsel fees for this purpose.  And I'll sign
16   anything they give, present to me, so I can assign it
17   over to them so these matters can be resolved.
18            THE COURT:  What's the name of the case
19   before Judge Caputo?
20            MR. STRETTON:  It is John McLaughlin and
21   Micewski versus Judge Fisher, then Attorney General
22   Fisher, Pappert, and various people who were heads of
23   the various divisions.  It was a $1 million punitive
24   damage against them collectively.
25            THE COURT:  Well, I don't want to know the
```

1    facts.  What's the number?  What's the case number?

2               MR. STRETTON:  I don't have that with me.  I

3    could have that faxed to you this afternoon and to

4    everyone via fax.  I'm sorry.

5               THE COURT:  I'm going to take the matter

6    under advisement.  I may need some more briefing.  I

7    don't know.  But I need more time.  I've heard

8    everything that's been said.  Is there anything further?

9               MR. STRETTON:  Unless you want testimony in

10   support of our position that Mr. Bailey is essentially

11   judgment proof and doesn't have the ability to pay

12   except maybe some limited payout schedule for a month,

13   and then on that particular issue.  I don't know if you

14   want to -- then we go to the issue of contempt with one

15   prong in the civil contempt of the ability to comply or

16   pay, if you need testimony on that.

17              I prefer not getting into that at this

18   particular point in time if we could avoid it.  And I

19   prefer and would ask that you enter an order attaching

20   my 27 or $28,000.00 award pending at least your decision

21   this or resolving this.  What I can assure you that I

22   will do during, even though I'm no longer a parter in

23   the firm, so that this doesn't occur in the future, and

24   after our conversation about a month ago, perhaps I

25   should have taken a more aggressive role.

1          I have one other suggestion.  What often

2   times we do in the state system when there's issues over

3   lawyers, we appoint a practice monitor who sort of

4   reviews the documents and pleadings.  I'm willing to

5   play that role.

6          See, I didn't look at the material before.

7   I only looked at what I was trying for Mr. Bailey.  But

8   if this court has a way to resolve this, and also to

9   insure in the future, I'd be willing to sit as a

10  practice monitor, review what he's doing, submit a

11  report to the Court on a monthly basis, even though I'm

12  no longer a partner, and to make sure that Mr. Bailey is

13  still the vigorous advocate but he doesn't --

14          THE COURT:  With your schedule, how are you

15  going to do that?

16          MR. STRETTON:  I can make time.  I don't

17  need a lot of sleep.  But if I could help my friend --

18  he's my friend.

19          THE COURT:  Mr. Lappas.

20          MR. LAPPAS:  I just wanted to say two

21  things.  Number 1, I don't need testimony today on the

22  question -- I'm not requesting testimony today on the

23  question of whether or not Mr. Bailey is judgment proof

24  or not.  But the brief that was filed by Mr. Stretton on

25  behalf of Donald Bailey and the law firm makes a number

1    of arguments why he individually, Mr. Stretton, and why

2    the firm should not be held to the judgment that was

3    entered by this court, and he's repeated some of those

4    arguments today.

5            I just want to -- I guess, if the Court is

6    going to entertain that argument now, then I think there

7    should be some testimony on record.  But I would repeat

8    what I said earlier.  The order against Bailey, Stretton

9    & Ostrowski, the firm, was entered.  It was appealed.

10   It was affirmed on appeal.  I don't think it's subject

11   to any arguments now about due process or otherwise.

12   That's number 1.

13           Number two.  If the Court is going to order

14   a briefing, or even if you're not going to order

15   briefing, I would request a reasonable period of time to

16   file a supplemental request for additional attorney's

17   fees relative to the litigation of the motion and the

18   preparation for today's proceedings.

19           And although I don't want to speak for Mr.

20   Heinz, I'm sure he makes the same request.

21           MR. HEINZ:  Yeah, I would make the same

22   request.  Thank you.

23           MR. STRETTON:  I feel like we're spinning

24   the wheel.  I would hope that they might reconsider

25   counsel fees for this because I think that there's some

1    valid arguments.  This is not a frivolous defense to the

2    motion for contempt.  But that's their call.  I'd like

3    to stop it now.  That's why I'm trying to offer this.

4    I'll agree to be a practice monitor or I'll find someone

5    else.  I can ask Bob Davis, my friend, or someone else

6    to do this or review what Mr. Bailey is doing, if you

7    think I'm too busy.

8            I just want to stop this and start and let

9    Mr. Bailey continue with his practice in the right way

10   and stop the clock running for them on these matters so

11   they can go back to making real money and help their

12   clients on other matters.

13           THE COURT:  I'm going to defer, and I'll be

14   back in touch with you.

15           MR. STRETTON:  Thank you.

16           THE COURT:  Court's adjourned.

17           COURTROOM DEPUTY:  Court's adjourned.

18           (Whereupon, the proceeding adjourned at

19            10:51 a.m.)

20

21

22

23

24

25

1

2

3                          CERTIFICATION

4

5

6          I hereby certify that the proceedings and

7    evidence are contained fully and accurately in the notes

8    taken by me on the within proceedings, and that this

9    copy is a correct transcript of the same.

10

11

12                          _____
                            Wendy C. Yinger, RPR
13                          U.S. Official Court Reporter
                            (717) 440-1535
14

15

16

17

18

19

20          The foregoing certification of this

21    transcript does not apply to any reproduction by any

22    means unless under the direct control and/or supervision

23    of the certifying reporter.

24

25

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

BEVERLY BEAM,                          :   NO. 1:CV-02-1797
                    PLAINTIFF          :
                                       :   (JUDGE RAMBO)
          V.                           :
                                       :   (ELECTRONICALLY FILED)
MARC BAUER, GLENN ZEHNER,              :
CAPITAL AREA INTERMEDIATE              :
UNIT, SCOTT DOWNEY, ROGER              :
MORRISON, DAVID GRAYBILL and           :
MICHAEL SWEGER,                        :
                    DEFENDANTS         :

BRIEF OF THE RESPONDENT, DONALD BAILEY, AND THE LAW FIRM OF
BAILEY, STRETTON & OSTROWSKI AS TO WHY THEY SHOULD NOT
BE HELD IN CONTEMPT FOR NOT PAYING ATTORNEY'S FEES
AWARDED BY THIS COURT TO OPPOSING COUNSEL

The Respondents, Attorney Donald Bailey and the Law Firm of

Bailey, Stretton & Ostrowski, respectfully file this Brief in

support of their position that neither the Law Firm of Bailey,

Stretton & Ostrowski nor Mr. Bailey should be held in contempt

for the failure to pay the counsel fees awarded previously by

this Honorable Court.

The Order of the Honorable Sylvia Rambo, which is dated May

26, 2004, states in pertinent portions as follows:

"The sum of $3,712.26 is awarded to Defendant Morrison
through his counsel, Kathryn Simpson, Esquire, and against
Plaintiff's Attorney Donald Bailey and the Law Firm of
Bailey, Stretton & Ostrowski, jointly and severally." (See
Order dated May 26, 2004 of the Honorable Sylvia Rambo).

First, as to the Law Firm of Bailey, Stretton & Ostrowski,

present counsel would argue that the award should not be against

that particular firm.  Mr. Stretton has a very limited

1

partnership with Mr. Bailey and that partnership is only for Mr. Stretton to try specific cases for Mr. Bailey. There is no sharing of expenses or costs. Mr. Stretton was not aware of this case or the issues involved in this case during the pertinent times and had no involvement in the same.

More importantly, there should be no finding of contempt in this particular matter. There was an award of attorney's fees, which apparently was entered as a judgment in the Court of Common Pleas of Dauphin County as told Mr. Bailey by one of the Defendant's counsel. This Honorable Court should not use its contempt authority to by-pass the execution of judgment procedures that have been developed over the years.

Federal Rule of Civil Procedure, Rule 69, governs the execution for payment of a monetary judgment. That rule notes as follows:

> "Process to enforce a judgment for the payment of money shall be a writ of execution, unless the court directs otherwise. The procedure on execution, in proceedings supplementary to and in aid of a judgment and in proceedings on and in aid of execution shall be in accordance with the practice and procedure of the state in which the district court is held, existing at the time the remedy is sought, except that any statute of the United States governs to the extent that it is applicable. In aid of judgment or execution, the judgment creditor or a successor in interest when that interest appears of record, may obtain discovery from any person, including the judgment debtor, in a manner provided in these rules or in a manner provided by the practice of the state in which the District Court is held." (Federal Rules of Civil Procedure, Rule 69).

2

That rule clearly states that the collection of an award of money is by entry of judgment pursuant to the Pennsylvania Rules and in the Pennsylvania Courts.  Pennsylvania has specific procedures for entering a judgment and executing judgment. These are available to the Petitioners.

Further, Federal Rule of Civil Procedure Rule 64 again references the state procedure for the seizure of property of persons in aid of execution of judgments.

> "At the commencement of and during the course of an action, all remedies providing for seizure of a person or property for the purpose of securing satisfaction of the judgment ultimately to be entered in the action are available under the circumstances and in the manner provided by the law of the state in which the District Court is held, existing at the time the remedy is sought, subject to the following qualifications: (1) In the existing statute of the United States governing to the extent to which it is applicable; (2) the action of which any of the foregoing remedies is used shall be commenced and prosecuted or, if removed from the State Court, shall be prosecuted after removal pursuant to these rules.  The remedies thus available include arrest, attachment, garnishment, replevin, sequestration, and any other corresponding or equivalent remedies, however designated and regardless of whether by state procedure the remedy is ancillary to an action or must be obtained by an independent action."  (Federal Rules of Civil Procure, Rule 64).

To present counsel's knowledge, there is no federal statute that would override the state execution process as outlined in the above quoted Federal Rules of Civil Procedure.  Therefore, in federal monetary awards, the state law provides the remedies for the entry of judgment and the execution and seizure of the

property to secure the satisfaction of the judgment that was

entered.  This concept has been long standing as set forth in

the United States Supreme Court case of <u>Granny Goose Foods, Inc.</u>

<u>v. Brotherhood of Teamsters</u>, 415 U.S. 423, 94 Sup. Ct. 1113

(1974).

> "As we view the matter, the express provision in 1450
> that state law governs attachments after removal, is simply
> an additional statement of long settled federal law
> providing that all cases in federal court, whether or not
> removed from state court, state law is incorporated to
> determine the availability of prejudgment remedies,
> procedure of persons or property to secure satisfaction of
> the judgment ultimately entered." (See Federal Rule of
> Civil Procedure, Rule 64).  <u>Id</u>. 1123.

The case law since then has been fairly uniform that the

federal court is bound by state law when there is a state-

created seizure remedy used or the state execution of process

remedy is available.  Unless there is a particular federal

statute that provides the remedies to secure satisfaction of

judgment, the state procedure is to be utilized.  In this case,

there is no such federal statute.

There is good reason for utilizing the state judgment

process.  For instance, the evidence would demonstrate that Mr.

Bailey has other judgments against him.  It would be very unfair

that those previous judgments could not maintain their order of

priority.  A contempt proceeding which ordered payment as a

sanction would be extremely unfair to earlier judgment holders.

That would create total chaos in the execution process.  The

evidence would demonstrate that Mr. Bailey has no assets upon which to execute. That information can be obtained through the execution procedures process in the state system, including depositions in aid of execution.

Therefore, it appears this court would not have jurisdiction in the context of a contempt proceeding to, in essence, attempt to enforce a judgment. The procedures for such an enforcement have been clearly stated by the Federal Rules of Civil Procedure, Rules 64, 69 and 70 through the state judgment and execution process. That process cannot be circumvented or by-passed by using a contempt procedure when the primary purpose of the contempt procedure would presumably be to enforce the judgment and execute on the judgment.

The contempt procedure is found at 18 U.S.C.A. 401 for criminal contempt. That involves misbehavior in the court's presence or misbehavior of an officer in their official transactions, or disobedience or resistance to the lawful writ, process, order, rule, decree or command (18 U.S.C.A. 401). For criminal contempt, there is an element of willfulness, which is not present in civil contempt (United States v. Saccoccia, 342 F.Supp. 2d 25 (District Court, Rhode Island, 2004).

For civil contempt, the attorney must have notice of the order, the order must be clear, definite, and unambiguous, the

attorney has to have the ability to comply with the order and the attorney has to violate the order.  Id 30, 31.

A person cannot be held contempt for failure to comply with a contempt order unless the person has notice of the order and its terms.  Id 30, 31.  At least as to the Law Firm of Bailey, Stretton & Ostrowski, there was no such notice at least as to Attorney Samuel C. Stretton.  As to Attorney Bailey, the testimony would show he has no ability to comply with the order because of his financial circumstance.

The Saccoccia case arose out of a situation where a firm had been ordered to refund fees paid to them by a criminal defendant after these fees were found to be tainted in some fashion.  That is not the situation in the present case where, unfortunately for Mr. Bailey, there was an order sanctioning him for his handling of the underlying case.  But, that order is subject to execution through the normal judgment procedures and should not fit within the categories of criminal or civil contempt.  There is a specific procedure for execution of judgments in the state system.  In fact, to present counsel's knowledge, this procedure according to Mr. Bailey has been utilized and a judgment has been entered in the state system.

Although in the old cases of Lichtenstein v. Lichtenstein, 425 F.2d 1111 (3rd Cir., 1970) and Lichtenstein v. Lichtenstein, 481 F.2d 682 (3rd Cir., 1973), there was an issue of a contempt

6

payment and a Rule to Show Cause and why it should not be enforced, these cases did not appear to address the question raised by present counsel that there would be no jurisdiction and/or ability to enforce the monetary award since the correct procedure would be pursuant to the entering of a judgment and writs of execution using Pennsylvania State Law as noted in Federal Rules of Appellate Procedure, Rules 64, 69 and 70.

Therefore, it appears that the Order to Show Cause should be dissolved since the Petitioners' remedies lie not with a contempt request by this Honorable Court, but in utilizing the state's execution and judgment procedures as they have already done. This Honorable Court does not have the jurisdiction to, in effect, enter judgment and collect. The contempt procedure cannot be utilized in that fashion, as noted above and there are good public policy reasons not to do so.

Finally, there is a serious due process argument in terms of the Law Firm of Bailey, Stretton & Ostrowski, particularly as to Attorney Stretton, who had no knowledge and no opportunity to respond to any of this previously. Further, Attorney Stretton has his own law practice with offices in Philadelphia and West Chester, which is entirely separate from Mr. Bailey's practice. The only connection is a limited partnership, which was done by a handshake where Mr. Stretton will try some of Mr. Bailey's cases when Mr. Bailey enters Mr. Stretton's appearance to do so.

7

There is no fee sharing at all except on those particular cases if there is an award or judgment.

In conclusion, Mr. Bailey and the partnership of Bailey, Stretton & Ostrowski, respectfully requests this Honorable Court dismiss the Rule to Show Cause for the reasons above stated and make no finding of contempt.

Respectfully submitted,


s/Samuel C. Stretton
Samuel C. Stretton, Esquire
Attorney for Donald Bailey, Esq.
  and Bailey, Stretton & Ostrowski
301 South High Street
P.O. Box 3231
West Chester, PA  19381-3231
(610) 696-4243
Attorney I.D. No. 18491

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

BEVERLY BEAM,                          :    NO. 1:CV-02-1797
                PLAINTIFF              :
                                       :    (JUDGE RAMBO)
        V.                             :
                                       :    (ELECTRONICALLY FILED)
MARC BAUER, GLENN ZEHNER,              :
CAPITAL AREA INTERMEDIATE              :
UNIT, SCOTT DOWNEY, ROGER              :
MORRISON, DAVID GRAYBILL and           :
MICHAEL SWEGER,                        :
                DEFENDANTS             :

## CERTIFICATE OF SERVICE

I hereby certify I am this date serving a copy of the Brief
of the Respondent, Donald Bailey, in the captioned matter upon
the following persons in the manner indicated below.

Service by First Class Mail addressed as follows:

1.    Honorable Sylvia H. Rambo
      United States District Court for
       the Middle District of Pennsylvania
      966 Federal Building
      228 Walnut Street
      Post Office Box 983
      Harrisburg, PA 17108-0983

2.    Spero T. Lappas, Esquire
      Serratelli, Schiffman, Brown
       & Calhoon, P.C.
      2080 Linglestown Road
      Suite 201
      Harrisburg, PA 17110-9670

3.    Kathryn L. Simpson, Esquire
      Mette, Evans & Woodside
      3401 North Front Street
      Harrisburg, PA 17110

4.    Stephen S. Russell, Esquire
      Susquehanna Commerce Center East
      Sixth Floor
      221 W. Philadelphia Street
      York, PA  17404

5.    Donald Bailey, Esquire
      4311 North Sixth Street
      Harrisburg, PA  17110

                    Respectfully submitted,


12/27/04            s/Samuel C. Stretton
  Date              _____
                    Samuel C. Stretton, Esquire
                    Attorney for Donald Bailey, Esq.
                     and Bailey, Stretton & Ostrowski
                    301 South High Street
                    P.O. Box 3231
                    West Chester, PA  19381-3231
                    (610) 696-4243
                    Attorney I.D. No. 18491